THE HONORABLE _____

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE ERISA INDUSTRY COMMITTEE,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF SEATTLE,<br><br>　　　　　　　Defendant. | Case No. _____<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiff, The ERISA Industry Committee ("ERIC"), on behalf of its members, hereby files this complaint against the City of Seattle ("City"), and alleges as follows:

**NATURE OF ACTION**

1. ERIC seeks an injunction halting enforcement of Part 3 of Chapter 14.25 of the Seattle Municipal Code ("Part 3"), on the grounds that the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., preempts Part 3. ERIC also seeks a declaration that ERISA preempts Part 3, as well as all other relief available under federal law.

2. Chapter 14.25, including Part 3, originated as Initiative Measure No. 124 and is entitled, Seattle Hotel Employees Health and Safety Initiative. The City's voters approved the

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 1
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

1  Initiative on November 8, 2016, and it was added to the City's Municipal Code.[1] This complaint challenges solely Part 3 of Chapter 14.25 of the Seattle Municipal Code.

3. The City issued final Rules implementing Chapter 14.25 (including Part 3) on May 31, 2018, and revised them further on July 12, 2018.[2] The City issued additional guidance for compliance with Part 3 by posting on its website, in June and July 2018, documents entitled "Questions & Answers" and "Toolkit for Calculating Additional Compensation Payments for Medical Care." Compliance under the final Rules and guidance is required beginning July 1, 2018.

4. As relevant, Part 3 requires large hotel employers – for most of their employees who work 80 hours or more per month – to "provide[] health and hospitalization coverage at least equal to a gold-level policy on the Washington Health Benefit Exchange" and at a cost to the employee of no more than five percent of the employee's gross taxable earnings. Seattle Municipal Code ("SMC") 14.25.120.B. Otherwise, Part 3 requires large hotel employers to make direct monthly payments to employees of a specified sum. For affected ERIC members, the provision of health benefits coverage at Part 3's specified level for the hotel employees encompassed by Part 3 will require a significant increase in health benefit spending, and the alternative direct payments to hotel employees would cost substantially more. Under the City's final Rules implementing Part 3, a large hotel employer that does not meet Part 3's specified

---

[1] Chapter 14.25, including Part 3, current as of July 10, 2018, is available at https://library.municode.com/wa/seattle/codes/municipal_code?nodeId=TIT14HURI_CH14.25HOEMHESA (last visited Aug. 13, 2018).
[2] The final rules and guidance for Chapter 14.25, including Part 3, are available at https://www.seattle.gov/Documents/Departments/LaborStandards/Rules_Chapter150_071218.pdf, https://www.seattle.gov/Documents/Departments/LaborStandards/Rules_Chapter150_RL_071218.pdf, https://www.seattle.gov/Documents/Departments/LaborStandards/Toolkit_071218.pdf, and generally at https://www.seattle.gov/laborstandards/ordinances/hotel-employees-health-and-safety-initiative (last visited Aug. 13, 2018).

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 2
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

health coverage requirements during July 2018 must make the alternative direct payments to hotel employees on or before August 15, 2018. As a result, the date of August 16, 2018, is the first date on which, under the City's final Rules, a large hotel employer that fails to provide coverage at Part 3's levels and also does not make the necessary direct payments can, in effect, be deemed non-compliant with Part 3.

5. ERISA expressly provides that it "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). The provision has a "broad scope" (*Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016)), with the U.S. Supreme Court repeatedly emphasizing that the provision's text is "clearly expansive," has "an expansive sweep," is "conspicuous for its breadth," is "deliberately expansive," and is "broadly worded." *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 324 (1997) ("*Dillingham*") (internal quotation marks and citations omitted) (cataloging statements in prior precedents). ERISA's preemption provision is intended to make the regulation of employee benefit plans an "exclusively federal concern," so as to foster such plans' creation and growth. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). It applies to the laws of a state or any of its subdivisions, including municipalities. *See* 29 U.S.C. § 1144(c)(2).

