1                  THE HONORABLE THOMAS S. ZILLY

2

3

4

5

6

7              UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
8                 AT SEATTLE

9  THE ERISA INDUSTRY COMMITTEE,   )
                              )
10               Plaintiff,   )
                              )
11      v.                    )   Case No. 2:18-cv-01188
                              )
12  CITY OF SEATTLE,           )   **FIRST AMENDED COMPLAINT**
                              )   **FOR INJUNCTIVE AND**
13              Defendant.   )   **DECLARATORY RELIEF**
                              )
14                                )
                              )
15  _____)

16       Plaintiff, The ERISA Industry Committee ("ERIC"), on behalf of its member

17  companies, hereby files this first amended complaint against the City of Seattle ("City"), and

18  alleges as follows:

19                     **NATURE OF ACTION**

20       1.      ERIC seeks an injunction halting future enforcement of the ordinance codified

21  as Seattle Municipal Code ("SMC") 14.28, on the grounds that the Employee Retirement

22  Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., preempts it.  ERIC also seeks a

23  declaration that ERISA preempts SMC 14.28, as well as all other relief available under federal

24  law.[1]

25

26  _____
  [1] SMC 14.28 is available at
27  https://library.municode.com/wa/seattle/codes/municipal_code?nodeId=TIT14HURI_CH14.28I
  MACMECAHOEM&showChanges=true (Jan. 10, 2020).

FIRST AMENDED COMPLAINT FOR INJUNCTIVE       **KILPATRICK TOWNSEND & STOCKTON LLP**
AND DECLARATORY RELIEF- 1                 1420 FIFTH AVENUE, SUITE 3700
CASE NO. - 2:18-CV-01188-TSZ                  SEATTLE, WA  98101
                                       (206) 626-7713  FAX: (206) 260-8946

2.     SMC 14.28 is the successor to Initiative Measure No. 124 and former (now repealed) Part 3 of SMC 14.25, which had been approved by voters in November 2016, later added to the City's Municipal Code, and subsequently invalidated by the Court of Appeals for the State of Washington.

3.     Pursuant to SMC 14.28, large hotel employers and ancillary hotel businesses must – for most of their employees who work 80 hours or more per month – "make required healthcare expenditures to or on behalf of" the employees, in order to "improv[e] access to medical care."  SMC 14.28 (Preamble).  The employers have three options, in their "discretion," to comply:  (1) provide direct monthly payments to the employees in an amount set in the ordinance; (2) enroll the employees in group health insurance sponsored by the employers, where the employer's premium expenditure matches or exceeds the amount set in the ordinance; or (3) cover the employees in the employer's self-funded health plan, so that the average per-capita monthly expenditures for the individuals matches or exceeds the amount in the ordinance.  *Id.* § 14.28.060.B.

4.     ERISA expressly provides that it "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan."  29 U.S.C. § 1144(a) (emphasis added).  ERISA's preemption provision has a "broad scope" (*Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016)), with the U.S. Supreme Court repeatedly emphasizing that the provision's text is "clearly expansive," has "an expansive sweep," is "conspicuous for its breadth," is "deliberately expansive," and is "broadly worded."  *Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A.*, 519 U.S. 316, 324 (1997) ("*Dillingham*") (internal quotation marks and citations omitted) (cataloging statements in prior precedents).  ERISA's preemption provision is intended to make the regulation of employee benefit plans "exclusively a federal concern," so as to foster such plans' creation and growth.  *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981).  It applies to the laws of a state or any of its subdivisions, including municipalities.  *See* 29 U.S.C. § 1144(c)(2).

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF- 2 CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

5.      SMC 14.28 "relate[s] to" ERISA plans, and therefore is preempted, on at least the following three bases, either independently or in combination:

a.      SMC 14.28 impermissibly requires, under any of its options for compliance, the creation of ERISA plans.  Whether an employer seeks to comply via direct payments to the employee, the provision of group health insurance, or the provision of a self-funded plan, the employer establishes and maintains, at a minimum, an on-going, discretion-laden program and administrative process for the purpose of defraying, through the purchase or insurance "or otherwise," its employees' costs for healthcare, thereby satisfying the definition for the existence of an ERISA plan.  29 U.S.C. § 1002(1); *see e.g.*, *Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498, 1502-05 (9th Cir. 1993); *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323-24 (9th Cir. 1992).

