THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE ERISA INDUSTRY COMMITTEE,

                                    Plaintiff,

        v.

CITY OF SEATTLE,

                                    Defendant.

Case No. 2:18-cv-01188

**DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

NOTE ON MOTION CALENDAR:
April 10, 2020

**ORAL ARGUMENT REQUESTED**

**MOTION TO DISMISS**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND ................................................................................................. 2

III.    LEGAL STANDARD.......................................................................................... 6

IV.     ARGUMENT ...................................................................................................... 6

A. The Ordinance is beyond the scope of ERISA preemption. .................................. 7

    1.   The Ordinance is an exercise of core State police power that should be presumed not preempted.................................................................................................. 9

    2.   ERISA preemption protects only plan administration. ................................. 12

B. Covered employers' obligation to make monetary payments to or on behalf of workers does not constitute an ERISA plan.............................................................................. 14

C. The Ordinance does not "relate to" ERISA plans under *Golden Gate* and is therefore not preempted............................................................................................................ 17

    1.   The Ordinance has no impermissible "connection with" any ERISA plan. .............. 17

    2.   The Ordinance makes no impermissible "reference to" any ERISA plan. ................. 21

V.      CONCLUSION.................................................................................................... 24

**MOTION TO DISMISS– Page i**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

# TABLE OF AUTHORITIES

## Cases

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004)......................................................... 13

*Aloha Airlines, Inc. v. Ahue* ........................................................................................... 16

*Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) ............................................................... 10

*Am. Hotel & Lodging Ass'n v. City of Seattle*, 432 P.3d 434 (Wash. Ct. App. 2018)................... 3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 6

*Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*, 870 F.3d 1140
   (9th Cir. 2017)............................................................................................................ 10

*Atay v. Cty. Of Maui*, 842 F.3d 688 (9th Cir. 2016) ....................................................... 9

*Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005) ................................................. 10

*Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 903 F.3d 829
   (9th Cir. 2018)............................................................................................................. 8

*Bogue v. Ampex Corp.*, 976 F.2d 1319 (9th Cir.1992) ................................................... 16

*Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*,
   519 U.S. 316 (1997)......................................................................................... 8, 17, 18, 22

*California Hotels & Lodging Ass'n v. City of Oakland* (*CHLA*), 393 F. Supp. 3d 817
   (N.D. Cal. 2019)...................................................................................................... 20, 22

*California Ins. Guarantee Ass'n v. Azar*, 940 F.3d 1061 (9th Cir. 2019) ..................... 10

*Calop Bus. Sys., Inc. v. City of Los Angeles*, 984 F. Supp. 2d 981, 1005
   (C.D. Cal. 2013), *aff'd in relevant part, appeal dismissed in part*,
   614 F. App'x 867 (9th Cir. 2015) ............................................................................. 16

*Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504 (1992) ................................................... 10

*CTS Corp. v. Waldburger*, 573 U.S. 1 (2014)............................................................... 10

*De Buono v. NYSA–ILA Medical and Clinical Services Fund*, 520 U.S. 806 (1997)....... 10, 11, 18

**MOTION TO DISMISS– Page ii**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

*Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643 (9th Cir.) *cert. denied*,
    140 S. Ct. 223 (2019) ................................................................................. 13

*Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246
    (5th Cir. 2019) ........................................................................................... 9

*District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125 (1992) ................. 23

*Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) ........................................................... 11, 17

*Farr v. U.S. W. Commc'ns, Inc.*, 151 F.3d 908  (9th Cir. 1998) .................................... 6

*Fort Halifax Co. v. Coyne*, 482 U.S. 1 (1987) ...................................................... 15

*Gobeille v. Liberty Mutual Ins. Co.*, 136 S.Ct. 936 (2016) .............................. passim

*Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 546 F.3d 639 (9th Cir. 2008) ..... passim

*Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707 (1985) ....................... 6

*Howard Jarvis Taxpayers Ass'n v. California Secure Choice Ret. Sav. Program (CalSavers)*,
    2019 WL 1430113 (E.D. Cal. 2019) .......................................................... 13

*Int'l Franchise Ass'n, Inc. v. City of Seattle*, 97 F. Supp. 3d 1256 (W.D. Wash. 2015),
    *aff'd*, 803 F.3d 389 (9th Cir. 2015) *cert. denied* 136 S.Ct. 1838 (2016) .................. 20

*Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011 (9th Cir. 2010)
    *cert. denied* 563 U.S. 936 (2011) ........................................................... 6

*Kwan v. SanMedica Int'l*, 854 F.3d 1088  (9th Cir. 2017) ..................................... 6

*Laborers' Pension Fund v. Miscevic*, 880 F.3d 927, 931 (7th Cir. 2018), *cert. denied sub nom.*
    *Miscevic v. Estate of M.M.*, 138 S. Ct. 2633 ............................................ 11

*Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497 (2nd Cir. 2014) .............................. 11

*Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185 (9th Cir. 2018),
    *cert. denied*, 139 S. Ct. 567 (2018) .......................................................... 6

*Luttrell v. Brannon*, 2018 WL 6604255 (D. Kan. 2018) ....................................... 19

*Massachusetts v. Morash*, 490 U.S. 107 (1989) ....................................... 2, 13, 14, 15

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) ......................................... 8, 10

**MOTION TO DISMISS– Page iii**
*ERIC v. City of Seattle* 2:18-cv-01188

*New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995) .................................................................................................. passim

*NYS Health Maint. Org. Conference v. Curiale*, 64 F.3d 794 (2nd Cir. 1995) ............................ 12

*Paulsen v. CNF Inc.*, 559 F.3d 1061 (9th Cir. 2009) *cert. denied* 558 U.S. 1111 (2010) .............. 9

*Pegram v. Herdrich*, 530 U.S. 211 (2000)................................................................................ 11

*Puerto Rico v. Franklin Cal. Tax-Free Tr* ................................................................................ 9

*Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212 (9th Cir. 2000),
*amended*, 208 F.3d 1170 (9th Cir. 2000)................................................................................ 13

*Self-Ins. Inst. of Am., Inc. v. Snyder*, 136 S. Ct. 1355 (2016) ................................................. 6

*Self-Ins. Inst. of Am., Inc. v. Snyder*, 827 F.3d 549 (6th Cir. 2016)
*cert. denied* 137 S.Ct. 660 (2017) ..................................................................................... passim

*Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983)................................................................... 17

*United Wire, Metal & Mach. Health & Welfare Fund v. Morristown Mem'l Hosp.*,
995 F.2d 1179 (3rd Cir. 1993) *cert. denied* 510 U.S. 1065 (1994).......................................... 12

*WSB Elec., Inc. v. Curry*, 88 F.3d 788 (9th Cir.1996) ................................................................ 20

**Statutes**

29 U.S.C. § 1002(1) ................................................................................................................ 7

29 U.S.C. § 1144(a) .................................................................................................... 7, 8, 9, 14

U.S. Const. Am. X ..................................................................................................................... 8

U.S. Const. Art. VI.................................................................................................................... 8

**Other Authorities**

SMC 14.19 ............................................................................................................................... 20

SMC 14.25.110 ........................................................................................................................... 2

SMC 14.26-14.29....................................................................................................................... 3

**MOTION TO DISMISS– Page iv**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

SMC 14.28.010 ............................................................................................................ 3

SMC 14.28.020 ............................................................................................................ 4

SMC 14.28.025 .......................................................................................................... 21

SMC 14.28.030 .......................................................................................................... 24

SMC 14.28.040 ............................................................................................................ 4

SMC 14.28.060.A.1-4 .................................................................................................. 4

SMC 14.28.060.B ......................................................................................................... 4

SMC 14.28.060.B.1-3 .............................................................................................. 4, 14

SMC 14.28.060.C ......................................................................................................... 4

SMC 14.28.060.D ....................................................................................................... 23

SMC 14.28.110.A ......................................................................................................... 4

**Court Rules**

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 6

## I.  INTRODUCTION

The City of Seattle moves this Court to stop Plaintiff's improper attempt to use a congressional shield protecting benefit plan administration as a sword to gut the City's proper and essential exercise of its police powers protecting and enhancing its citizens' health and safety.  Plaintiff is attempting to use the Employee Retirement Income and Security Act ("ERISA") for its own ends, ignoring the federal structure of the United States and expanding the protections for ERISA plan administration into a general method for preempting any valid exercise of the City's legitimate effort to provide for the health and safety of its citizens.