6. Part 3 "relate[s] to" ERISA plans, and therefore is preempted, because its operation inevitably turns on "the value or nature of the benefits available to ERISA plan participants," with a level of benefits anything less than a "gold" level triggering application of Part 3's direct-payment obligation. *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 546 F.3d 639, 658 (9th Cir. 2008) (distinguishing local ordinances that are "measured by reference to the level of benefits provided by the ERISA plan to the employee" and are ERISA-

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 3
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

preempted, from ordinances where the "employer calculates its required payments based on the hours worked by its employees" and may not be ERISA-preempted). In this manner, Part 3 fails under what has come to be known as the "reference to" prong of ERISA preemption – *i.e.*, a state law "relate[s] to" an ERISA plan when it makes a "reference to" an ERISA plan. *Gobeille*, 136 S. Ct. at 943.

7. In addition, Part 3 is preempted under the so-called "connection with" prong of ERISA preemption – *i.e.*, a state law "relate[s] to" an ERISA plan if it has an impermissible "connection with" an ERISA plan. *Gobeille*, 136 S. Ct. at 943. State laws have an impermissible connection with ERISA plans where they "'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'" *Id.* (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995) ("*Travelers*")). Here, Part 3 compels large hotel employers to alter their health coverage for employees – namely, to the "gold" level required by Part 3 – in order to avoid the even more onerous direct-payment mandate.

8. On these and other bases, ERISA squarely and straightforwardly preempts Part 3, and the Court should enjoin Part 3's enforcement and declare Part 3 null and void. Large hotel employers in the City, like all private employers in Seattle and everywhere else in the Nation, are subject to exclusively federal rules in the provision of health benefits for their employees.

## PARTIES

9. ERIC is a nonprofit trade association with its principal place of business in Washington, DC.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 4
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

10. ERIC represents the interests of large employers with 10,000 or more employees that sponsor health, retirement, and compensation benefit plans governed by ERISA. ERIC's member companies voluntarily provide benefits through these plans to millions of workers and their families across the Nation.

11. ERIC's member companies operate in every major sector of the Nation's economy. Among ERIC's members are one or more employers owning or operating large hotels in the City.

12. ERIC is the only national association that advocates exclusively for large employer plan sponsors on health, retirement, and compensation public policies on the federal, state, and local levels. ERIC's mission includes lobbying and litigation advocacy for nationally-uniform laws regarding employee benefits as contemplated by ERISA, so that ERIC's member companies may lawfully operate under ERISA's protection from a patchwork of different and conflicting state and local laws in addition to federal law. To fulfil its purpose, ERIC previously has brought suit against governmental authorities to challenge state laws and regulations on the grounds of ERISA preemption. It advocates to preserve ERISA's national uniformity, which protects employers and employees from disparate state and local regulation of health and retirement plans.

13. The City is a political subdivision of the State of Washington located in this District. The City enforces and is responsible for administering compliance with Part 3.

**JURISDICTION AND VENUE**

14. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this case arises under federal law, including the U.S. Constitution's Supremacy Clause. *See* U.S. Const. art. VI; *see also Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983).

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 5
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

15. The Court also has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as ERIC, a nonprofit trade association, is incorporated in Washington, DC and has its principal place of business in Washington, DC; the City of Seattle is located in the State of Washington; and the amount in controversy exceeds $75,000.

16. ERIC has standing to pursue this action on behalf of its members because: the employers who are its members that operate large hotels in Seattle suffer a direct and adverse impact from the application of Part 3 and thus would have standing in their own right; the preemption interest ERIC seeks to protect is at the core of ERIC's mission; and the relief sought – which is injunctive and declaratory – does not require the participation of individual members. *See Hunt v. Wash. St. Advertising Comm'n*, 432 U.S. 333, 343 (1977).

17. The Court has personal jurisdiction over the City because it resides within the Western District of Washington.

18. Venue is proper pursuant to 28 U.S.C. § 1391, because the events giving rise to the suit occurred in this District, the City resides in this District and adopted Part 3 in this District, and Part 3 applies to large hotel employers and is enforceable in this District.