b.      SMC 14.28's operation inevitably turns on "the value or nature of the benefits available to ERISA plan participants," with compliance under any of its options turning on the value of the coverage and benefits afforded to a covered employee.  *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 546 F.3d 639, 658 (9th Cir. 2008) (distinguishing local ordinances that are "measured by reference to the level of *benefits* provided by the ERISA plan to the employee" and are ERISA-preempted, from ordinances where the "employer calculates its required payments based on the hours worked by its employees" and may not be ERISA-preempted).  Moreover, under all of its options, SMC 14.28 overtly mentions ERISA plans, among other things, by hinging (for any option) an employer's obligations on whether the employer offers an employer-sponsored insured or self-funded ERISA plan to which the employee refuses to subscribe and by conditioning (for any option) an employee's eligibility on whether the employee receives "employer-sponsored health insurance through [another] employer."  SMC 14.28.060.D., .030.B.2.  On this ground, SMC 14.28 fails under what has come to be known as the "reference to" prong of ERISA preemption – *i.e.*, a state law "relate[s] to" an ERISA plan when it makes a "reference to" an ERISA plan.  *Gobeille*, 136 S. Ct. at 943.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF- 3 CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

c.      SMC 14.28 is preempted under the so-called "connection with" prong of ERISA preemption – *i.e.*, a state law "relate[s] to" an ERISA plan if it has an impermissible "connection with" an ERISA plan.  *Id.* at 943.  State laws have an impermissible connection with ERISA plans where they "'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'"  *Id.* (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 668 (1995) ("*Travelers*")).  SMC 14.28, in effect, compels large hotel employers and ancillary hotel businesses to alter their current insured or self-funded coverage both to include employees covered by SMC 14.28 and for consistency with the value-level requirements of the second and third options.  The first option's direct-payment route is, on its face as well as indirectly, financially more onerous and therefore not a realistic and legitimate alternative to the second and third options.

6.      On these and other bases, ERISA squarely and straightforwardly preempts SMC 14.28, and the Court should enjoin SMC 14.28's enforcement and declare it null and void.  Large hotel employers and ancillary hotel businesses in the City, like all private employers in Seattle and everywhere else in the Nation, are subject to exclusively federal rules in the provision of health benefits for their employees.

## PARTIES

7.      ERIC is a nonprofit trade association with its principal place of business in Washington, DC.

8.      ERIC represents the interests of employers with 10,000 or more employees that sponsor for their own workforce health, retirement, and compensation benefit plans governed by ERISA.  ERIC's member companies voluntarily provide benefits through these plans to millions of workers and their families across the Nation, and ERIC represents the interests of these member companies with respect to legislation, litigation, regulations, and other governmental action concerning their establishment or maintenance of employee benefit plans.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 4
CASE NO. - 2:18-CV-01188-TSZ

9.      ERIC's member companies operate in every major sector of the Nation's economy.  Among ERIC's members are one or more employers owning or operating large hotels or ancillary hotel businesses in the City.

10.      ERIC is the only national association that advocates exclusively for large employer plan sponsors on health, retirement, and compensation public policies on the federal, state, and local levels.  ERIC's mission includes lobbying and litigation advocacy for nationally-uniform laws regarding employee benefits as contemplated by ERISA, so that ERIC's member companies may lawfully operate under ERISA's protection from a patchwork of different and conflicting state and local laws in addition to federal law.  To fulfil its purpose, ERIC previously has brought suit against governmental authorities to challenge state laws and regulations on the grounds of ERISA preemption.  It advocates to preserve ERISA's national uniformity, which protects employers and employees from disparate state and local regulation of health and retirement plans.

11.      The City is a political subdivision of the State of Washington located in this District.  The City enforces and is responsible for administering SMC 14.28.

## JURISDICTION AND VENUE

12.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this case arises under federal law, including the U.S. Constitution's Supremacy Clause.  *See* U.S. Const. art. VI; *see also Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983).

13.      The Court also has subject matter jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as ERIC, a nonprofit trade association, is incorporated in Washington, DC and has its principal place of business in Washington, DC; the City of Seattle is located in the State of Washington; and the amount in controversy exceeds $75,000.

14.      ERIC has standing to pursue this action on behalf of its member companies because:  the employers who are its members that operate large hotels or ancillary hotel businesses in Seattle suffer a direct and adverse impact from the application of SMC 14.28 and

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF- 5 CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP** 1420 FIFTH AVENUE, SUITE 3700 SEATTLE, WA  98101 (206) 626-7713  FAX: (206) 260-8946

1  thus would have standing in their own right; the preemption interest ERIC seeks to protect is at

2  the core of ERIC's mission; and the relief sought – which is injunctive and declaratory – does

3  not require the participation of individual members.  *See Hunt v. Wash. State Apple Advertising*

4  *Comm'n*, 432 U.S. 333, 343 (1977).

5      15.     The Court has personal jurisdiction over the City because it resides within the

6  Western District of Washington.

7      16.     Venue is proper pursuant to 28 U.S.C. § 1391, because the events giving rise to

8  the suit occurred in this District, the City resides in this District and adopted SMC 14.28 in this

9  District, and SMC 14.28 applies to large hotel employers and ancillary hotel businesses and is

10  enforceable in this District.

## BACKGROUND

11

12  *SMC 14.28's Predecessor Ordinance*

13      17.     Part 3 of former SMC 14.25 ("Part 3") predated the current SMC 14.28.  Part 3

14  was enacted through the Washington State initiative process in 2016, and became effective

15  either at that time or when final regulations later were issued in July 2018.