Plaintiff ignores or mischaracterizes 25 years of Supreme Court and Ninth Circuit precedent, respecting State sovereignty and protecting similar local measures from spurious ERISA preemption challenges.  The ordinance, challenged by Plaintiff, requires large Seattle hotels to spend a fixed amount of money so that their employees may have access to health care. The ordinance gives employers the choice of spending that money through an ERISA-covered health plan, spending that money through health programs (e.g., health spending accounts), or paying extra wages to employees (or a combination of the three).  Plaintiff asserts that the flexibility in how a hotel may comply with the ordinance subjects the law to categorical preemption by ERISA.  Plaintiff is mistaken.  More than a decade ago, in *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 546 F.3d 639 (9th Cir. 2008) the Ninth Circuit (building on years of settled Supreme Court cases) unequivocally rejected Plaintiff's position in the context of a factually similar city ordinance.  Where, as here, a law is fully functional in the absence of any ERISA plan, it simply lacks the required relationship to ERISA plans to justify preemption.

In an apparent attempt to avoid controlling precedent, Plaintiff asserts that paying regular, wage-like amounts to or on behalf of employees establishes a separate ERISA plan. This argument is not only illogical, but is flatly contradicted both by *Golden Gate* and its antecedents

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

including *Massachusetts v. Morash*, 490 U.S. 107 (1989), holding that a statute requiring employers to pay employees for accrued but unused vacation pay on termination out of an employer's general assets does not constitute an ERISA plan.

Plaintiff's remaining allegations are similarly insufficient. For example, Plaintiff alleges that because there may be a cost differential depending on which compliance method employers choose, employers will have to change or adopt ERISA plans. But the mere fact that an employer may have to spend more to comply with a law through non-ERISA means does not suffice to establish ERISA preemption. Plaintiff also relies on *Gobeille v. Liberty Mutual Ins. Co.*, 136 S.Ct. 936 (2016) to support its argument, but the statute preempted there required ERISA plans to report *plan* information to state regulators, directly regulating a fundamental ERISA function. Here, in contrast, minimal record-keeping obligations apply to *employers*, not plans.

Given the strong presumption against federal preemption of the City's police powers related to health and safety, and controlling precedent finding no preemption of factually indistinguishable laws, Plaintiff has failed to state a claim upon which relief may be granted. Accordingly, this Court should dismiss Plaintiff's First Amended Complaint.

## II. BACKGROUND

On November 8, 2016, the people of the City of Seattle voted overwhelmingly in favor of exercising the State's police power to ensure minimum employment standards for hotel employees.[1] As a part of a comprehensive approach to setting these standards, the voters approved measures to ensure that hotel employees could afford health care. *See* former Seattle Municipal Code ("SMC") 14.25.110 ("the intent of Part 3 is to improve access to affordable family medical care for hotel employees"). The voter-approved measure was the subject of two

---

[1] *See* Docket No. 18 for a more detailed account of the original voter initiative.

**MOTION TO DISMISS– Page 2 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

lawsuits by hotel and employer industry groups with the apparent aim of frustrating the public's attempt to ensure hotel employees were treated fairly.[2]  These challenges were the American Hotel & Lodging Association's suit in state court seeking to invalidate the initiative as a whole and Plaintiff's initial complaint in this matter, seeking to invalidate Part 3 of the initiative.

On December 24, 2018, while Plaintiff's Complaint was pending, the Washington State Court of Appeals found that the initiative violated the single subject rule in the City Charter. *Am. Hotel & Lodging Ass'n v. City of Seattle*, 432 P.3d 434, 445 (Wash. Ct. App. 2018).  The City repealed the initiative, and on September 24, 2019 replaced it with a new series of ordinances enacted by the City Council and signed by the Mayor.  *See* Ordinance Nos. 125923, 125928, 125929, 125930; *see also* SMC 14.26-14.29.[3]

Plaintiff filed its First Amended Complaint ("FAC") January 21, 2020.  Plaintiff's amended complaint again alleges that the ordinance, providing access to health care to low wage workers, codified at SMC 14.28 ("Ordinance"), is preempted by ERISA on a variety of bases. *See*, *e.g.*, FAC at ¶ 5.

The Ordinance, "Improving Access to Medical Care for Hotel Employees Ordinance" (SMC 14.28.010) seeks to "improve low-wage hotel employees' access, through additional compensation, to high quality, affordable health coverage for the employees and their spouses, domestic partners, children, and other dependents."  SMC 14.28.025.[4]  Accordingly, the Ordinance requires that "[c]overed employers" make "monthly required healthcare expenditures to or on behalf of each covered employee" at certain rates set by the Ordinance.  SMC

---

[2] *See, e.g.*, Plaintiff's First Amended Complaint at ¶ 10, making irrelevant allegations about the "competitive disadvantage" for large hotels under the Ordinance.

[3] The City appealed the decision in *Am. Hotel & Lodging Ass'n* and the Washington State Supreme Court accepted review.  *Am. Hotel & Lodging Ass'n v. City of Seattle*, 193 Wash.2d 1008 (2019).  However, once the City withdrew and replaced the Ordinance, the State Supreme Court dismissed the appeal.

[4] Available at https://library.municode.com/wa/seattle/codes/municipal_code?nodeId=TIT14HURI_CH 14.28IMACMECAHOEM (last accessed on February 11, 2020).

**MOTION TO DISMISS– Page 3 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

14.28.060.A.[5]

The Ordinance sets the annually adjusted expenditure rates for employers on a per-employee, per-month basis that varies by whether the employee has covered family members. SMC 14.28.060.A.1-4.  Critically, "[c]overed employers have discretion as to the form of the monthly required healthcare expenditures ...." SMC 14.28.060.B.  The Ordinance permits covered employers to satisfy their payment obligation through "one or more of the following forms:"

> 1. Additional compensation paid directly to the covered employee; and/or

> 2. Payments to a third party, such as to an insurance carrier or trust, or into a tax favored health programs... for the purpose of providing healthcare services to the employee or the spouse, domestic partner, or dependents of the covered employee... ; and/or

> 3. Average per-capita monthly expenditures for healthcare services made to or on behalf of covered employees or the spouse, domestic partner, or dependents of the employees... by the employer's self-insured and/or self-funded insurance program(s).