## BACKGROUND

*Part 3 of Chapter 14.25*

19. Effective July 1, 2018 and July 12, 2018, the City issued final Rules setting forth requirements for the administration of Chapter 14.25. *See* Seattle Office of Labor Standards, Chap. 150, SHRR 150-010 *et seq.* The Rules include the requirements for administering Part 3 of Chapter 14.25.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 6
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

20. Chapter 14.25 consists of seven parts: Part 1, Protecting Hotel Employees from Violent Assault and Sexual Harassment; Part 2, Protecting Hotel Employees from Injury; Part 3, Improving Access to Medical Care for Low Income Hotel Employees; Part 4, Preventing Disruptions in the Hotel Industry; Part 5, Enforcing Compliance with the Law; Part 6, Definitions; and Part 7, Miscellaneous. Part 7 provides for severability of any provision of Chapter 14.25 such that if any provision is held invalid, it may be severed from Chapter 14.25 without affecting the validity or applicability of any other provision of the Chapter. SMC 14.25.180.

21. The subject of this complaint is Part 3, entitled Improving Access to Medical Care for Low Income Hotel Employees. The stated intent of Part 3 is "to improve access to affordable family medical care for hotel employees" and to provide "[a]dditional compensation reflecting hotel employees' anticipated family medical costs . . . to improve access to medical care for low income hotel employees." SMC 14.25.110.

22. Part 3 applies to large hotel employers, defined as persons who employ employees who work in hotels with 100 or more guest rooms. SMC 14.25.160. Based on the final Rules that were effective July 1, 2018 and July 12, 2018, large hotel employers are to begin compliance with Part 3 as of July 1, 2018. SMC 14.25.120.A.; SHRR 150-160.

23. Part 3 provides as follows:

    14.25.120 - *Large hotel employers must provide additional compensation reflective of the cost of medical coverage to low-income hotel employees*

    A. A large hotel employer shall pay, by no later than the 15th day of each calendar month, each of its low-wage employees who work full time at a large hotel additional wages or salary in an amount equal to the greater of $200, adjusted annually for inflation [for 2018, the inflation-adjusted amount is $275.17][3], or the difference

---

[3] *See* SHRR 150-215; City of Seattle Hotel Employees Health and Safety Initiative SMC 14.25, Questions & Answers, G.7, https://www.seattle.gov/Documents/Departments/LaborStandards/QA_HEHS_071218.pdf (last

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 7
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

between (1) the monthly premium for the lowest-cost, gold-level policy available on the Washington Health Benefit Exchange and (2) 7.5 percent of the amount by which the employee's compensation for the previous calendar month, not including the additional wage or salary required by this Section 14.25.120, exceeds 100 percent of the federal poverty line.[4] The additional wages or salary required under this Section 14.25.120 are in addition to and will not be considered as wages paid for purposes of determining compliance with the hourly minimum wage and hourly minimum compensation requirements set forth in Sections 14.19.030 through 14.19.050.

      B.     A large hotel employer shall not be required to pay the additional wages or salary required by this Section 14.25.120 with respect to an employee for whom the hotel employer provides health and hospitalization coverage at least equal to a gold-level policy on the Washington Health Benefit Exchange at a premium or contribution cost to the employee of no more than five percent of the employee's gross taxable earnings paid to the employee by the hotel employer or its contractors or subcontractors.

      C.     If a household includes multiple employees covered by this Section 14.25.120, the total of all additional wage or salary payments made pursuant to this Section 14.25.120 to such employees by one or more hotel employers shall not exceed the total cost for coverage of the household under the least-expensive gold policy offered on the Washington Health Benefit Exchange. If one or more employees in the household are employed by more than one hotel employer, the hotel employers may coordinate their payments so that their combined payments do not exceed the foregoing maximum. In the absence of an agreement among hotel employers to so coordinate their payments, the amount of additional wages payable by each hotel employer shall be the amount due to each employee under subsection 14.25.120.A.

      D.     The inflation adjustment required under subsection 14.25.120.A shall be calculated using the year-over-year increase in cost of the lowest cost gold level policy available on the Washington Health Benefit Exchange.

SMC 14.25.120.

24. In Part 6 of Chapter 14.25, "Full time" employment, so as to make Part 3 applicable to an employee, is defined as "at least 80 hours in a calendar month." SMC 14.25.160.

---

visited Aug. 13, 2018).