16      18.     Part 3 was entitled Improving Access to Medical Care for Low Income Hotel

17  Employees.  The stated intent of Part 3 was "to improve access to affordable family medical

18  care for hotel employees" and to provide "[a]dditional compensation reflecting hotel

19  employees' anticipated family medical costs . . . to improve access to medical care for low

20  income hotel employees."  SMC 14.25.110 (2016).

21      19.     Part 3 applied to certain large hotel owners (but not ancillary hotel businesses)

22  in the City and required the employer to pay additional wages to covered employees – namely,

23  those working at least 80 hours per month – to cover health insurance expenses; however, the

24  employer could avoid the obligation to pay additional wages if it "provide[d] health and

25  hospitalization coverage at least equal to a gold-level policy on the Washington Health Benefit

26  Exchange at a premium or contribution cost to the employee of no more than five percent of the

27

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 6
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

employee's gross taxable earnings paid to the employee by the hotel employer or its contractors or subcontractors." *Id.* § 14.25.120.B.

20.     In response to Part 3, one or more ERIC member companies affected by Part 3 altered their employer-sponsored health benefit plans to offer coverage to employees encompassed in Part 3, given that the direct-payment requirement was financially more onerous in comparison.  They also did so, given that there was no assurance under Part 3 that an employee who received additional wages (rather than coverage under the employer's ERISA plan) necessarily would use the monies reasonably on healthcare.

21.     As ERIC member companies began considering how to implement changes to their health benefit plans in order to comply with Part 3, ERIC brought suit in this Court to challenge Part 3 as preempted by ERISA.  While competing motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and for summary judgment pursuant to Fed. R. Civ. P. 56 were pending, the Washington Court of Appeals, in *American Hotel & Lodging Ass'n, et al. v. City of Seattle, et al.*, Case No. 77918-4-I (Wash. Ct. App.), invalidated the entirety of the Initiative that included Part 3 as violative of the Washington Constitution's prescribed initiative process. This Court then stayed proceedings in ERIC's lawsuit pending further proceedings in the state court case in the Washington Supreme Court.  In the meantime, the City agreed not to enforce Part 3 while the stay was in effect, but reserved the right to enforce Part 3 retroactively should Part 3 be upheld.  As a result, one or more of ERIC's member companies acted in compliance with Part 3 and completed the process of adding employees covered by Part 3 to its health benefits plans in compliance with Part 3.

22.     Before the Washington Supreme Court resolved the state court case, the City repealed Part 3 and replaced it with SMC 14.28.  The Washington Supreme Court then dismissed the state court case as moot, and this Court lifted the stay in the instant case.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF- 7
CASE NO. - 2:18-CV-01188-TSZ

1

***SMC 14.28's Enactment and Provisions***

2

23.     The Seattle City Council passed SMC 14.28 on September 12, 2019, and the

3

City's Mayor signed the ordinance into law on September 24, 2019.  The official title of SMC

4

14.28 is "the 'Improving Access to Medical Care for Hotel Employees Ordinance.'"  SMC

5

14.28.010.

6

24.     Part 3 was formally repealed on September 23, 2019 to "give full effect" to

7

SMC 14.28.  Ordinance 125939.[2]

8

25.     At the outset, SMC 14.28 states its purpose to be "requiring certain employers to

9

make required healthcare expenditures to or on behalf of certain employees for the purpose of

10

improving access to medical care."  SMC 14.28 (Preamble).  The ordinance's "intent . . . is to

11

improve low-wage hotel employees' access, through additional compensation, to high-quality,

12

affordable health *coverage* for the employees and their spouses or domestic partners, children,

13

and other dependents."  *Id.* § 14.28.025 (emphasis added).  The City "identified a need to

14

provide immediate protection to low-wage hotel employees by passing a package of new labor

15

standard ordinances."  *Id.* § 14.28 (Preamble).  The City stated that "ensuring that low-wage

16

hotel employees have access through additional compensation to high-quality, affordable health

17

coverage can help create greater workplace satisfaction, healthier employees, and  . . . improve

18

population health."  *Id.*

19

26.     Under SMC 14.28, eligible employees are full or part-time or temporary

20

workers, must work an average of 80 hours or more per month, and must not be a manager,

21

supervisor, or confidential employee.  *See id.* §§ 14.28.030, 14.28.020.

22

27.     Under SMC 14.28, covered employers are owners or operators of a hotel with

23

100 or more guest rooms in the City and ancillary hotel businesses with 50 or more employees

24

worldwide.  *Id.* §§ 14.28.040, 14.28.020.  "Ancillary hotel business" is "any business that (1)

25

routinely contracts with the hotel for services in conjunction with the hotel's purpose; (2) leases

26

[2] Available at

27

http://seattle.legistar.com/LegislationDetail.aspx?ID=4136461&GUID=47492D3F-753A-45AD-AD30-DE9B21DAD5B2&Options=ID|Text|&Search=125939.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 8
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

or sublets space at the site of the hotel for services in conjunction with the hotel's purpose; or (3) provides food and beverages, to hotel guests and to the public, with an entrance within hotel premises." *Id.* § 14.28.020.