SMC 14.28.060.B.1-3.  If the covered employer already makes health care expenditures through a benefit plan, but pays less than required by Ordinance, the employer must make up the difference by any of the methods provided for in the Ordinance.  SMC 14.28.060.C.

The Ordinance also requires covered employers to "retain records that document compliance with" the Ordinance, including "[p]roof of each required healthcare expenditure made each month..." and copies of waivers from employees declining coverage.  SMC 14.28.110.A.

The Ordinance is nearly identical in substance to a San Francisco ordinance upheld over

---

[5] Covered employers are employers who own, control or operate a large hotel or ancillary hotel business in the City of Seattle with 50 or more employees worldwide.  SMC 14.28.040.  Large hotels are hotels or motels containing 100 or more guest rooms.  SMC 14.28.020.

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

an ERISA preemption challenge by the Ninth Circuit in 2008.  *Golden Gate*, 546 F.3d 639.  San Francisco's Health Care Security ordinance established a city-run health care plan and required covered employers to make specified health care expenditures on behalf of their covered employees.  *Id*. at 642-643.  The San Francisco ordinance permits employers to choose among payment options, including: (1) employer contributions to a health savings account, (2) payments to a third party for the purpose of providing health care services, (3) costs incurred in providing/ receiving health care services or (4) payments to the city for enrolling covered employees in the city's health care plan or reimbursement accounts.  *Id*. at 644-645.  Rejecting arguments that are nearly identical to the FAC, the Ninth Circuit found that the San Francisco ordinance was not preempted by ERISA.  *Id*. at 661.

Just as in *Golden Gate*, the Ordinance here does not require that covered employers (1) establish an ERISA plan or (2) modify an existing ERISA plan.  It also does not alter any obligation for covered employers depending on whether they have any ERISA plan.  Covered employers may choose to meet their obligations under the Ordinance by establishing or modifying such a plan; but they are not obligated to do so, they may instead make payments directly to their employees.

Further, nothing in the Ordinance concerns the nature of the health care benefits covered employers provide its employees.  The Ordinance is focused on the dollar amounts covered employers must pay toward the provision of such benefits; covered employers are not required to provide any specific benefit or level of benefits.  The Ordinance does not look beyond what the employers are required to expend, and it does not contain any mechanism for evaluating the benefits obtained through those expenditures.  *See, e.g.*, FAC ¶ 36 (the Ordinance contains no mechanism requiring employees to purchase health care with direct payments).

Finally, the Ordinance makes no demands on the administration of any ERISA plan.  The payment and recordkeeping obligations fall solely on covered employers, not on plans or their

**MOTION TO DISMISS– Page 5 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

administrators.  If no covered employer had an ERISA plan, the Ordinance would be fully operational.

## III.    LEGAL STANDARD

Complaints, like the one at issue here, may be dismissed for a "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6).  Dismissals of a complaint under this Rule may be based on either the absence of a cognizable legal theory or the absence of sufficient factual allegations to support a cognizable legal theory.  *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017).  Sufficient factual allegations are those that permit "the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Whether a State law or local ordinance is preempted by ERISA is a question of law.  *Farr v. U.S. W. Commc'ns, Inc.*, 151 F.3d 908, 913 (9th Cir. 1998); *see Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 713 (1985) (the preemption of local ordinances and statewide laws are analyzed in the same way).

## IV.    ARGUMENT

All federal preemption cases are guided by two core principles: (1) "the purpose of Congress is the ultimate touchstone in every pre-emption case" and (2) "the assumption that the State's historic police powers are not preempted" absent Congress' "clear and manifest purpose" to preempt the exercise of those powers.  *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1191 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 567 (2018) (citations and internal quotation marks omitted); *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1022 (9th Cir. 2010) *cert. denied* 563 U.S. 936 (2011) (same, applied to ERISA preemption).

Here, Congressional purpose is clear.  Though "[b]roadly worded[,]" "ERISA's express–preemption provision extends only to the *administration of employee benefit plans*."  *Self-Ins. Inst. of Am., Inc. v. Snyder*, 827 F.3d 549, 555 (6th Cir. 2016), *cert. denied* 137 S.Ct. 660 (2017)

**MOTION TO DISMISS– Page 6 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1  (citing *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514

2  U.S. 645, 656-657 (1995)) (emphasis in the original).[6]  And, there is no question that the

3  Ordinance represents the exercise of traditional State police powers.  "State and local

4  governments have traditionally provided health care services" to individuals with low or

5  moderate means.  *Golden Gate*, 546 F.3d at 648.  The narrow focus on protecting plan

6  administration, combined with the City's exercise of its core police powers, compels the

7  conclusion that there is no ERISA preemption in this case.

8       Binding Ninth Circuit precedent in *Golden Gate*, applying long-standing Supreme Court

9  jurisprudence, demonstrates that this is so.  The Ordinance requires that payments be made to or

10  on behalf of employees to provide access to healthcare.  The fact that the Ordinance gives

11  employers flexibility in complying with its commands, including the option to make payments to

12  ERISA plans, is simply insufficient to support preemption. Just as in *Golden Gate*, with the

13  appropriate understanding of ERISA's preemption provision, it is clear that the Ordinance does

14  not "relate to" ERISA plans and is, therefore, not preempted as a matter of law.

15  **A.  The Ordinance is beyond the scope of ERISA preemption.**

16       ERISA's preemption clause purports to preempt "any and all State laws insofar as they

17  may now or hereafter relate to any employee benefit plans…."  29 U.S.C. § 1144(a).  Under

18  ERISA, "employee benefit plans" encompass a range of plans, including "medical… care or

19  benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or

20  vacation benefits, apprenticeship or other training programs, or day care centers, scholarship

21  funds, or prepaid legal services."  29 U.S.C. § 1002(1).

22       Taken literally, then, the preemption clause would likely preempt *nearly all* State laws, as

23

---

24  [6] *Snyder* was decided by the Sixth Circuit after its prior decision, 761 F.3d 631, was vacated and
25  remanded by the Supreme Court for further consideration in light of *Gobeille*. *Self-Ins. Inst. of Am., Inc. v.
    Snyder*, 136 S. Ct. 1355 (2016).

26

**MOTION TO DISMISS– Page 7 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

any law may "relate to" an ERISA plan.  *See Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 903 F.3d 829, 846 (9th Cir. 2018), *vacated on unrelated grounds* 941 F.3d 1195 (9th Cir. 2019) (*en banc*) ("ERISA's preemptive scope is nearly all-encompassing if read literally"). A "relate to" causal chain can be constructed for almost any State action, including such core State powers as defining crimes (criminalizing medical procedures would outlaw certain benefits) or regulating roadways (lower speed limits would reduce roadway deaths, affecting actuarial tables used by insurance providers, impacting the rates those insures charge employee benefit plans).  *See Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.*, 519 U.S. 316, 335 (1997) (Scalia, J. concurring) (noting that "applying the 'relate to' provision [in 29 U.S.C. § 1144(a)]  according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else").

A mechanical application of the "relate to" clause, then, offends the federal structure of the United States.  The Constitution provides the federal government with the authority to craft "the supreme law of the land" by which "every state shall be bound… the Constitution or laws of any state to the contrary notwithstanding."  U.S. Const. Art. VI.  However, the Constitution also limits that authority, instructing that "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."  U.S. Const., Am. X.  Permitting Congress to override core aspects of State authority, not specifically abrogated by the Constitution, clearly violates this arrangement.  *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law").