[4] The additional cost, calculated through a multi-part formula with several unique variables for each eligible employee, can be substantially greater than the inflation-adjusted amount of $275.17. As illustrated in the City's guidance issued on or about July 12, 2018, the additional monthly cost per employee can be $551.54 or $615.28. *See* Toolkit for Calculating Additional Compensation Payments for Medical Care at 7 -8, https://www.seattle.gov/Documents/Departments/LaborStandards/Toolkit_071218.pdf (last visited Aug. 13, 2018). Indeed, a website sponsored by Unite Here! Local 8 estimates an additional monthly cost to employers of $860.33 as "additional compensation" to an employee with a household of three unless coverage is provided. *See* Determining Healthcare Payment under SMC 14.25.120, line 9, https://www.seattleprotectswomen.org/healthcare/ (last visited Aug. 13, 2018).

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 8
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

25. Part 7 of Chapter 14.25 provides that no provisions of the chapter may be waived, except that Part 3 "may be waived in a bona fide written collective bargaining agreement . . . if such a waiver is set forth in clear and unambiguous terms. Unilateral implementation of terms and conditions of employment by either party to a collective bargaining relationship shall not constitute, or be permitted, as a waiver of all or any part of the provisions of this Chapter 14.25." SMC 14.25.170.C.

26. The final Rules describe and implement Part 3's requirements, including a new and blanket exemption for certain union-based plans, as follows:

> SHRR 150-210. - *Requirement to pay additional compensation to low-wage employees*
>
> 1. In general. Under SMC 14.25.120.A., a hotel employer is required to pay low-wage employees additional compensation as set forth in that section.
>
> 2. Exceptions to requirement.
>
>    a. Enrollment Required. An employer is not required to pay additional compensation under SMC 14.25.120(A), if (i) the employee has enrolled in a policy that was offered by the employer and that is at least equal to a gold-level policy on the Washington Health Benefit Exchange and (ii) the employer is making payments towards the employee's policy. This exception applies during the employee's waiting period if the employer is making payments toward the policy during the waiting period.
>
>    b. Cost to the employee. For an employer to qualify for an exception to pay the additional compensation required by SMC 14.25.120(B), SHRR 150-210(1), and SHRR 150-210(2)(a), the employee cannot pay more than 5% of their monthly gross taxable earnings toward payment for the policy, including the cost of coverage for any enrolled spouse or dependent children.
>
>    c. Taft-Hartley Plans. An employer is not required to pay the additional compensation required by SMC 14.25.120(A) when the employer is paying toward an employee's policy under a multiemployer health and welfare benefit plan established under section 302(C)(5) of the Labor Management Relations Act of 1947, 29 U.S.C. §§ 401-531 (*i.e.* Taft-Hartley Act).

SHRR 150-210.

27. The final Rules provide no guidance or explanation for SMC 14.25.120.C., concerning eligible employees who live in the same household and who are employed by one

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 9
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

or more large hotel employers. That section permits large hotel employers to "coordinate their payments so that their combined payments do not exceed the [ ] maximum" additional compensation; but doing so would implicate the sharing of confidential, personal, private information, and the final Rules provide no guidance concerning how such information could be lawfully shared. SMC 14.25.120.C. In the absence of such guidance, coordination among the large hotel employers is not feasible and they are, in effect, penalized by paying the additional compensation even if the employee could be receiving the additional compensation or health coverage from another large hotel employer.

28. Despite the stated intent of Part 3 to provide additional compensation to hotel employees for access to medical care at a stated level, Chapter 14.25 contains no requirement or limitation that employees who receive the additional compensation must expend it only to obtain medical care. Payment of the additional compensation, which is made directly to the employee, could well result in the employee using the money for purposes other than to obtain medical care or coverage without accountability or recourse by the hotel employer or the City.

29. Absent creating a Taft-Hartley plan (if that were even possible[5]) or finding such a plan to which to contribute with respect to all relevant employees, the only meaningful way in which large hotel employers may comply with Part 3 is to (1) enroll eligible employees in employer-provided coverage equivalent to a *gold-level policy* on the Washington Health

---

[5] Taft-Hartley plans generally have the following characteristics: (1) one or more employers contribute to the plan; (2) the plan is collectively bargained by a union with each participating employer; (3) the plan's assets are managed by a joint board of trustees with equal representation of labor and management; (4) assets are placed in a trust fund; and (5) employees who move from one participating employer to another will retain their coverage provided the new job is with one of the participating companies. *See generally* 29 U.S.C. § 1002(37). Creating a Taft-Hartley plan is only possible, if at all, when the employees are represented by a union and the employer and union desire to negotiate for Taft-Hartley plan benefits, including situations where an employer and union already have in place a negotiated non-Taft-Hartley health plan.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 10
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

Benefit Exchange, if such coverage exists, or (2) amend their existing plans to provide such coverage and enroll eligible employees, in each case predominantly at the employers' cost. Otherwise, large hotel employers must make payments to employees based on a cost of coverage on the Washington Health Benefits Exchange that ranges from hundreds of dollars to well in excess of a thousand dollars per employee per month, depending mainly on the employee's household size and demographics.