28.     SMC 14.28 requires covered employers to make, each month, "[r]equired healthcare expenditures for covered employees" of $420 if an employee has no spouse, domestic partner, or dependents; $714 for an employee with dependents only; $840 for an employee and spouse/domestic partner; and $1260 for an employee with spouse, domestic partner, and dependents. *Id.* § 14.28.060.A.1-A.4.  These are "2019 rates" and are "subject to annual adjustments based on the medical inflation rate." *Id.* § 14.28.060.A.

29.     Covered employers "have discretion as to the form of the monthly required healthcare expenditures they choose to make for their covered employees." *Id.* § 14.28.060.B. They "may satisfy their monthly obligations through any one or more of the following [three] forms," either individually or in combination:

      a.     First option:  "[A]dditional compensation directly to the covered employee" (*id.*);

      b.     Second option:  "Payments to a third party, such as to an insurance carrier or trust, or into . . . tax favored health programs, (including health savings accounts, medical savings accounts, health flexible spending arrangements, and health reimbursement arrangements) to provide healthcare services, for the purpose of providing healthcare services to the employee or the spouse, domestic partner, or dependents of the covered employee (if applicable)" (*id.*); and

      c.     Third option:  "Average per-capita monthly expenditures for healthcare services made to or on behalf of covered employees or [the spouse or dependents] by the employer's self-insured and/or self-funded insurance program(s)." *Id.*

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 9
CASE NO. - 2:18-CV-01188-TSZ

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

30.     For purposes of the second and third options, "[h]ealthcare services" are medical care and services under Internal Revenue Code (26 U.S.C.) § 213, which allows deduction for such care and services not covered by insurance.  SMC 14.28.020.  Also for purposes of these options, "if an employer imposes a waiting period before new hires can be enrolled in its employer-sponsored plan (or the plan or insurer carrier mandates such a period), the employer will not be required to satisfy the health expenditures described in 14.28.060.A until the sooner of sixty days from the date of hire or the expiration of the waiting period." *Id.* § 14.28.060.C.

31.     An employer will be "deemed to have satisfied" its monthly obligations under *any* of the three options, if "an employee voluntarily declines an employer's offer" of compliance through the second and third options – *i.e.*, an offer of coverage under the employer's insured or self-funded employer-sponsored health plan. *Id.* § 14.28.060.D.  For the offer to be valid, the employer "must not require the employee to pay more than a dollar amount equivalent to 20 percent of the monthly required health amount described in subsection 14.28.060.A.1," assumedly such as through the employee's portion of an insurance premium or other cost-sharing. *Id.*  A declination occurs when the employer "obtain[s] a signed waiver from the employee, free from coercion," after presenting a waiver form to the employee. *Id.* But if the employer makes the offer and the employee who receives the waiver form "refuses to sign such waiver," and "continues to decline, in whole or in part," the employer "will be deemed to have satisfied its required healthcare expenditure rate for that employee." *Id.*  In that situation, the employer must keep records of the offer and "the employee's subsequent refusal to sign the waiver." *Id.*

32.     SMC 14.28 contains certain exceptions and exemptions.

a.     An employer is exempted from its monthly obligations under SMC 14.28.060 for an employee "who receives health coverage from another source, including but not limited to employer-sponsored health insurance through an employer other than the covered employer." *Id.* § 14.28.030.B.2.  Such an employee may waive coverage from § 14.28 by

signing a waiver that he or she "has access to high-quality and affordable health coverage from another source." *Id.* § 14.28.030.B.2.a.

b.    SMC "14.28 shall not apply to any employees covered by a bona fide collective bargaining agreement to the extent that such requirements are expressly waived in the collective bargaining agreement." *Id.* § 14.28.235.A.

33.    The employer must retain records documenting compliance with SMC 14.28. *See id.* § 14.28.110.  In particular, where an employer satisfies its obligations by making an offer of employer-sponsored coverage through the second or third options under SMC 14.28.060 that is declined, the employer must keep records of the offer, the provision of a waiver form to the employee, and "the employee's subsequent refusal to sign the waiver." *Id.* § 14.28.060.D.

34.    With respect to enforcement, the City may investigate violations of SMC 14.28 and has subpoena authority.  *Id.* §§ 14.28.130, 14.28.150.E.  In the event of a violation, the City may levy civil fines and penalties payable to the City, as well as require "unpaid compensation, liquidated damages, civil penalties, [and] penalties payable to aggrieved parties." *Id.* § 14.28.160.C.1.   Section 14.28.230 provides a private right of action to "[a]ny person or class of persons that suffers an injury as a result of a violation" of SMC 14.28.

35.    The effective date for SMC 14.28 is the later of July 1, 2020, or the earliest annual open enrollment period for health coverage after July 1, 2020, except that ancillary hotel businesses with 50 to 250 employees shall have until similar dates in 2025 to comply.  *Id.* § 14.28.260.