Fortunately, the Supreme Court recognized the absurdity of a literal reading of "relate to" 25 years ago:  "[i]f 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for '[r]eally, universally, relations stop nowhere,'…."  *Travelers*, 514 U.S. at 655 (second alteration in the original)

**MOTION TO DISMISS– Page 8 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

(citation omitted).  Rather, courts "simply must go beyond the unhelpful text and the frustrating difficulty of defining [29 U.S.C. § 1144(a)'s] key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id*. at 656.  "ERISA, in other words, does not create a state–law–free zone around everything that affects an ERISA plan."  *Snyder*, 827 F.3d at 555 (internal quotation marks omitted).

In order to accommodate States' authority to act in areas of their traditional concerns, ERISA preemption is cabined in two critical ways.  First, courts must read the express preemption provision so as not to tread on that authority; and second, preemption must be tied closely to the primary objectives of ERISA.

### 1. The Ordinance is an exercise of core State police power that should be presumed not preempted.

Long-established Supreme Court precedent indicates that the exercise of core State powers is entitled to a strong presumption against preemption by federal law.  *Travelers*, 514 U.S. at 655 (collecting cases).  Plaintiff has alleged that there is no presumption against State or local law preemption where the federal law has an express preemption provision, FAC at ¶ 48, but Plaintiff misunderstands the *nature* of the presumption.[7]  While it is true that the question of whether a statute preempts *some* State law may be settled by the existence of an express preemption provision; questions remain about the *scope* of that preemption.  As the Supreme

---

[7] Plaintiff cites several cases in apparent support for the proposition that express preemption clauses foreclose a presumption against preemption.  However, none of these cases settles the matter here. *Puerto Rico v. Franklin Cal. Tax-Free Tr.* stands for the unremarkable proposition that, *if the preemption provision's language is plain*, no analysis beyond the text is necessary.  136 S.Ct. 1938, 1946 (2016); *see also Atay v. Cty. Of Maui*, 842 F.3d 688, 699 (9th Cir. 2016) (quoting *Franklin*).  Here, the Supreme Court has been adamant that courts "must go beyond the unhelpful text" of the ERISA preemption provision.  *Travelers*, 541 U.S. 656;  *see Paulsen v. CNF Inc.*, 559 F.3d 1061, 1081 (9th Cir. 2009) *cert. denied* 558 U.S. 1111 (2010) (citing *Dillingham*, 519 U.S. at 324) (noting the text of 29 U.S.C. § 1144(a) is unhelpful).  Also, Plaintiff (and the Fifth Circuit in *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246 (5th Cir. 2019)) misread *Gobeille*, 136 S. Ct. 936 as rejecting any presumption against preemption.  *Gobeille*, rather, holds that the presumption *is overcome* where "state law that regulates a key facet of plan administration" not that no presumption exists.  *Gobeille*, 136 S.Ct. at 946.

**MOTION TO DISMISS– Page 9 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

Court explained, where a statute contains an express preemption provision,

> we need not go beyond that language to determine whether Congress intended the [statute] to pre-empt at least some state law… [however], we must… "identify the domain expressly pre-empted" by that language….  Although our analysis of the scope of the pre-emption statute must begin with its text… our interpretation of that language does not occur in a contextual vacuum.

*Lohr*, 518 U.S. at 484-485 (1996) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517 523 (1992)).  This federalist principle, that a narrow interpretation of express preemption clauses should be adopted to protect State sovereignty, remains current.  *See CTS Corp. v. Waldburger*, 573 U.S. 1, 19 (2014) ("[t]he effect of [the] presumption is to support, where plausible, 'a narrow interpretation' of an express pre-emption provision")*; see also Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) ("we … have a duty to accept the reading [of an express preemption provision] that disfavors pre-emption"); *California Ins. Guarantee Ass'n v. Azar*, 940 F.3d 1061, 1067 (9th Cir. 2019) (same); *Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra*, 870 F.3d 1140, 1146 (9th Cir. 2017) (citing, *inter alia*, *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)) ("[w]here the federal statute contains an express preemption clause, we must determine the substance and scope of the clause" with the presumption that State police powers are not preempted); *Snyder*, 827 F.3d at 555 ("we start with the presumption that Congress generally does not intend to preempt state laws, particularly in areas of traditional state concern")*.  This "approach is consistent with both federalism concerns and the historic primacy of state regulation of matters of health and safety." *Lohr*, 518 U.S. at 485.

        The command to read express preemption provisions narrowly to avoid preempting core State powers clearly applies to ERISA and the "unhelpful text" of its preemption provision. *Travelers*, 514 U.S. at 656; *see Gobeille*, 136 S. Ct. at 946 (citing  *De Buono v. NYSA–ILA Medical and Clinical Services Fund*, 520 U.S. 806 (1997)) (recognizing that State taxation law applying to hospitals is presumed not to be preempted by ERISA even though its enforcement would require "incidental reporting by ERISA plans"); *see also Laborers' Pension Fund v.*

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

*Miscevic*, 880 F.3d 927, 931 (7th Cir. 2018), *cert. denied sub nom. Miscevic v. Estate of M.M.*, 138 S. Ct. 2633 (notwithstanding *Egelhoff v. Egelhoff*, 532 U.S. 141 (2001), ERISA does not preempt 'slayer laws' preventing spousal beneficiaries named in plan documents from receiving benefits when they intentionally kill the plan participant because those laws are "an aspect of family law, a traditional area of state regulation" and presumed not to be preempted); *Snyder*, 827 F.3d at 555 (a State law taxing ERISA plans *and requiring them to make quarterly reports* to the State, where the tax was to fund Medicaid obligations, was a core exercise of State power and therefore not preempted).

Where the State promotes or provides health care to its citizens, those laws are a part of the core powers of the State.  *See Liberty Mut. Ins. Co. v. Donegan*, 746 F.3d 497, 506 & n. 8 (2nd Cir. 2014), *aff'd sub nom. Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936 (2016) ("the safe and effective provision of health care services" is among the State's historic police powers, presumed not preempted by ERISA); *see also Pegram v. Herdrich*, 530 U.S. 211, 237 (2000) ("in the field of health care, a subject of traditional State regulation, there is no ERISA preemption without clear manifestation of congressional purpose"); *De Buono*, 520 U.S. at 814 ("the historic police powers of the State include the regulation of matters of health and safety"); *Travelers*, 514 U.S. at 661 ("nothing in the language of [ERISA] or the context of its passage indicates that Congress chose to displace general health care regulation, which historically has been a matter of local concern").

For example, State laws providing access to health care for those who cannot pay their medical bills are routinely upheld over ERISA challenges.  Courts have repeatedly approved State or local laws that required payments from, or imposed other obligations on, insurers and even ERISA plans themselves to support State efforts to ensure that those without resources could access healthcare.  *See Travelers,* 514 U.S. at 658 & n. 5 (upholding a State law with differential surcharge rates for insurers who "provide coverage for many subscribers whom the

**MOTION TO DISMISS– Page 11 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

commercial insurers would reject as unacceptable risks"); *Snyder*, 827 F.3d at 555 (approving a State law taxing ERISA plans and requiring them to make quarterly reports to the State where the tax was to fund Medicaid obligations); *NYS Health Maint. Org. Conference v. Curiale*, 64 F.3d 794 (2nd Cir. 1995) (finding no preemption of a State law that required all insurance providers to use open enrollment/community pricing as a means of protecting non-profit insurance providers who provided insurance coverage to generally less wealthy, more ill populations); *United Wire, Metal & Mach. Health & Welfare Fund v. Morristown Mem'l Hosp.*, 995 F.2d 1179, 1196 (3rd Cir. 1993) *cert. denied* 510 U.S. 1065 (1994) ("ERISA was not intended to foreclose" a State's decision "to require hospitals to treat indigents and to treat Medicare patients for the Medicare reimbursement" even though it would affect ERISA plans ).