30.   Compliance with Part 3 requires large hotel employers to maintain detailed records for three years for each current and former employee who is eligible under Part 3, including their regular hourly rate of pay and, for each month of full-time employment, the amount of additional wages or salary paid as additional compensation reflective of the cost of medical coverage, as required by SMC 14.25.120.  *See* SMC 14.25.150.B.2.  Because eligible employees must be nonsupervisorial, nonmanagerial, and nonconfidential employees, large hotel employers subject to Part 3 must also necessarily make that determination and maintain records in that regard.

31.   Violations of Part 3 are punishable by penalties of at least $100 per day per employee, and up to $1,000 per day per employee, with each workday constituting a separate violation.  SMC 14.25.150.E.1.  The City must remit at least twenty-five percent of any penalties collected to the affected employees.  *See* SMC 14.25.150.E.2.  In addition, Chapter 14.25 provides a private right of action to employees to enforce Part 3, including the right to seek damages and attorney fees.

32.   Part 3 applies only to hotels with 100 or more rooms.  Accordingly, large hotel employers suffer a competitive disadvantage against hotels with less than 100 rooms, such as

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 11
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

boutique hotels, independent hotels, Airbnb hosts, and all other establishments offering accommodations for a fee in the City.

***ERISA Preemption***

33. ERISA's coverage extends to any employee benefit plan established or maintained by a private employer or employee organization (such as a union). 29 U.S.C. § 1003(a), (b). The health benefit plans contemplated under SMC 14.25.120 and SHRR 150-210 are regulated by ERISA.

34. Despite ERISA's broad coverage, "[n]othing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996); *see also Conkright v. Frommert*, 559 U.S. 506, 516 (2010) ("Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place."). Rather, ERISA leaves employers free "for any reason at any time, to adopt, modify, or terminate [benefit] plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).

35. In enacting ERISA, Congress undertook "a careful balancing" to encourage the creation of employee benefit plans and "'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'" *Conkright,* 559 U.S. at 517 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)). Thus, "ERISA 'induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.'" *Id.* (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002)).

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF - 12
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

36. Uniformity and affordability in the regulation and administration of ERISA plans was paramount to Congress: "Requiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of 'minimiz[ing] the administrative and financial burden[s]' on plan administrators – burdens ultimately borne by the beneficiaries." *Gobeille,* 136 S. Ct. at 944 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 149-50 (2001), and citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990), and *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)).

37. Congress therefore adopted ERISA's preemption section, which states the broad preemptive effect of the statute, providing that "the provisions of [ERISA] . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) and not exempt under section 1003(b)." 29 U.S.C. § 1144(a). "State law[s]" are defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," with "State," in turn, including "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate directly or indirectly, the terms and conditions of employee benefit plans covered by [ERISA]." *Id.* § 1144(c)(1)-(2).

38. ERISA's preemption section "indicates Congress's intent to establish the regulation of employee welfare benefit plans as exclusively a federal concern." *Gobeille*, 136 S. Ct. at 944 (internal quotation marks and citation omitted).

39. Under ERISA's preemption provision, a state law "relate[s] to" an employee benefit plan if it has a "reference to" ERISA plans or has a "connection with" ERISA plans, with either resulting in preemption. *Gobeille,* 136 S. Ct. at 943.

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 13
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

40. "To be more precise, '[w]here a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . ., that 'reference' will result in pre-emption.'" *Gobeille,* 136 S. Ct. at 943 (quoting *Dillingham*, 519 U.S. at 325).

41. In addition, a state law will have an impermissible "connection with" an ERISA plan if "'acute, albeit indirect, economic effects'" of the state law "'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'" *Gobeille*, 136 S. Ct. at 943 (quoting *Travelers*, 514 U.S. at 668).