36.    Despite the stated intent of SMC 14.28 to require additional healthcare expenditures by large hotel employers and ancillary hotel businesses for employee access to medical care, the ordinance offers no mechanism for employers to ensure that employees who receive additional compensation under the first option expend it on health insurance coverage or medical care.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 11
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

37.     SMC 14.28 applies only to hotels with 100 or more rooms in the City. Accordingly, large hotel employers suffer a competitive disadvantage against hotels with fewer than 100 rooms, such as boutique hotels, independent hotels, Airbnb hosts, and all other establishments offering accommodations for a fee in the City.  Some covered employers may also suffer competitive disadvantage by complying, if their competitors' employees are subject to a collective bargaining agreement that properly waives the ordinance's application.

### *ERISA Preemption*

38.     ERISA's coverage extends to any employee benefit plan established or maintained by a private employer or employee organization (such as a union).  29 U.S.C. § 1003(a), (b).  The health benefit plans contemplated under SMC 14.28 are regulated by ERISA.

39.     Despite ERISA's broad coverage, "[n]othing in ERISA requires employers to establish employee benefits plans.  Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996); *see also Conkright v. Frommert*, 559 U.S. 506, 516 (2010) ("Congress enacted ERISA to ensure that employees would receive the benefits they had earned, but Congress did not require employers to establish benefit plans in the first place.").  Rather, ERISA leaves employers free "for any reason at any time, to adopt, modify, or terminate [benefit] plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995).

40.     In enacting ERISA, Congress undertook "a careful balancing" to encourage the creation of employee benefit plans and "'to create a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'"  *Conkright,* 559 U.S. at 517 (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996)).  Thus, "ERISA 'induc[es] employers to offer benefits by assuring a predictable set of liabilities, under uniform standards of primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred.'"  *Id.* (quoting *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 379 (2002)).

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 12
CASE NO. - 2:18-CV-01188-TSZ

41.     Uniformity and affordability in the regulation and administration of ERISA plans was paramount to Congress:  "'Requiring ERISA administrators to master the relevant laws of 50 States and to contend with litigation would undermine the congressional goal of "minimiz[ing] the administrative and financial burden[s]" on plan administrators – burdens ultimately borne by the beneficiaries.'"  *Gobeille,* 136 S. Ct. at 944 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 149-50 (2001), quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990), and *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 9 (1987)).

42.     Congress therefore adopted ERISA's preemption section, which states the broad preemptive effect of the statute, providing that "the provisions of [ERISA] . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) and not exempt under section 1003(b)." 29 U.S.C. § 1144(a). "State law[s]" are defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," with "State," in turn, including "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate directly or indirectly, the terms and conditions of employee benefit plans covered by [ERISA]." *Id.* § 1144(c)(1)-(2).

43.     ERISA's preemption section "indicates Congress's intent to establish the regulation of employee welfare benefit plans as exclusively a federal concern." *Gobeille*, 136 S. Ct. at 944 (internal quotation marks and citation omitted).

44.     Under ERISA's preemption provision, a state law "relate[s] to" an employee benefit plan if it has a "reference to" ERISA plans or has a "connection with" ERISA plans, with either resulting in preemption. *Id.* at 943.

45.     "To be more precise, '[w]here a State's law acts immediately and exclusively upon ERISA plans . . .  or where the existence of ERISA plans is essential to the law's operation . . ., that 'reference' will result in pre-emption.'" *Id.* (quoting *Dillingham*, 519 U.S. at 325).

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 13
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

46.     In addition, a state law will have an impermissible "connection with" an ERISA plan if "'acute, albeit indirect, economic effects'" of the state law "'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'" *Id.* at 943 (quoting *Travelers*, 514 U.S. at 668).

47.     In addition, a state law that "'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration,'" such as with regard to reporting and recordkeeping, likewise has an impermissible connection with ERISA plans and is preempted.  *Id.* at 943 (quoting *Egelhoff*, 532 U.S. at 148).

48.     There is no presumption against preemption under ERISA's express preemption provision.  Through the Supreme Court had at one time endorsed such a presumption where states seek to exercise power in traditional areas of state regulation (*see Travelers*, 514 U.S. at 655), it has since renounced it, holding that express preemption provisions, including ERISA's, simply shall be interpreted pursuant to their terms.  *See Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 136 S. Ct. 1938, 1946 (2016) (citing *Gobeille*); *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 257-59 (5th Cir. 2019); *see also Atay v. Cty. of Maui*, 842 F.3d 688, 699 (9th Cir. 2016) (cited in *Dialysis Newco*).  At a minimum, there is no presumption against express preemption under ERISA where a state law "amounts to a direct regulation of a fundamental ERISA function."  *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 666 (9th Cir.) (internal quotation marks and citation omitted), *cert. denied*, 140 S. Ct. 223 (2019).

## CLAIM FOR RELIEF

### ERISA Preemption (29 U.S.C. § 1144(a))

49.     ERIC repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

50.     ERISA preempts state and local laws that "relate to" ERISA plans.  29 U.S.C. § 1144(a).  State and local laws that have a "reference to" or "connection with" ERISA plans "relate to" them and are preempted.  *Gobeille*, 136 S. Ct. at 943.