Here, the Ordinance requires employers to pay certain defined amounts on a regular basis in order to ensure that their employees (and those employees' dependents) can access health care. This is clearly within the core police power of the City to provide for its citizens the opportunity to obtain health care. As the Ninth Circuit has explained, "the provision of health care services to persons with low or moderate incomes" is "traditionally" a State and local concern. *Golden Gate*, 546 F.3d 639 at 648. The Court should not accept Plaintiff's invitation to override the City's exercise of this power.

## 2. ERISA preemption protects only plan administration.

In giving ERISA preemption its proper scope, the Supreme Court has instructed courts that they must go beyond the ambiguous language of the statute and consider "the objectives of… ERISA… as a guide to the scope of the state law that Congress understood would survive." *Travelers*, 514 U.S. at 654. To that end, the principal objective of ERISA is protecting benefit plan administration. *See Gobeille*, 136 S. Ct. at 943 (ERISA preempts a State law if it "'governs… a central matter of plan administration' or 'interferes with nationally uniform plan administration'") (citation omitted); *Snyder*, 827 F.3d at 555 ("ERISA's express–preemption

provision extends only to the *administration of employee benefit plans*") (emphasis in the original); *Howard Jarvis Taxpayers Ass'n v. California Secure Choice Ret. Sav. Program (CalSavers)*, 2019 WL 1430113, at *8 (E.D. Cal. 2019) (slip op.) (refusing to find State retirement saving plan preempted where it "does not govern a central matter of an ERISA plan's administration, nor does it interfere with nationally uniform plan administration").[8, 9]

The focus on the purpose of ERISA operates in tandem with the traditional presumption against preemption of core state authority.  Therefore, the Supreme Court "has established a presumption that Congress did *not* intend ERISA to preempt areas of traditional state regulation that are quite remote from the areas with which ERISA is expressly concerned—reporting, disclosure, fiduciary responsibility, and the like." *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1217 (9th Cir. 2000), *amended*, 208 F.3d 1170 (9th Cir. 2000)[10] (emphasis in the original, internal quotation marks omitted); *accord Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 666 (9th Cir.) *cert. denied*, 140 S. Ct. 223, 205 (2019) ("[w]e look to 'the objectives of the ERISA statute as a guide,' bearing in mind a 'starting presumption that Congress d[id] not intend to supplant ... state laws regulating a subject of traditional state power' unless that power amounts to 'a direct regulation of a fundamental ERISA function.'") (quoting *Gobeille*, 136 S.Ct. at 946) (internal quotation marks omitted, ellipses and alterations in the original); *Dillingham*, 519 U.S. at 330 (holding that, because regulation of apprenticeships were "quite remote from the areas with which ERISA is expressly concerned" state law effecting

---

[8] From the perspective of employees, ERISA has another purpose:  "to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits."  *Morash*, 490 U.S. at 112.

[9] ERISA also does not require that any employer adopt any ERISA plan, and it does not require any specific benefit level if an employer does adopt an ERISA plan.  As the Supreme Court recently explained, "ERISA does not guarantee substantive benefits" it merely "seeks to make the benefits promised by an employer more secure" by requiring standard, uniform procedures.  *Gobeille*, 136 S. Ct. at 943–944.

[10] *Abrogated in part on other grounds by Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004).

**MOTION TO DISMISS– Page 13 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

1    such regulation was presumed not preempted).

2        This Court should reject Plaintiff's invitation to read ERISA's preemption provision to

3    undermine substantive health care laws passed by the City.  Plaintiff's attempt to convert

4    ERISA's shield for plan administration into a sword for attacking the City's valid exercise of its

5    police power finds no support in the law.  This Court should follow binding precedent and adopt

6    an interpretation of both the Ordinance and 29 U.S.C. § 1144(a) that allows for the proper

7    exercise of local authority to regulate health and safety.

8    **B. Covered employers' obligation to make monetary payments to or on behalf of workers does not constitute an ERISA plan.**

9

10       The Ordinance permits employers to "satisfy their monthly obligations" by means of

11   "[a]dditional compensation paid directly to the covered employee; and/or… [p]ayments to a third

12   party, such as to an insurance carrier or trust…; and/or [a]verage per-capita monthly

13   expenditures for healthcare services made to or on behalf of covered employees…."  SMC

14   14.28.060.B.1-3.  Plaintiff asserts that these payments constitute an ERISA plan in themselves,

15   and therefore the Ordinance is preempted.  FAC ¶¶ 5.a, 52.b-c.  This bizarre interpretation of a

16   command to make monetary payments is legally insufficient to support this allegation.

17       Regular payments of compensation to employees under the Ordinance, like any periodic

18   payroll payments, are simply not covered by ERISA's definition of plans because the "payments

19   are … fixed, due at known times, and do not depend on contingencies outside the employee's

20   control."  *Morash*, 490 U.S. at 115.[11]  Indeed, payments to employees under the Ordinance are

21   "are as much a part of the employees' regular basic compensation as overtime pay or the

22   payment of salary" and simply do not fall within the definition of an ERISA plan.  *Id.* at 120; *see*

23

_____

24   [11] In *Morash*, the Court held that a statute requiring employers to pay employees accrued but unused
     vacation pay (which, like health benefits, can be paid through an ERISA-covered plan) out of an
25   employer's general assets does not constitute an ERISA-covered plan.  *Morash,* 490 U.S. 107.

26

**MOTION TO DISMISS– Page 14 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

*Dillingham*, 519 U.S. 316, 326 (1997) (employee benefits funded through the regular assets of an employer "is not an ERISA plan"); *see also* FAC ¶ 55.b (alleging that "[d]irect payments are costlier to employers because they will have to pay federal employment taxes on the additional direct payments…").

Further, Plaintiff's allegations in the FAC that payments to ERISA plans and the associated administrative requirements *create* an ERISA plan, FAC at ¶ 52, mirror arguments flatly rejected in *Golden Gate*. *Golden Gate*, 546 F.3d at 648. The Ninth Circuit concluded that no ERISA plan was established by permitting payments to ERSIA plans, relying on analogy to mandated payments to individuals. *Id*. at 650 ("even if the employers made the payments directly to the employees, *Fort Halifax* [*Co. v. Coyne*, 482 U.S. 1 (1987)] and *Morash* indicate that those payments would not be enough to create an ERISA plan"). The court was similarly dismissive of the claim that the administrative burdens imposed by the San Francisco ordinance created an ERISA plan:

> [u]nder the Ordinance, an employer has no responsibility other than to make the required payments for covered employees, and to retain records to show that it has done so. The payments are made for a specific purpose, but the employer has no responsibility for ensuring that the payments are actually used for that purpose. The Association points to the burden entailed in keeping track of which workers perform qualifying work in San Francisco, keeping track of the hours those employees work, and keeping track of the credit (if any) an employer should get for health care payments made to non-City entities. This burden is not enough, in itself, to make the payment obligation an ERISA plan. Many federal, state and local laws, such as income tax withholding, social security, and minimum wage laws, impose similar administrative obligations on employers; yet none of these obligations constitutes an ERISA plan.