42. In addition, a state law that "'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration,'" such as with regard to reporting and recordkeeping, likewise has an impermissible connection with ERISA plans and is preempted. *Gobeille*, 136 S. Ct. at 943 (quoting *Egelhoff*, 532 U.S. at 148).

## CLAIM FOR RELIEF

## ERISA Preemption (29 U.S.C. § 1144(a))

43. ERIC repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

44. ERISA preempts state and local laws that "relate to" ERISA plans. 29 U.S.C. § 1144(a). State and local laws that have a "reference to" or "connection with" ERISA plans "relate to" them and are preempted. *Gobeille*, 136 S. Ct. at 943.

45. Part 3 of Chapter 14.25 requires large hotel employers, aside from those that contribute to Taft-Hartley plans for all relevant employees, to provide "health and hospitalization coverage at least equal to a gold-level policy on the Washington Health Benefit

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 14
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

Exchange"; otherwise, the employer must pay a specified amount directly to each eligible employee every month. SMC 14.25.120.B.; *see also* SHRR 150-210.2.c.

46. Part 3, in effect, mandates large hotel employers to amend existing ERISA employee benefit plans to provide gold-level coverage and to enroll the employee in the plan, if they do not currently provide coverage at that level to covered employees. Absent the provision of gold-level coverage, the hotel employer must make direct payments to the employee, without any constraint on the employee's use of the money. ERIC's members, in order to comply with Part 3, will need to – at great expense – alter their health benefit plans covering employees in the City in order to supply gold-level coverage. These members would incur even greater expense in the event they were to make direct payments to the employees in accordance with Part 3, rather than providing coverage through an ERISA plan satisfying Part 3's requirement of gold-level coverage at a cost to the employee of no more than five percent of the employee's gross taxable earnings.

47. Part 3 has a "reference to" ERISA plans, acting immediately and exclusively upon ERISA plans and with the existence of ERISA plans being essential to the law's operation, because Part 3's operation depends on ERISA coverage and turns on the level of coverage supplied under an ERISA plan. It explicitly mentions ERISA "coverage" in its terms (SMC 14.25.120.B, .C), and hinges direct payment to the employee "on the value or nature of the benefits available to ERISA plan participants" (which must be gold-level at a relatively minimal cost to the employee). *Golden Gate Rest. Ass'n*, 546 F.3d at 658-59 (discussing ERISA preemption regarding a state requirement that a certain level of ERISA benefits be provided); *see also District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 130 (1992) (a state law "specifically refers to welfare benefit plans regulated by ERISA" when

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 15
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

the state law's operation "is measured by reference to 'the existing health insurance coverage' provided by the employer") (quoting local law's terms).

48. Part 3 also makes a "reference to" ERISA plans because it contains an exception for a certain category of ERISA plans – *i.e.*, collectively bargained plans governed by the Taft-Hartley Act – thereby encouraging hotel employers, if possible, to abandon their single-employer ERISA plans and begin participation in Taft-Hartley plans. "If the effect of a State law is to exclude some employee benefits plans from its coverage, that law has a prohibited reference to ERISA and is preempted under 29 U.S.C. § 1144(a)." *Pharm. Care Mgmt. Ass'n v. Gerhart*, 852 F.3d 722, 729 (8th Cir. 2017).

49. Part 3 has an impermissible "connection with" ERISA plans because it forces large hotel employers to adopt a certain scheme of substantive coverage. Their alternative to altering their ERISA plans to provide gold-level coverage at an employee cost of no more than five percent of gross taxable earnings is to make more costly direct payments to the employee, with no restriction on the employee's use of the money. Because Part 3 does not offer "employers a realistic alternative to creating or altering ERISA plans," it has an impermissible "connection with" ERISA plans and is preempted. *Golden Gate Rest. Ass'n*, 546 F.3d at 660; *Retail Indus. Leaders Ass'n v. Fielder*, 475 F. 3d 180, 197 (4th Cir. 2007) (holding that Maryland health-plan law that "leaves employers no reasonable choices except to change how they structure their employee benefit plans" is preempted because it "directly regulates employers' provision of healthcare benefits" and has a "'connection with' covered employers' ERISA plans").