51.     Chapter 14.28 requires large hotel employers and ancillary hotel businesses to make "required healthcare expenditures to or on behalf of each covered employee" in the form of – in the employer's discretion – direct monetary payments to the employee, an employer-sponsored insured health plan, or an employer-sponsored self-funded health plan.  SMC 14.28.060.A.

52.     SMC 14.28 has a "reference to" and "connection with" ERISA plans, and therefore is preempted under ERISA's preemption provision, because it requires, under each of its three options, the creation of ERISA plans.

a.     Under ERISA, an "employee welfare benefit plan" or  "welfare plan" means "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, *through the purchase of insurance or otherwise*,  . . . medical, surgical, or hospital care or *benefits*, or *benefits* in the event of sickness . . . ."  29 U.S.C. § 1002(1) (emphasis added).

b.     The first option for compliance under § 14.28.060 – *i.e.*, regularized direct payments to employees to defray the employees' medical costs – constitutes a program of medical benefits established or maintained by the employer, through the purchase of insurance or otherwise, for the purpose of providing for the employee's medical costs, thereby constituting an ERISA welfare plan.  *See, e.g.*, *Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498, 1502-05 (9th Cir. 1993) (holding that state-law requirement of annual employer payment to defray cost of employee federally-mandated pilot exams constituted "medical benefit" and ERISA plan and was preempted); *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992) (holding that one-time payment of money in event of employment termination constituted an ERISA plan).  Under this option, as relevant for the existence of an ERISA plan, the employer must maintain an on-going administrative scheme and exercise discretion, such as by determining the number of eligible persons based on the employer's workforce needs, by monitoring satisfaction of waiver requirements, and by determining whether to offer the second

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

or third options for compliance, the refusal of which will lead to forfeiture of health expenditures under even the first option. *See Aloha Airlines*, 12 F.3d at 1503 (employer discretion present because "an airline cannot often predict how many pilots of a particular status it will need during the coming year"); *Bogue*, 976 F.2d at 1323 (ERISA plan existed where there was "ongoing, particularized, administrative discretionary analysis" for the employer); *cf. Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 546 F.3d 639, 651 (9th Cir. 2008) (in rejecting existence of ERISA plan, distinguishing *Bogues* due to lack of "*[a]ny* potentially subjective [employer] judgments") (emphasis added).

c.      The second and third options for compliance under § 14.28.060 – *i.e.*, payments to an insurance carrier for group insurance or payments through a self-funded plan – readily constitute a plan, fund, or program of medical benefits established or maintained by the employer, through the purchase of insurance or otherwise, for the purpose of providing for the employee's medical costs, thereby constituting an ERISA welfare plan. *See FMC Corp. v. Holliday*, 498 U.S. 52, 60-62 (1990) (noting differences between insured and self-funded employer-sponsored health plans and determining both to be ERISA plans).

53.      Separately or additionally, SMC § 14.28 makes a "reference to" ERISA plans because compliance, under any of its options, is measured by the value of the benefits provided. A state statute makes an impermissible reference to ERISA plans where "obligations [are] measured by reference to the level of *benefits* provided by the ERISA plan to the employee" or "[t]he employer calculates its required payments based on . . . *the value* or nature of the benefits available to ERISA plan participants." *Golden Gate Rest. Ass'n*, 546 F.3d at 658 (first emphasis in original; second emphasis added). Under the first option, direct, regular monthly payments to the employee to cover expected medical costs are themselves the ERISA benefit, and compliance turns on whether that benefit meets the value requirements set out in § 14.28.060.A. *See Bogue*, 12 F.3d at 1502 (rejecting argument that "only those 'medical benefits' that provide personal, direct, and immediate aid to a participant employee are within ERISA's purview"); *accord DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF- 16
CASE NO. - 2:18-CV-01188-TSZ

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

F.3d 868, 874 (9th Cir. 2017) (holding that "[t]he term 'benefit' in [ERISA] . . . refers to specific *advantages* provided to covered employees, as a consequence of their employment, for particular purposes connected to alleviating various life contingencies") (emphasis added). Under the second option, an employer satisfies its obligations only if it purchases an insurance plan with sufficient benefits and value as to be priced at a level equal to or above SMC 14.28's specifications.  Under the third option, an employer satisfies its obligations only if, per capita on average, the value of the benefits it pays under its self-funded plan is equal to or above SMC 14.28's specifications.