*Golden Gate*, 546 F.3d at 650. There was no new ERISA plan in *Golden Gate* because the payments to San Francisco simply didn't implicate ERISA's employee-protection concerns: "[a]n employer's administrative obligations under the City-payment option do not run the risk of mismanagement of funds or other abuse… maintaining … records [required by the ordinance] amounts to nothing more than the exercise of 'a modicum of discretion'" insufficient to create an

1   ERISA plan.  *Id.* at 651 (distinguishing *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th

2   Cir.1992)); *see Calop Bus. Sys., Inc. v. City of Los Angeles*, 984 F. Supp. 2d 981, 1005 (C.D.

3   Cal. 2013), *aff'd in relevant part, appeal dismissed in part*, 614 F. App'x 867 (9th Cir. 2015) (a

4   city ordinance that permitted payment of minimum wage requirements either by wages or wages

5   plus benefits and required employer reports as to what was paid "simply requires that employers

6   report the wages they have paid their employees, not information related to ERISA plans").

7   Here, the "discretion" Plaintiff claims employers exercise in complying with the Ordinance

8   through payments, FAC at ¶¶ 5.a, 52.b, is illusory— the Ordinance makes demands of employers

9   with which they must comply.  They have no discretion to chose to whom or how the law

10  applies.  *Golden Gate*, 546 F.3d at 652; *CalSavers*, 2019 WL 1430113, at *7 (ministerial duties

11  including "remit[ting] payroll deducted payments" to a government savings program with

12  "otherwise… no discretion regarding the funds" did not create an ERISA plan).[12]

13          Binding Supreme Court and Ninth Circuit jurisprudence show that regular, wage-like

14  payments to or on behalf of employees do not create separate ERISA plans out of whole cloth,

15  even if those payments come with some administrative requirements for employers.  Plaintiff

16  lacks any legal basis for its allegation that the Ordinance creates a new ERISA plan.

17  ///

18  ///

19

20  [12] *Aloha Airlines, Inc. v. Ahue*, cited by Plaintiff (FAC ¶ 5.a), does not support Plaintiff's position.  12
21  F.3d 1498 (9th Cir. 1993).  Decided before the Supreme Court clarified ERISA preemption analysis in
    *Travelers*, *Aloha Airlines* found that a State law requiring the provision of a specific medical *benefit* was
22  preempted by ERISA.  *Id*. at 1500.  The court found that the requirement to provide a specific benefit did
    implicate ERISA because a covered "employer cannot necessarily determine the amount of monies to
23  budget for such payments well in advance of the expected payment date…." *Id.* at 1503.  The Ninth
    Circuit recognized that, given the uncertainties around employee exercise of the required benefits,
24  "periodic payments" for those benefits "are not analogous to salary payments… and would require an
    airline to establish a plan to administer and manage them."  *Id*. at 1503.  Here, the Ordinance does not
25  require the payment of any *benefit*, but rather requires employers to make direct, wage-like payments to
    or on behalf of employees that are specifically defined by the Ordinance and occur at regular intervals.
26

**MOTION TO DISMISS– Page 16 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

**C. The Ordinance does not "relate to" ERISA plans under *Golden Gate* and is therefore not preempted.**

Because it recognized the impossibility of a literal reading of "relate to" (*see supra*), the Supreme Court has held that a State law may be preempted by ERISA only if it has an impermissible "connection with" or makes impermissible "reference to" ERISA plans. *Travelers*, 514 U.S. at 656 (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983); *Gobeille*, 136 S.Ct. at 943.

State law has an impermissible "connection with" ERISA plans "where it 'binds ERISA plan administrators to a particular choice of rules for determining beneficiary status[,] ... rather than [allowing administrators to pay the benefits] to those identified in the plan documents'" or where it prohibits or requires a specific plan structure. *Golden Gate*, 546 F.3d at 655 (quoting *Egelhoff*, 532 U.S. at 147; *Shaw*, 463 U.S. at 97-100) (alterations in the original).

And, State laws make an impermissible "reference to" ERISA plans if they depend on ERISA plans. In the standard formulation, literal reference to an ERISA plan is insufficient; the court must "ask whether (1) the law 'acts immediately and exclusively upon ERISA plans,' or (2) 'the existence of ERISA plans is essential to the law's operation.'" *Id.* at 657 (quoting *Dillingham*, 519 U.S. at 325); *see Gobeille*, 136 S. Ct. at 943 (same).

Plaintiff's allegations in the FAC satisfy neither prong of this analysis as a matter of law.

**1. The Ordinance has no impermissible "connection with" any ERISA plan.**

Plaintiff alleges that the Ordinance has an impermissible "connection with" ERISA plans because it "compels" employers to adopt or modify ERISA plans, on a variety of bases. FAC ¶¶ 5.c, 55. Plaintiff is incorrect as a matter of law.

Plaintiff's allegations of a forbidden connection with ERISA plans fall into three categories. First, Plaintiff alleges that the economic effects of the Ordinance create incentives for employers to take certain actions with respect to ERISA plans, and that these incentives create an impermissible connection with those plans. *See, e.g.,* FAC ¶ 55.b, e. But the mere fact

1  that the Ordinance might have an economic 'influence' on an employer's decision to change or

2  adopt an ERISA plan is insufficient to create the forbidden connection.  *Golden Gate*, 546 F.3d

3  at 656.

4          Such secondary economic influences, arising from laws that do not directly regulate the

5  core concerns of ERISA plan administration, are clearly not preempted.  For example, in

6  *Travelers*, the Supreme Court approved a State law that collected surcharges from patients at

7  hospitals with private insurance, but not from patients covered by Blue Cross/Blue Shield plans.

8  *Travelers*, 514 U.S. at 659-660.  Though the Court understood that the surcharges might

9  influence the choices made by ERISA plans themselves in buying insurance, it also understood

10 that variations in the costs associated with health care were common and could not be the basis

11 for invoking ERISA preemption.  *Id.*  Accordingly, the Court held that "indirect economic

12 influence… does not bind plan administrators to any particular choice" and those economic

13 influences do not "preclude uniform administrative practices."  *Id*.  Similarly, in *De Buono*, the

14 Supreme Court found a State law imposing a tax on a hospital owned by an ERISA plan to fund

15 Medicaid was not preempted even though it had, effectively, *direct* economic influence on the

16 operation of an ERISA plan.  *De Buono*, 520 U.S. at 815-816.