50. Part 3 additionally has an impermissible "connection with" ERISA plans because it imposes on large hotel employers reporting requirements such as maintaining and

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 16
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

making available, upon request, records for every current and former employee, including their regular hourly rate of pay and, for each month of full-time employment, the amount of additional wages or salary paid as additional compensation reflective of the cost of medical coverage, as required by Section 14.25.120.  *See* SMC 14.25.150.B.2.  Hotel employers must also determine and record whether these individuals are managerial, supervisorial, or confidential employees.  Such a requirement subjects large hotel employers to reporting requirements that are unique in this locality for the maintenance of their ERISA-governed plans and interferes with nationally uniform ERISA plan administration.  ERISA's preemption provision seeks to protect ERISA plan sponsors from the burdens of complying with a multiplicity of varying state regulatory requirements.  *See Gobeille*, 136 S. Ct. at 943-44 (stating that "ERISA does not guarantee substantive benefits," but does "seek[] to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures . . . . intended to be uniform").

51. Part 3 and its implementing final Rules are, accordingly, preempted by ERISA insofar as they apply to large hotel employers that sponsor ERISA employee benefit plans for employees in the City.  Although ostensibly well-intentioned, Part 3 undermines the regime of nationally-uniform employee benefit plans envisioned in ERISA and protected by ERISA's preemption provision.

**DEFERRED REQUEST FOR PRELIMINARY RELIEF**

52. ERIC repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

53. ERIC is entitled to preliminary injunctive relief but defers seeking it at this time; instead, it will seek to negotiate with the City a temporary nonenforcement agreement pending

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 17
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

a final determination in the litigation or possible resolution through a significant amendment or revocation of Part 3, so as to save the Court from having to consider an emergency motion. ERIC reserves its right to seek a preliminary injunction should such negotiations be unsuccessful.

54. Part 3 will cause ERIC members to suffer immediate and irreparable injury for which there is no adequate remedy at law because: (a) ERIC members, under Part 3, are subject to a law that is invalid and preempted by ERISA; (b) beginning July 1, 2018, ERIC members must provide additional ERISA-covered benefits in accordance with Part 3 or, no later than the fifteenth day of each month beginning August 2018, make direct payments for the prior calendar month to the affected employee, or be subject to daily penalties; (c) ERIC members must maintain burdensome administrative records; and (d) ERIC members will suffer a competitive disadvantage relative to hotels and establishments offering fewer than 100 guest rooms for a fee. At a minimum, injury is irreparable where a litigant "will be forced either to incur the costs of compliance with a preempted state law or to face the possibility of penalties." *Am.'s Health Ins. Plans v. Hudgens*, 915 F. Supp. 2d 1340, 1364 (N. D. Ga. 2012), *aff'd*, 742 F.3d 1319 (2014) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)). Moreover, in the event the Court ultimately finds ERISA to preempt Part 3, there is no mechanism under Chapter 14.25, including Part 3, for ERIC's members – for the period in the meantime – to recover the cost of additional coverage provided or direct payments to affected employees made in compliance with Part 3 or any enforcement penalties paid to the City and remitted to hotel employees.

55. The harm to ERIC members cannot adequately be compensated by money damages, is irreparable absent injunctive relief, and is redressable only by appropriate

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 18
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

injunctive relief, including a preliminary injunction, and a declaration that Part 3 is invalid and preempted.

**REQUEST FOR RELIEF**

WHEREFORE, ERIC respectfully requests that this Court:

A.  Enjoin the City and its officers, agents, subordinates, and employees from implementing or enforcing any requirements under Part 3 and associated recordkeeping obligations or assessing penalties against ERIC members who are otherwise subject to Part 3 of Chapter 14.25 of the Seattle Municipal Code; and

B.  Declare, pursuant to 28 U.S.C. § 2201, that ERISA preempts Part 3 of Chapter 14.25 of the Seattle Municipal Code with respect to ERIC's members; and

C.  Grant ERIC such additional or different relief as is just and proper.

DATED:  August 14, 2018

KILPATRICK TOWNSEND & STOCKTON LLP

By */s/ Gwendolyn C. Payton*
Gwendolyn C. Payton, WSBA No. 26752
gpayton@kilpatricktownsend.com
Telephone: (206) 626-7713
Facsimile: (206) 260-8946
*Counsel for Plaintiff, The ERISA Industry Committee.*

COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF - 19
CASE NO. _____

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946