54.     Separately or additionally, SMC § 14.28 makes "reference to" ERISA plans in other ways, acting immediately and exclusively upon ERISA plans and with the existence of ERISA plans being essential to the law's operation, so as to be preempted under ERISA's preemption provision.

a.      On its face, the second option makes compliance turn on the employer paying an "insurance carrier or trust," which is a reference to an ERISA plan.  SMC 14.28.060.B.2.

b.      On its face, the third option makes compliance turn on whether the employer makes average per capita payments through "the employer's self-insured and/or self-funded insurance program(s)," which is a reference to an ERISA plan.  *Id.* § 14.28.060.B.3.

c.      On the face of SMC 14.28, when monthly payments must be made to new hires under the second and third options is measured by the waiting period in the "employer-sponsored plan," which is a reference to an ERISA plan.  *Id.* § 14.28.060.D.

d.      An employer will be deemed to have satisfied SMC 14.28, under any of the three options, if the employee refuses an employer's offer of coverage under an employer-sponsored insured plan or employer-sponsored self-funded plan where the employee's cost-sharing requirement is no greater than "20 percent of the monthly required healthcare amount," which is a reference to an ERISA plan and its specific terms.  *Id.* § 14.28.060.D.1.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 17
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

e.     SMC 14.28's scope excludes individuals who have "health coverage" from "employer-sponsored coverage through an employer other than the covered employer," which is a reference to an ERISA plan.  *Id.* § 14.28.030.B.2.

55.     Separately or additionally, SMC 14.28 has an impermissible "connection with" ERISA plans because it forces large hotel employers and ancillary businesses to adopt or maintain a certain scheme of substantive coverage.  Effectively, SMC 14.28 compels large hotel employers and ancillary hotel businesses to alter their current insured or self-funded coverage both to make eligible for coverage those employees covered by SMC 14.28 and to provide benefits consistent with the value-level requirements of the second and third options. The first option's direct-payment route is financially more onerous and otherwise problematic compared to the second and third options, so as not to offer "employers a realistic alternative to creating or altering ERISA plans."  *Golden Gate Rest. Ass'n*, 546 F.3d at 660; *see Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 197 (4th Cir. 2007) (holding that Maryland health-plan law that "leaves employers no reasonable choices except to change how they structure their employee benefit plans" is preempted because it "directly regulates employers' provision of healthcare benefits" and has a "'connection with' covered employers' ERISA plans").  The first option under SMC 14.28.060 is financially more onerous or otherwise problematic because:

a.     If they are required to spend additional corporate funds, rational employers will do so in a manner whereby they can ensure that the money will be used for health benefits for their workers (as is the case under the second and third options).

b.     Direct payments are costlier to employers because they will have to pay federal employment taxes on the additional direct payments, whereas additional expenditures on health plan coverage are not subject to federal employment taxes.

c.     Offering health coverage to the employee is more financially advantageous to the employee, and thus more appealing to the employer, because the employee must pay federal employment taxes and income taxes on the direct payments but not the health coverage.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 18
CASE NO. - 2:18-CV-01188-TSZ

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

d.      Offering health coverage to the employee through insured or self-funded employer-sponsored plans is more advantageous to the employee who actually wants health coverage, and thus more appealing and administratively feasible to the employer, because greater coverage for the same amount typically can be obtained through a program covering a large group than individually.  And because the ordinance allows a 20% contribution for health insurance by the employee with regard to an insured or self-funded employer-sponsored plan, in addition to the minimum required employer expenditure, the employee can obtain coverage through a program involving a large group with a value of 120% of the employer minimum expenditure level (at 20% cost to the employee), rather than the lesser individual coverage that could be purchased entirely by the employee at the 100% direct-payment level.

e.      The City's earlier passage of Part 3 resulted in employers covered by that law altering their ERISA plans to bring them into compliance with Part 3, and it is unrealistic to expect employers who have already done the difficult work of adjusting their employee-benefit arrangements to cover the additional individuals to undo the new administrative regime in favor of direct payments.  Instead, the City's legislative maneuvering has created "sunk costs" for covered employers, resulting in the only reasonable option being for them now to further adjust the employer-sponsored coverage they were compelled to offer to ensure compliance with SMC 14.28.060's second and third options, unless the ordinance is invalidated and its enforceability is enjoined.

56.      Separately or additionally, SMC 14.28 has an impermissible "connection with" ERISA plans because it imposes on large hotel employers' and ancillary hotel businesses' administrative, record-keeping, and reporting requirements, including determining and recording whether individuals have "refused" the employer's offer of compliance under SMC 14.28, are managerial, supervisorial, or confidential employees, and have other employer-sponsored coverage through another employer.  The ordinance subjects employers to administrative and reporting requirements that are unique in this locality for the maintenance of their ERISA-governed plans and interferes with nationally uniform ERISA plan administration.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 19
CASE NO. - 2:18-CV-01188-TSZ

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

ERISA's preemption provision seeks to protect ERISA plan sponsors from the burdens of complying with a multiplicity of varying state regulatory requirements.  *See Gobeille*, 136 S. Ct. at 943-44 (stating that "ERISA does not guarantee substantive benefits," but does "seek[] to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures . . . intended to be uniform").

57.     SMC 14.28, accordingly, is preempted by ERISA insofar as it applies to large hotel employers and ancillary hotel businesses that sponsor ERISA employee benefit plans for employees in the City.  Although ostensibly well-intentioned, the ordinance undermines the regime of nationally-uniform employee benefit plans envisioned in ERISA and protected by ERISA's preemption provision.  *See Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987) (observing that ERISA preemption prevents a "patchwork scheme of regulation [that] would introduce considerable inefficiencies in benefit program operation").