17         Here, as in *Golden Gate*, "the influence exerted by the Ordinance" is *more* tenuous than

18 the influence in *Travelers*, because "the Ordinance does not regulate benefits or charges for

19 benefits provided by ERISA plans. Its only influence is on the employer who, because of the

20 Ordinance, may choose to make its required health care expenditures to an ERISA plan rather

21 than" another means provided for by the Ordinance. *Golden Gate*, 546 F.3d. at 657.  Whatever

22 influence the Ordinance might have, it provides employers with the "meaningful alternative" of

23 making payments directly to employees, leaving their ERISA plans untouched.  *Id*. at 660; *see*

24 *also Dillingham*, 519 U.S. at 332-333 (where state statute does not compel the hiring of

25 apprentices from either ERISA plans or non-ERISA plans, but "merely… provide[s] some

26

**MOTION TO DISMISS– Page 18 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

measure of economic incentive" to select one over the other, it does not have an impermissible connection to ERISA plans).  Indeed, permitting distant economic effects to trigger ERISA preemption runs into exactly the problem the Supreme Court identified in an over-broad reading of "relate to."[13]

Similarly, Plaintiff's allegation that unspecified employers have unspecified "sunk costs" from complying with the former ordinance, FAC ¶ 55.e, provides no basis for finding those employers "compelled" to create or alter ERISA plans.  As with the present Ordinance, under the former initiative employers could have complied by paying compensation directly to employees without establishing or altering ERISA plans.  *See generally* Dkt. No. 18.  The fact that some may have chosen to alter existing ERISA plans or create new ones does not make the current Ordinance 'responsible' for that choice.[14]

Second, Plaintiff alleges that the Ordinance shares a forbidden "connection with" ERISA plans based on covered employers' supposed altruistic, employee-centered motives.  Plaintiff's allegation that "rational employers" would prefer that additional expenditures they make go to employee health care, FAC ¶ 55.a, or that they would prefer to provide ERISA plan coverage to employees that is "financially advantageous" to those employees, FAC ¶ 55.c-d, are simply assertions that employers *might* choose to comply with the Ordinance through payments to ERISA plans.  Courts routinely hold that State laws that permit employers the *option* of obeying

---

[13] The Supreme Court has cautioned against "an uncritical literalism" in construing whether there is a "connection with" ERISA plans "[f]or the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections."  *Travelers*, 514 U.S. at 656.

[14] Apart from the purely legal insufficiency of these allegations, Plaintiff's assertion that economic considerations require preemption is not supported by facts that allow the inference that ERISA preemption should apply.  Plaintiff alleges that some covered employer may have some expense related to the Ordinance.  These allegations are patently insufficient to support the FAC and merit dismissal in themselves.  *See*, *e.g., Luttrell v. Brannon*, 2018 WL 6604255, at *5 (D. Kan. 2018) (slip op.) (dismissing a mere allegation that plaintiff suffered an expense as a result of defendants' conduct, where the complaint contained no information as to "when those alleged expenses were incurred or the amount of the expenses" because it failed to provide sufficient factual allegations to support the claim).

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1   the law by making payments to ERISA plans are not preempted by ERISA.  *See California*

2   *Hotels & Lodging Ass'n v. City of Oakland* (*CHLA*), 393 F. Supp. 3d 817, 829 (N.D. Cal. 2019)

3   (collecting cases).[15]  Even assuming that the Ordinance will have the effect Plaintiff imagines,

4   remote influence on employer choices does not trigger ERISA preemption.  *See supra.*

5        Third, Plaintiff contends that the "administrative, record-keeping, and reporting

6   requirements" imposed on employers creates a forbidden "connection with" ERISA plans.  FAC

7   ¶ 56.  Plaintiff is incorrect.  These administrative requirements apply to *covered employers*,

8   without regard to whether they have an ERISA plan; they *do not impose any requirements on*

9   *ERISA plans or their administrators*.  *See Golden Gate*, 546 F.3d at 657 (administrative

10   requirements on employers under the San Francisco ordinance "exist whether or not a covered

11   employer has an ERISA plan. Thus, they are burdens on the employer rather than on an ERISA

12   plan") (citing *WSB Elec., Inc. v. Curry*, 88 F.3d 788, 795 (9th Cir.1996)); *see also CHLA*, 393 F.

13   Supp. 3d at 830 ("the test is not whether a wage law imposes additional administrative burdens

14   on the employer, it is whether the law imposes additional administrative requirements on ERISA

15   plans themselves"); *compare Gobeille*, 136 S. Ct. at 945 (finding a State law that placed

16   recordkeeping burdens *directly on ERISA plans* preempted).

17        Further, some additional administrative requirements on ERISA plans are plainly

18   acceptable.  Where the State law at issue does not "directly regulate[] integral aspects of ERISA

19   plan administration" and imposes only "incidental" reporting requirements, those requirements

---

[15] For example, in considering Seattle's Minimum Wage Ordinance, SMC 14.19, which provided more time to comply if employers provided specified levels of health plan coverage, this Court found no preemption by ERISA under either prong of the analysis because "the Ordinance does not require any employer to provide any ERISA plan; it does not dictate the contents or any administrative requirements for such a plan; it does not have any direct impact on any ERISA plan; and it does not impose reporting, disclosure, funding, or vesting requirements on any ERISA plan." *Int'l Franchise Ass'n, Inc. v. City of Seattle*, 97 F. Supp. 3d 1256, 1283 (W.D. Wash. 2015) (Jones, J.), *aff'd*, 803 F.3d 389 (9th Cir. 2015) *cert. denied* 136 S.Ct. 1838 (2016).

**MOTION TO DISMISS– Page 20 of 24**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

do not create impermissible connections with ERISA plans.  *Snyder*, 827 F.3d at 557.  In *Snyder*, after the remand of its prior decision by the Supreme Court in light of *Gobeille*, the Sixth Circuit approved a Michigan State law that was "at its core, an Act to generate the revenue necessary to fund Michigan's obligations under Medicaid" that also required *ERISA plan administrators* to submit tax statements and "keep accurate and complete records and pertinent documents as required" by the State department of revenue.  *Id*. at 558 (distinguishing *Gobeille*).  Here, the Ordinance, at its core, seeks to "improve low-wage hotel employees' access, through additional compensation, to… health coverage…."  SMC 14.28.025.  Minimal reporting or administrative requirements on *employers* for this goal does not create an impermissible connection with ERISA plans.

The Ordinance imposes no obligations on the administration of any ERISA plan and therefore has no "connection with" any such plan.  At most, the Ordinance causes legally insufficient incidental economic or administrative effects on ERISA plans, as a secondary consequence of its ERISA-unrelated goals.  Because the Ordinance concerns only monetary payments by employers, and recordkeeping obligations for those employers related to the monetary payments, it cannot be preempted for having an impermissible "connection with" ERISA plans.

### 2.   The Ordinance makes no impermissible "reference to" any ERISA plan.

Plaintiff has alleged that the Ordinance makes impermissible reference to ERISA plans in a variety of ways, none of which are sufficient to support the FAC.  FAC at ¶¶ 5, 53, 54.  First, Plaintiff alleges that the Ordinance 'creates' ERISA plans by permitting payments to employees or ERISA plans and so "refers to" an ERISA plan.  FAC ¶ 53.  However, because the Ordinance's payment options are regular and wage-like it simply does not create an ERISA plan. *See* Section IV.B *supra*.

Second, Plaintiff alleges that literal references to ERISA plans invite preemption.  *See*

FAC ¶ 54.a-c (each paragraph alleges that "[o]n its face" the Ordinance refers to an ERISA plan).  This simply ignores the modern understanding of the ERISA preemption:  "a state law is no longer preempted simply because it makes literal 'reference to' an ERISA plan" rather, in addition to identifying the plan, the law must "*act*[ ] immediately and exclusively *upon* ERISA plans or make the existence of ERISA plans ... essential to the law's operation."  *Glazing Health*, 903 F.3d at 847 (internal quotations and citations omitted, alterations and emphases in the original).  The mere fact that ERISA plans are mentioned in the Ordinance is not enough, particularly where the reference is only presented in the terms of *optional* compliance with the Ordinance.  *CHLA*, 393 F.Supp.3d at 829.