## DEFERRED REQUEST FOR PRELIMINARY RELIEF

58.     ERIC repeats and realleges each and every allegation contained in the above paragraphs as if fully set forth herein.

59.     ERIC is entitled to preliminary injunctive relief but defers seeking it at this time; instead, in the event the case is not resolved by motion prior to the start of SMC 14.28's effective date, ERIC will seek to negotiate with the City a temporary nonenforcement agreement pending a final determination in the litigation, so as to save the Court from having to consider an emergency motion.  ERIC reserves its right to seek a preliminary injunction should such negotiations be unsuccessful.

60.     SMC 14.28 will cause ERIC member companies to suffer immediate and irreparable injury for which there is no adequate remedy at law because:  (a) ERIC member companies, under SMC 14.28, are subject to a law that is invalid and preempted by ERISA; (b) beginning on the ordinance's effective date, ERIC member companies must provide additional ERISA-plan benefits in accordance with SMC 14.28 or be subject to penalties; and (c) ERIC member companies will suffer a competitive disadvantage relative to hotels and establishments

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

offering fewer than 100 guest rooms for a fee or whose workers are subject to collective

bargaining agreements containing appropriate waivers of SMC 14.28.  At a minimum, injury is

irreparable where a litigant "will be forced either to incur the costs of compliance with a

preempted state law or to face the possibility of penalties."  *Am.'s Health Ins. Plans v.*

*Hudgens*, 915 F. Supp. 2d 1340, 1364 (N. D. Ga. 2012), *aff'd*, 742 F.3d 1319 (11th Cir. 2014)

(citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)).  Moreover, in the

event the Court ultimately finds ERISA to preempt SMC 14.28, there is no mechanism under

the ordinance for ERIC's member companies – for the period in the meantime – to recover the

cost of compliance or any enforcement penalties.

61.     The harm to ERIC member companies cannot adequately be compensated by

money damages, is irreparable absent injunctive relief, and is redressable only by appropriate

injunctive relief, including a preliminary injunction, and a declaration that SMC 14.28 is

invalid and preempted.

**REQUEST FOR RELIEF**

WHEREFORE, ERIC respectfully requests that this Court:

A.     Enjoin the City and its officers, agents, subordinates, and employees from

implementing or enforcing any requirements under SMC 14.28 or taking enforcement action

against ERIC member companies who are otherwise subject to SMC 14.28; and

B.     Declare, pursuant to 28 U.S.C. § 2201, that ERISA preempts SMC 14.28 with

respect to ERIC's member companies; and

C.     Grant ERIC such additional or different relief as is just and proper.


DATED: January 21, 2020

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 21
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1

KILPATRICK TOWNSEND & STOCKTON LLP

2

3    By  */s/ Gwendolyn C. Payton*
     Gwendolyn C. Payton, WSBA No. 26752
4    gpayton@kilpatricktownsend.com
     Telephone: (206) 626-7713
5    Facsimile: (206) 260-8946

6

7    MILLER & CHEVALIER CHARTERED

8    Anthony F. Shelley (admitted pro hac vice)
     Theresa S. Gee (admitted pro hac vice)
     MILLER & CHEVALIER CHARTERED
9    900 Sixteenth St. NW
     Washington, DC 20006
10   Telephone:  202.626.5800
     ashelley@milchev.com
11   tgee@milchev.com

12   *Counsel for Plaintiff, The ERISA Industry*
     *Committee.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 22
CASE NO. - 2:18-CV-01188-TSZ

## CERTIFICATE OF SERVICE

I, Gwendolyn C. Payton, hereby certify under penalty of perjury of the laws of the State of Washington and the United States of America, that on January 21, 2020, I caused to be served a copy of the attached document FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF to the following person(s) in the manner indicated below at the following address(es):

Jeffrey Lewis
KELLER ROHRBACK LLP
300 LAKESIDE DRIVE, STE 1000
OAKLAND, CA 94612
Email:  jlewis@kellerrohrback.com

Erin Maura Riley
Rachel E. Morowitz
KELLER ROHRBACK
1201 3RD AVE, STE 3200
SEATTLE, WA 98101-3052
Email:  eriley@kellerrohrback.com
Email:  rmorowitz@kellerrohrback.com

Jeremiah Miller
SEATTLE CITY ATTORNEY (94667)
700 FIFTH AVENUE #2050
SEATTLE, WA 98104-7097
206-256-5495
Email: jeremiah.miller@seattle.gov

☑ **by CM/ECF**
☐ **by Electronic Mail**
☐ **by Facsimile Transmission**
☐ **by First Class Mail**
☐ **by Hand Delivery**
☐ **by Overnight Delivery**

/s/ *Gwendolyn C. Payton*
Gwendolyn C. Payton

FIRST AMENDED COMPLAINT FOR INJUNCTIVE
AND DECLARATORY RELIEF- 23
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946