Third, Plaintiff argues that the Ordinance refers to ERISA plans because it permits employers to comply with their obligations by making set contributions to an ERISA plan, or because it permits compliance through *any* payment to ERISA plans.  FAC ¶¶ 53, 54.a-c.  These allegations suffer from a similar defect:  they do not demonstrate immediate, exclusive impact on ERISA plans.  As in *Golden Gate*, the Ordinance creates obligations for employers to pay money on their employees' behalf.  That payments to ERISA plans are one option for complying with the Ordinance is legally insufficient to support the FAC.  *Golden Gate*, 546 F.3d at 657; *see CHLA*, 393 F.Supp.3d at 830 (an ordinance requiring payments for health care, either through paying for health care services or paying money to employees was not preempted because, in part, "an employer's obligations are not measured by reference to an ERISA plan. Also… an ERISA plan is not essential to the operation of the Ordinance because a hotel employer may simply pay [the employee] to be in compliance"); *see also Dillingham*, 519 U.S. at 327 (where a statute "is indifferent to… ERISA coverage" in permitting differential wage payment to ERISA covered and non-ERISA covered apprenticeship programs, it "does not make reference to ERISA plans").

Nor is the Ordinance predicated on the existence of ERISA plans because it permits

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1   payments to ERISA plans as one method of compliance.  "Here… the Ordinance can have its full

2   force and effect even if no employer in the City has an ERISA plan. Covered employers without

3   ERISA plans can discharge their obligation under the Ordinance simply by making their required

4   health care expenditures" to employees, without involving any ERISA plan.  *Golden Gate,* 546

5   F.3d at 658.

6          Further, permitting employers to satisfy their obligations by paying a fixed amount to an

7   ERISA plan[16]  does not create an impermissible reference to ERISA plans.  While it may be true

8   that setting a required level of *benefits* would be preempted, requiring a specific contribution

9   level is not preempted.  Covered employers "calculate[] [their] required payments based on" the

10  number of their employees "rather than on the value or nature of the benefits available to ERISA

11  plan participants." *Id*. (distinguishing *District of Columbia v. Greater Washington Board of*

12  *Trade*, 506 U.S. 125 (1992)).

13         Plaintiff's remaining allegations, turning on statements in the Ordinance about technical

14  aspects of ERISA plans, are similarly flawed.  Permitting an ERISA plan to enforce a new

15  employee waiting period without violating the Ordinance, FAC ¶ 54.c, is simply evidence that

16  the Ordinance does not require any change to ERISA plan administration or rules.  Permitting

17  employee waivers is also insufficient to provide a forbidden "reference to" ERISA plans.  FAC ¶

18  54.d-e.  The waivers identified in the Ordinance, like the payment options for employers, are not

19  conditioned on the existence of any ERISA plan.  The Ordinance allows covered employers to

20  satisfy their obligations if the employee "voluntarily declines the employer's offer of the

21  monthly required healthcare expenditure" regardless of the type of expenditure.  SMC

22  _____

23  [16] Plaintiff's FAC ¶ 53 deliberately confuses fixed payments and fixed benefits.  Plaintiff alleges that the

    options for payment to plans require "purchas[ing] an insurance plan with sufficient benefits and value as

24  to be priced" at the level required or "the value of the benefits it pays under its self-funded plan" is at the

    level required.  FAC ¶ 53.  These convoluted statements obscure the incontrovertible fact that the

25  Ordinance only requires payments at a certain level, it is completely silent about the nature or existence of

    any benefit.

26

**MOTION TO DISMISS– Page 23 of 24**

14.28.060.D.  Employers are not required to make any change to ERISA plans, substantive or administrative, because an employee might waive coverage.  Employee waivers may be fully effective even if no employer in the City had an ERISA plan.

In short, "[w]here a law is fully functional even in the absence of a single ERISA plan… as it is in this case, it does not make an impermissible reference to ERISA plans."  *Golden Gate*, 546 F.3d at 659.  Indeed, courts have confirmed that there no impermissible "reference to" or "connection with" ERISA plans where State and local laws permit payments to ERISA plans as an alternative form of compliance.  Permissive language in the Ordinance gives covered employers flexibility in complying with the Ordinance.  Such flexibility cannot be the basis for finding the Ordinance preempted.

### V. CONCLUSION

Plaintiff has failed to state a claim upon which this Court may grant relief.  Plaintiff misunderstands the proper restraint federal courts exercise in interpreting federal laws to preempt State and local government powers that protect the health and safety of their citizens.  This restraint has led to decades of Supreme Court and Ninth Circuit cases demonstrating, unequivocally, that the Ordinance is simply not the kind of law Congress sought to bar under ERISA's preemption provision.  The Ordinance concerns the payment of money by covered employers to or on behalf of employees.  That this obligation may be satisfied by, among other things, payments to ERISA plans is simply insufficient to support the Plaintiff's arguments.  This Court should dismiss the FAC

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1

2     Respectfully submitted this 20th day of February, 2020.

3                                         CITY OF SEATTLE

4                                         PETER S. HOLMES
5                                         Seattle City Attorney

6                                         By    _s/ Jeremiah Miller_____

7                                             Jeremiah Miller, WSBA # 40949
8                                             Assistant City Attorney
                                              Phone: 206-256-5495
9                                             Fax:  206-684-8284
                                              jeremiah.miller@seattle.gov
10
                                              Seattle City Attorney's Office
11                                            701 Fifth Avenue, Suite 2050
12                                            Seattle, WA 98104

13                                            Jeffrey Lewis, *admitted pro hac vice*
                                              Erin M. Riley, WSBA #30401
14                                            Rachel E. Morowitz, WSBA #53771
15                                            KELLER ROHRBACK L.L.P.
                                              300 Lakeside Drive, Suite 1000
16                                            Oakland, CA 94612
                                              1201 Third Avenue, Suite 3200
17                                            Seattle, WA 98101

18                                         *Attorneys for Defendant City of Seattle*

19

20

21

22

23

24

25

26

**MOTION TO DISMISS**
*ERIC v. City of Seattle* 2:18-cv-01188

1

2

## <u>CERTIFICATE OF SERVICE</u>

3

4          I hereby certify that on February 20, 2020, I caused the preceding DEFENDANT'S

5   MOTION TO DISMISS THE FIRST AMENDED COMPLAINT to be filed with the Clerk of

6   the Court using the CM/ECF system, which will send notice of such filing to all known counsel

7   of record.

8          DATED this 20th day of February, 2020.

9

10                                         By   _____*s/ Jeremiah Miller*_____

11                                             Jeremiah Miller, WSBA # 40949
                                               Assistant City Attorney
12                                             Phone: 206-256-5495
                                               Fax:  206-684-8284
13                                             jeremiah.miller@seattle.gov

14
                                               Seattle City Attorney's Office
15                                             701 Fifth Avenue, Suite 2050
                                               Seattle, WA 98104
16

17

18

19

20

21

22

23

24

25

26

**MOTION TO DISMISS—Cert. of Service**
*ERIC v. City of Seattle* 2:18-cv-01188