1

THE HONORABLE THOMAS S. ZILLY

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

THE ERISA INDUSTRY COMMITTEE,

11

Plaintiff,

Case No. 2:18-cv-01188

12

v.

13

CITY OF SEATTLE,

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED
COMPLAINT**

14

Defendant.

**ORAL ARGUMENT REQUESTED**

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................1

    A. The Predecessor to SMC 14.28 and ERIC's Challenge.................................1

    B. SMC 14.28's Basic Provisions....................................................................2

    C. SMC 14.28's Exceptions and Waiver Requirements....................................4

    D. SMC 14.28's Record-Keeping and Enforcement Provisions ......................5

STANDARD UNDER RULE 12(b)(6) ..............................................................................6

ARGUMENT......................................................................................................................6

I.    ERISA BROADLY PREEMPTS ANY STATE LAW HAVING A
REFERENCE TO OR CONNECTION WITH AN ERISA PLAN ................................6

II.   THERE IS NO PRESUMPTION AGAINST PREEMPTION IN THIS
CASE ...............................................................................................................8

III.  ERISA PREEMPTS SMC 14.28 BECAUSE, UNDER ANY OF ITS
OPTIONS, SMC 14.28 REQUIRES THE CREATION OF ERISA
PLANS............................................................................................................12

IV.  ERISA PREEMPTS SMC 14.28 BECAUSE EACH OF ITS OPTIONS
MAKES AN IMPERMISSIBLE REFERENCE TO ERISA PLANS BY
MEASURING COMPLIANCE THROUGH THE VALUE OR LEVEL
OF BENEFITS PROVIDED ...........................................................................17

V.   ERISA PREEMPTS SMC 14.28 BECAUSE IT OTHERWISE
REFERENCES ERISA PLANS THROUGHOUT ITS PROVISIONS..........................19

VI.  ERISA PREEMPTS SMC 14.28 BECAUSE IT HAS A CONNECTION
WITH ERISA PLANS....................................................................................21

CONCLUSION.................................................................................................................24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT - i
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Alessi v. Raybestos-Manhattan, Inc.*,
  451 U.S. 504 (1981)..................................................................................................7

*Aloha Airlines v. Ahue*,
  12 F.3d 1498 (9th Cir. 1993) ............................................................................. *passim*

*Ariz. v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013)......................................................................................................9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................6

*Atay v. Cty. of Maui*,
  842 F.3d 688 (9th Cir. 2016) ..................................................................................10

*Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*,
  903 F.3d 829 (9th Cir. 2018), *vacated on unrelated grounds,* 941 F.3d 1195
  (9th Cir. 2019) ........................................................................................................12

*Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*,
  923 F.3d 1162 (9th Cir. 2019) ................................................................................12

*Bogue v. Ampex Corp.*,
  976 F.2d 1319 (9th Cir. 1992) ............................................................................ *passim*

*Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.*,
  519 U.S. 316 (1997)...................................................................................................7

*Chamber of Commerce v. Whiting*,
  563 U.S. 582 (2011)...................................................................................................9

*Cipollone v. Liggett Grp.*,
  505 U.S. 504 (1992)...................................................................................................9

*CTS Corp. v. Waldburger*,
  573 U.S. 1 (2014)......................................................................................................9

*DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*,
  852 F.3d 868 (9th Cir. 2017) ..................................................................................13

*Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*,
  938 F.3d 246 (5th Cir. 2019) ..............................................................................9, 10

*District of Columbia v. Greater Wash. Bd. of Trade*,
  506 U.S. 125 (1992)...........................................................................................18, 20

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT - ii
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

*Egelhoff v. Egelhoff*,
   532 U.S. 141 (2001)............................................................................................8

*Fields v. Twitter, Inc.*,
   881 F.3d 739 (9th Cir. 2018)............................................................................6

*FMC Corp. v. Holliday*,
   498 U.S. 52 (1990)........................................................................................4, 20

*Fort Halifax Co. v. Coyne*,
   482 U.S. 1 (1987)............................................................................................16

*Fortenot v. NL Indus., Inc.*,
   953 F.2d 960 (5th Cir. 1992)..........................................................................13

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
   463 U.S. 1 (1983)............................................................................................8

*Gobeille v. Liberty Mut. Ins. Co.*,
   136 S. Ct. 936 (2016)............................................................................ *passim*

*Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*,
   546 F.3d 639 (9th Cir. 2008)................................................................ *passim*

*Harris v. Cty. of Orange*,
   682 F.3d 1126 (9th Cir. 2012) ........................................................................6

*Ingersoll-Rand Co. v. McClendon*,
   498 U.S. 133 (1990)..................................................................................17, 20

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) ........................................................................6

*Massachusetts v. Morash*,
   490 U.S. 107 (1989)..................................................................................16, 17

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
   514 U.S. 645 (1995)............................................................................... *passim*

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
   136 S. Ct. 1938 (2016)....................................................................................9

*Retail Indus. Leaders Ass'n v. Fielder*,
   475 F.3d 180 (4th Cir. 2007) ........................................................................21

*Shaw v. Delta Air Lines, Inc.*,
   463 U.S. 85 (1983)............................................................................................8

*Stoyas v. Toshiba Corp.*,
   896 F.3d 933 (9th Cir. 2018) ........................................................................6

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT - iii
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

*United States v. Arizona*,
    641 F.3d 339 (9th Cir. 2011), *rev'd on other grounds*, 567 U.S. 387 (2012) ........................11

*Velarde v. Pace Membership Warehouse, Inc.*,
    105 F.3d 1313 (9th Cir. 1997) .........................................................................................17

*WSB Elec., Inc. v. Curry*,
    88 F.3d 788 (9th Cir. 1996) ...............................................................................................7

**Statutes**

26 U.S.C. § 213 ..................................................................................................................4

Employee Retirement Income Security Act of 1974 ......................................................1

    29 U.S.C. § 1002 .........................................................................................................12

    29 U.S.C. § 1144 .................................................................................................. *passim*

Seattle Municipal Code 14.25 ........................................................................................1, 2

Seattle Municipal Code 14.28,
    http://seattle.legistar.com/LegislationDetail.aspx?ID=3993855&GUID=A3A
    CB5DC-6D4C-4EF1-A6F9-
    AFD275F25343&Options=ID|Text|&Search=125930 (last visited Mar. 19,
    2020) ................................................................................................................... *passim*

S.F. Admin. Code § 14.2 ................................................................................................11

**Other Authorities**

120 Cong. Rec. 29,197 (1974).........................................................................................8

Fed. R. Civ. P. 12 ............................................................................................................6

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS THE FIRST AMENDED COMPLAINT - iv
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

## INTRODUCTION

The motion to dismiss that Defendant City of Seattle ("City") has filed can be summed up this way: *Golden Gate*, *Golden Gate*, *Golden Gate.* That is, pretending that its recently enacted health-benefits ordinance – Seattle Municipal Code ("SMC") 14.28 – is nothing but a reprise of the local law upheld in *Golden Gate Restaurant Ass'n v. City & County of San Francisco*, 546 F.3d 639 (9th Cir. 2008), the City cites or quotes the Ninth Circuit's decision more than twenty times in seeking to dismiss the preemption challenge under the Employee Retirement Income Security Act of 1974 ("ERISA") brought by Plaintiff The ERISA Industry Committee ("ERIC"). But SMC 14.28 is very different than the local law in *Golden Gate.* Unlike the ordinance in *Golden Gate*, SMC 14.28 requires the formation of ERISA plans, no matter how employers seek to fulfil their new obligations. Unlike the ordinance in *Golden Gate*, SMC 14.28 is rife with references to and dependence on ERISA plans throughout its provisions. Unlike the ordinance in *Golden Gate*, SMC 14.28, at bottom, seeks to – and does – compel employers to adjust their existing insured or self-funded ERISA plans to conform to its requirements. As a result, unlike the ordinance in *Golden Gate*, SMC 14.28 is preempted by ERISA.

Because ERISA preempts SMC 14.28, and given that the City's motion to dismiss the First Amended Complaint ("FAC") is predicated solely on the notion that there is no preemption here, the Court should deny the motion on its merits. In due course, ERIC will seek summary judgment in its favor on the merits.

## BACKGROUND

### A. The Predecessor to SMC 14.28 and ERIC's Challenge

In 2016, the City's voters through the initiative process enacted the predecessor to SMC 14.28, which was Part 3 of former SMC 14.25 ("Part 3"). FAC ¶ 17. Part 3 required certain large hotel employers to pay additional wages to covered employees for health insurance expenses; however, the employer could avoid the obligation to pay additional wages if it

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 1
CASE NO. - 2:18-CV-01188-TSZ

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

provided health coverage through an employer-sponsor health benefit plan at a level equal to or above a gold-level plan on the Washington Health Benefit Exchange.  *Id.* ¶ 19.  In response, ERIC – a national trade association of large multistate companies who are concerned with maintaining a nationally uniform regime of legal requirements for employee benefits – sued the City in this Court, contending that ERISA preempts Part 3.  *Id.* ¶ 21.  While the case was pending, one or more ERIC member companies affected by Part 3 altered their employer-sponsored plans to offer coverage consistent with Part 3, since the direct-payment requirement was financially more onerous in comparison and given that there was no assurance under Part 3 that an employee who received additional wages (rather than coverage under the employer's plan) necessarily would use the monies reasonably on healthcare.  *Id.* ¶ 20.

Ultimately, the Court stayed ERIC's case, to account for state-court proceedings in which an appeals court had declared former SMC 14.25 illegal in its entirety, as violating the Washington Constitution's initiative requirements.  *Id.* ¶ 21.  The state litigation, however, was mooted when the City, in September 2019, repealed former SMC 14.25 and enacted, among other successors, SMC 14.28 as a replacement for Part 3.  *Id.* ¶ 22.  This Court then lifted the stay, and ERIC filed the FAC to challenge SMC 14.28.  *Id.*

**B.  SMC 14.28's Basic Provisions**

At the outset, SMC 14.28 states its purpose to be "requiring certain employers to make required healthcare expenditures to or on behalf of certain employees for the purpose of improving access to medical care."  SMC 14.28 (preamble).[1]  The ordinance's "intent . . . is to improve low-wage hotel employees' access, through additional compensation, to high-quality, affordable health *coverage* for the employees and their spouses or domestic partners, children, and other dependents."  *Id.* § 14.28.025 (emphasis added).

Under SMC 14.28, eligible employees are full or part-time or temporary workers, must work an average of 80 hours or more per month, and must not be a manager, supervisor, or

---

[1] SMC 14.28 is available at http://seattle.legistar.com/LegislationDetail.aspx?ID=3993855&GUID=A3ACB5DC-6D4C-4EF1-A6F9-AFD275F25343&Options=ID|Text|&Search=125930 (last visited Mar. 19, 2020).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT - 2
CASE NO. - 2:18-CV-01188-TSZ

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1 confidential employee. *Id.* §§ 14.28.030, 14.28.020. Covered employers are owners or

2 operators of a hotel with 100 or more guest rooms in the City, as well as ancillary hotel

3 businesses with 50 or more employees worldwide (the latter not having been subject to Part 3).

4 *Id.* §§ 14.28.040, 14.28.020. "Ancillary hotel business" is "any business that (1) routinely

5 contracts with the hotel for services in conjunction with the hotel's purpose; (2) leases or sublets

6 space at the site of the hotel for services in conjunction with the hotel's purpose; or (3) provides

7 food and beverages, to hotel guests and to the public, with an entrance within hotel premises."

8 *Id.* § 14.28.020.

9     SMC 14.28 requires covered employers to make, each month, "[r]equired healthcare

10 expenditures for covered employees" of $420 if an employee has no spouse, domestic partner,

11 or dependents; $714 for an employee with dependents only; $840 for an employee and

12 spouse/domestic partner; and $1260 for an employee with spouse, domestic partner, and

13 dependents. *Id.* § 14.28.060.A.1-A.4. These are "2019 rates" and are "subject to annual

14 adjustments based on the medical inflation rate." *Id.* § 14.28.060.A.

15     Covered employers "have discretion as to the form of the monthly required healthcare

16 expenditures they choose to make for their covered employees." *Id.* § 14.28.060.B. They "may

17 satisfy their monthly obligations through any one or more of the following [three] forms (*id.*),"

18 either individually or in combination:

19     1.    First option: "Additional compensation paid directly to the covered employee"

20            (*id.*);

21     2.    Second option: "Payments to a third party, such as to an insurance carrier or

22            trust, or into . . . tax favored health programs, (including health savings accounts,

23            medical savings accounts, health flexible spending arrangements, and health

24            reimbursement arrangements) to provide healthcare services, for the purpose of

25            providing healthcare services to the employee or the spouse, domestic partner, or

26            dependents of the covered employee (if applicable)" (*id.*); and

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 3
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713 FAX: (206) 260-8946

3. Third option:  "Average per-capita monthly expenditures for healthcare services made to or on behalf of covered employees or [the spouse or dependents] by the employer's self-insured and/or self-funded insurance program(s)."  *Id.*[2]

For purposes of the second and third options, "[h]ealthcare services" are medical care and services under Internal Revenue Code (26 U.S.C.) § 213, which allows a deduction for such care and services not covered by insurance.  SMC 14.28.020.  Also for purposes of these options, "if an employer imposes a waiting period before new hires can be enrolled in its employer-sponsored plan (or the plan or insurer carrier mandates such a period), the employer will not be required to satisfy the health expenditures described in 14.28.060.A until the sooner of sixty days from the date of hire or the expiration of the waiting period."  *Id.* § 14.28.060.C.

## C.  SMC 14.28's Exceptions and Waiver Requirements

SMC 14.28 contains several exceptions and a waiver regime to ensure no abuse of the exceptions.  One exception provides that an employer will be "deemed to have satisfied" its monthly obligations under *any* of the three options, if "an employee voluntarily declines an employer's offer" of compliance through the second and third options – *i.e.*, an offer of coverage under the employer's insured or self-funded health plan.  *Id.* § 14.28.060.D.  For the offer to be valid, the employer "must not require the employee to pay more than a dollar amount equivalent to 20 percent of the monthly required health amount described in subsection 14.28.060.A.1," assumedly through the employee's portion of an insurance premium or cost-sharing.  *Id.* § § 14.28.060.D.1.  A declination occurs when the employer "obtain[s] a signed waiver from the employee, free from coercion."  *Id.* § 14.28.060.D.2.

In turn, SMC 14.28 regulates the terms and conditions for an employer to obtain the employee's waiver to substantiate the declination permitted under § 14.28.060.D.  The waiver

---

[2] As relevant here, there are two types of ERISA health benefit plans that employers traditionally sponsor:  insured and self-funded.  *See FMC Corp. v. Holliday*, 498 U.S. 52, 60-64 (1990).  Insured plans are those sponsored by an employer who purchases insurance, with the insurer then administering the plan and carrying the risk.  With self-funded plans, the employer self-insures and thus carries the risk, and it typically hires a third party to administer the plan.  SMC 14.28's second option concerns insured ERISA plans, while its third option concerns self-funded ERISA plans.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT - 4
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1   process begins with the employer, in that "[t]he employer must offer [a] waiver in the

2   employee's primary language and on a form issued by the Director [of the Office of Labor

3   Standards]." *Id.* § 14.28.060.D.2. "Prior to offering the waiver, the employer must provide the

4   employee with a written disclosure of the rights being waived, the form and content of which

5   shall be prescribed by the Director." *Id.* And again, the employer must perform these functions

6   without "coercing or unduly inducing an employee to waive coverage." *Id.* § 14.28.050.

7   Ultimately, if the employer makes the offer of coverage, if the employer complies with the

8   waiver requirements, and if the employee who receives the waiver form "refuses to sign such

9   waiver" and "continues to decline, in whole or in part," the employer "will be deemed to have

10  satisfied its required healthcare expenditure rate for that employee." *Id* § 14.28.060.D. In that

11  situation, the employer must keep records of "the employee's receipt of the waiver and written

12  disclosures . . . and the employee's subsequent refusal to sign the waiver." *Id.*

13          Another exception is for an employee "who receives health coverage from another

14  source, including but not limited to employer-sponsored health insurance through an employer

15  other than the covered employer." *Id.* § 14.28.030.B.2. Such an employee may waive coverage

16  from § 14.28 by signing a waiver that he or she "has access to high-quality and affordable health

17  coverage from another source." *Id.* § 14.28.030.B.2.a.

18          A final exception is for "any employees covered by a bona fide collective bargaining

19  agreement." *Id.* § 14.28.235.A. This exception applies only if SMC 14.28's requirements "are

20  expressly waived in the collective bargaining agreement." *Id.*

21      **D.  SMC 14.28's Record-Keeping and Enforcement Provisions**

22          Employers must retain records documenting compliance with SMC 14.28. *See id.* §

23  14.28.110. In particular, as noted, where an employer satisfies its obligations by making an

24  offer of coverage through the second or third options that is declined, the employer must keep

25  records of its disclosures to the employee regarding the offer of coverage, the provision of a

26  waiver form to the employee, and the employee's refusal to sign the waiver. *Id.* § 14.28.060.D.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 5
CASE NO. - 2:18-CV-01188-TSZ

1    With respect to enforcement, the City may investigate violations of SMC 14.28 and has

2 subpoena authority. *Id.* §§ 14.28.130, 14.28.150.E.  In the event of a violation, the City may

3 levy civil fines and penalties payable to the City, as well as require "unpaid compensation,

4 liquidated damages, civil penalties, [and] penalties payable to aggrieved parties." *Id.*

5 § 14.28.160.C.1.  Section 14.28.230 provides a private right of action to "[a]ny person or class

6 of persons that suffers an injury as a result of a violation" of SMC 14.28.

7    The effective date for SMC 14.28 is the later of July 1, 2020, or the earliest annual open

8 enrollment period for health coverage after July 1, 2020, except that ancillary hotel businesses

9 with 50 to 250 employees shall have until similar dates in 2025 to comply.  *Id.* § 14.28.260.

10                    **STANDARD UNDER RULE 12(b)(6)**

11    Rule 12(b)(6), which the City has invoked to dismiss the FAC, authorizes dismissal

12 where a plaintiff's complaint "fail[s] to state a claim upon which relief can be granted." Fed. R.

13 Civ. P. 12(b)(6).  In determining whether a complaint meets that threshold, the Court "'accept[s]

14 all factual allegations in the complaint as true and constru[es] them in the light most favorable to

15 the nonmoving party.'" *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 938 (9th Cir. 2018) (quoting

16 *Fields v. Twitter, Inc.*, 881 F.3d 739, 743 (9th Cir. 2018)).  Ultimately, "[t]he Court inquires

17 whether the complaint at issue contains 'sufficient factual matter, accepted as true, to state a

18 claim of relief that is plausible on its face.'" *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131 (9th

19 Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Dismissal is warranted only

20 "based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged

21 under a cognizable legal theory." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir.

22 2017) (internal quotation marks and citation omitted).

23                              **ARGUMENT**

24 **I.    ERISA BROADLY PREEMPTS ANY STATE LAW HAVING A
            REFERENCE TO OR CONNECTION WITH AN ERISA PLAN**

25    The FAC alleges that ERISA preempts SMC 14.28, and the City seeks dismissal

26 exclusively on the ground that, under ERISA's preemption tests, there is here no plausible basis

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 6
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1  for preemption.  Accordingly, to decide the pending dismissal motion (and, ultimately, the case

2  as a whole), the place to start is with ERISA's general preemption standards.

3       ERISA contains an express preemption provision.  It provides:  ERISA "shall supersede

4  any and all State laws insofar as they may now or hereafter *relate to* any employee benefit

5  plan." 29 U.S.C. § 1144(a) (emphasis added).  Following from the "relate to" term Congress

6  chose, the Supreme Court has repeatedly characterized § 1144(a)'s text as "clearly expansive,"

7  having "an expansive sweep," "conspicuous for its breadth," "deliberately expansive," and

8  "broadly worded."  *Cal. Div. of Labor Stds. Enforcement v. Dillingham Constr., N.A.*, 519 U.S.

9  316, 324 (1997) (internal quotation marks and citations omitted) (cataloging statements in prior

10  precedents).  In its most recent ERISA preemption decision, the Court confirmed (again) that

11  ERISA's preemption section has a "broad scope," adding that, through the provision, Congress

12  intended the regulation of employee benefit plans to be "'exclusively a federal concern.'"

13  *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943, 944 (2016) (quoting *Alessi v. Raybestos-*

14  *Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).  Still, while emphasizing § 1144(a)'s breadth, the

15  Supreme Court has also cautioned against applying the provision too "literal[ly]," for "'[i]f

16  "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical

17  purposes pre-emption would never run its course.'"  *Id.* at 943 (quoting *N.Y. State Conf. of Blue*

18  *Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995) ("*Travelers*")).

19       In devising guardrails for § 1144(a), the "case law to date has described two categories

20  of state laws that ERISA pre-empts":  (1) state laws that make a "reference to" ERISA plans;

21  and (2) state laws that have a "connection with" ERISA plans.  *Id.*  In turn, a state law makes a

22  "reference to" ERISA plans when it "'acts immediately and exclusively upon ERISA plans'" or

23  "'the existence of ERISA plans is essential to the law's operation.'"  *Id.* (quoting *Dillingham*,

24  519 U.S. at 325).  The Ninth Circuit has put the relevant standard this way:  a state or local law

25  references ERISA plans where it "mentions or alludes to ERISA plans, and has some effect on

26  the referenced plans."  *WSB Elec., Inc. v. Curry*, 88 F.3d 788, 793 (9th Cir. 1996).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 7
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

A state law has a "connection with" ERISA plans when it "'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Gobeille*, 136 S. Ct. at 943 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)). Included among state laws proscribed in those categories are state measures "that mandate[] employee benefit structures or their administration." *Travelers*, 514 U.S. at 658. "A state law also might have an impermissible connection with ERISA plans if 'acute, albeit indirect, economic effects' of the state law 'force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers.'" *Gobeille*, 136 S. Ct. at 943 (quoting *Travelers*, 514 U.S. at 668).

## II.    THERE IS NO PRESUMPTION AGAINST PREEMPTION IN THIS CASE

Though the City agrees that the ERISA-preemption touchstones for deciding its motion to dismiss are whether SMC 14.28 makes a "reference to" or has a "connection with" ERISA plans, it seeks to freight the inquiry with a threshold presumption against preemption. Indeed, the City spends four pages in its motion trying to establish that there is "a strong presumption against preemption by federal law." Def.'s Mot. to Dismiss the FAC at 9 (ECF No. 37) ("Def.'s Mot."); *see generally id.* at 9-12. The City is incorrect: there, in fact, is no presumption against preemption in this case.

Historically, the Supreme Court had not applied any presumption against preemption under § 1144(a), instead characterizing ERISA's preemption provision as the statute's "'crowning achievement'" and revolutionary for its time. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 99 (1983) (quoting 120 Cong. Rec. 29,197 (1974) (statement of Rep. Dent)); *see Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 24 n.26 (1983) (describing § 1144(a) as a "virtually unique pre-emption provision"). Nonetheless, by the time of *Travelers* in 1995, the Court did instruct for ERISA's preemption section a "starting presumption that Congress does not intend to supplant state law . . . in fields of traditional state regulation." 514 U.S. at 654-55. Such a presumption against preemption under § 1144(a) coincided with the Supreme Court's general trend at the time of extending to situations involving a statute with an

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT - 8 CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

express preemption provision the "presumption against the pre-emption of state police power regulations" typically applied in ordinary conflict-preemption circumstances (*i.e.*, circumstances where a statute is devoid of a preemption provision but the Constitution's Supremacy Clause might require the ousting of state law).  *Cipollone v. Liggett Grp.*, 505 U.S. 504, 518 (1992) (federal food and drug statute).

But the Supreme Court's thinking changed in the twenty years following *Travelers*, so that by the mid-2010s a majority of Justices had registered dissatisfaction with a presumption against preemption when Congress had included a preemption command in the statute's express terms.  *E.g.*, *CTS Corp. v. Waldburger*, 573 U.S. 1, 19-20 (2014) (Scalia, J., concurring, and joined by Roberts, C.J., and Thomas and Alito, J.J.); *Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 21 (2013) (Kennedy, J., concurring).  Then, in *Gobeille*, the Court refused to recognize at all the existence of a presumption against preemption, prompting a dissent from Justice Ginsburg.  *Compare* 136 S. Ct. at 946 ("*Any* presumption against pre-emption, *whatever* its force in other instances, cannot validate a state law that enters a fundamental area of ERISA regulation and thereby counters the federal purpose in the way this state law does.") (emphasis added) *with id.* at 954 (Ginsburg, J., dissenting) (relying heavily on a "[t]he presumption against preemption").  Finally, in *Puerto Rico v. Franklin California Tax-Free Trust*, the Court formally ruled that, where a "statute 'contains an express pre-emption clause,' we do not invoke any presumption against pre-emption." 136 S. Ct. 1938, 1946 (2016) (quoting *Chamber of Commerce v. Whiting*, 563 U.S. 582, 594 (2011)).  Though *Franklin* was not an ERISA case, the Court in *Franklin* cited *Gobeille* in support of the proposition that there is no presumption against preemption if a statute contains an express preemption provision.  *See id.*

After *Franklin*, courts have begun to reject a presumption against preemption when applying ERISA's express preemption provision, determining *Travelers* to have been overruled on the point.  *See Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 259 (5th Cir. 2019) ("Given that *Franklin* specifically references *Gobeille* – an ERISA case –

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT - 9 CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA 98101
(206) 626-7713  FAX: (206) 260-8946

1   when holding that there is no presumption of preemption when the statute contains an express

2   preemption clause, we conclude that holding is applicable here.").  Though the Ninth Circuit has

3   not yet squarely addressed *Franklin*'s application in the ERISA context, it has followed

4   *Franklin* to reject a presumption against preemption for another statute that "speaks expressly to

5   the question of preemption."  *Atay v. Cty. of Maui*, 842 F.3d 688, 699 (9th Cir. 2016) (applying

6   express preemption provision in the Plant Protection Act, 7 U.S.C. § 7756(b)); *see Dialysis*

7   *Newco*, 938 F.3d at 258 (finding *Atay* to support proposition that, after *Franklin*, there is no

8   presumption against preemption under ERISA's preemption provision).

9       In light of *Franklin* and its progeny, the Court should reject a presumption against

10  preemption when applying ERISA's express preemption clause.  In fact, the Court can, and

11  should, review with a skeptical eye earlier precedents rejecting preemption under § 1144(a), if

12  the decision was based heavily on a presumption against preemption.  *See, e.g.*, *Dialysis Newco*,

13  938 F.3d at 259 ("because *Rapides* [*i.e.*, an earlier Fifth Circuit ERISA-preemption decision]

14  was built upon a presumption against preemption that the Supreme Court appears to have

15  walked back from, we decline to extend *Rapides*'s reasoning to the facts of this case").

16      The City asserts that *Franklin*'s holding is limited to situations where "the preemption

17  provision's language is plain," and apparently the City believes § 1144(a)'s text is less than

18  plain.  Def.'s Mot. at 9 n.7 (emphasis removed).  *Dialysis Newco*, however, rejected that same

19  argument.  *See* 938 F.3d at 258.  Moreover, just because § 1144(a)'s text may be "frustrating" to

20  apply does not make it un-plain.  *Travelers*, 514 U.S. at 656.  To the contrary, by using the

21  "relate to" language it did, Congress obviously – or plainly – intended ERISA's preemption

22  provision to be "broad[ly]" interpreted, as *Gobeille* most recently reiterates.  136 S. Ct. at 943.

23  The Supreme Court has called § 1144(a)'s text "terse but comprehensive," not ambiguous or

24  some other adjective opposite of plain.  *Id.*  The key to applying that curt text is – again, as

25  *Gobeille* instructs – to implement the "workable" standards fashioned under the "reference to"

26  and "connection with" rubrics, not to rely on a judge-made presumption against preemption.  *Id.*

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 10
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1    In any event, even if the pre-*Franklin* presumption scheme still governed, no

2    presumption would apply in this case.  The presumption operated when a state enacted "general

3    health care regulation, which historically has been a matter of local concern." *Travelers*, 514

4    U.S. at 661.  For instance, in *Golden Gate*, the fundamental element of the San Francisco

5    ordinance there at issue was the creation of "the Health Access Plan (HAP)," which is "a City-

6    administered health care program" that "*provides* enrollees with 'medical services with an

7    emphasis on wellness, preventive care and innovative service delivery.'" *Golden Gate*, 546

8    F.3d at 642, 645 (quoting S.F. Admin. Code § 14.2(f)) (emphasis added).  The ordinance then

9    sets forth a series of employer financing mechanisms for the HAP, from which the employer is

10   "exempt . . . if it [already] makes health care expenditures" at a certain average rate on behalf of

11   its workers (between $1 and $2 per hour worked by its workforce).  *Id.* at 645.  In that situation,

12   the Ninth Circuit (pre-*Franklin*) held that there is a presumption against ERISA preemption

13   because "[t]he field in which the [San Francisco] Ordinance operates is the *provision of health*

14   *care services* to persons with low and moderate incomes," and "[s]tate and local governments

15   have traditionally *provided* health care services to such persons." *Id.* at 648 (emphasis added).

16       In contrast, SMC 14.28 involves no *provision* of health care services.  Rather, as even

17   the City acknowledges, SMC 14.28, "at its core, seeks to 'improve low-wage hotel employees'

18   access, through additional compensation, to . . . health *coverage* . . . .'" Def.'s Mot. at 21

19   (quoting SMC 14.28.025) (emphasis added; ellipses in original).  Unlike the actual *provision* of

20   health care services to low-income segments of society, health benefits *coverage* for employees

21   is not an area of traditional state concern.  Since 1974, it has been an area of exclusively federal

22   interest, through ERISA.  Because "the states have not traditionally occupied the field" of

23   private-sector employee health benefits *coverage*, the Court should "apply no presumption

24   against preemption." *United States v. Arizona*, 641 F.3d 339, 348 (9th Cir. 2011), *rev'd on*

25   *other grounds*, 567 U.S. 387 (2012); *see also Aloha Airlines v. Ahue*, 12 F.3d 1498, 1505 (9th

26   Cir. 1993) (holding that Hawaii law requiring direct reimbursement by employers of costs of

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 11
CASE NO. - 2:18-CV-01188-TSZ

medical exams "does not represent a regulation of traditional state authority") (emphasis

removed).[3]

### III.  ERISA PREEMPTS SMC 14.28 BECAUSE, UNDER ANY OF ITS OPTIONS, SMC 14.28 REQUIRES THE CREATION OF ERISA PLANS

ERISA preempts SMC 14.28 for a series of reasons, each of which is sufficient alone to

necessitate invalidation of the ordinance.  An initial reason is that, under any of its options,

SMC 14.28 requires the creation or maintenance of an ERISA plan.  If a state or local law,

through its operation, "creates an ERISA plan," it "almost certainly makes an impermissible

'reference to' an ERISA plan."  *Golden Gate*, 546 F.3d at 648.

The City does not appear to dispute that SMC 14.28 requires the establishment of

ERISA plans for compliance under at least the second and third options.  Nor could it.  ERISA

defines a welfare plan as

> any plan, fund, or program which was heretofore or is hereafter established or
> maintained by an employer . . . to the extent that such plan, fund, or program was
> established or is maintained for the purpose of providing for its participants or their
> beneficiaries, *through the purchase of insurance or otherwise*, . . . medical,
> surgical, or hospital care or benefits, or benefits in the event of sickness . . . .

29 U.S.C. § 1002(1) (emphasis added).  SMC 14.28's second option authorizes compliance with

the ordinance's required expenditure amounts through employer purchases of insurance for its

employees, arrangements that fit the welfare-plan definition (especially the italicized language

above) to a tee; likewise, the third option authorizes expenditures through "the employer's self-

insured and/or self-funded insurance programs," which requires the existence of ERISA plans

(namely, self-funded ones) even to be operational.  SMC 14.28.060.B.3.

The dispute is over whether the first option – involving direct payments to workers –

constitutes an ERISA plan.  It does.  By its terms, the first option for compliance constitutes an

---

[3] To support a presumption against preemption, and later to define the "reference to" standard, the City relies on *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 903 F.3d 829, 846 (9th Cir. 2018), adding the innocuous-sounding modifier of "*vacated on unrelated grounds*[,] 941 F.3d 1195 (9th Cir. 2019) (*en banc*)." Def.'s Mot. at 8; *see id.* at 22.  The City's citation and use of the case violated an express order from the Ninth Circuit.  In granting *en banc* review, the Ninth Circuit instructed that "[t]he three-judge panel disposition in this case shall not be cited as precedent by or to any court of the Ninth Circuit."  *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, 923 F.3d 1162, 1163 (9th Cir. 2019).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 12
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1  employer-based regimen of repeated payments to employees to defray the employees' medical

2  costs, which – on its face – satisfies ERISA's welfare plan definition of a program established

3  or maintained by the employer for the purpose of providing benefits in the event of sickness or

4  medical need.  Here, the monthly payments directed by the City so that the employee can access

5  health coverage are the benefit, as the Ninth Circuit has established that money payments

6  themselves to employees are an ERISA benefit when made for purposes of covering healthcare

7  costs.  *See, e.g.*, *DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 874

8  (9th Cir. 2017) (holding that "[t]he term 'benefit' in [ERISA] . . . refers to the specific

9  *advantages* provided to covered employees, as a consequence of their employment, for

10  particular purposes connected to alleviating various life contingencies") (emphasis added).

11  In prior decisions, the Ninth Circuit has found similar employer-to-employee direct-

12  payment schemes to constitute ERISA plans.  In *Aloha Airlines, Inc. v. Ahue*, 12 F.3d 1498,

13  1502-05 (9th Cir. 1993), the Ninth Circuit held that a Hawaii requirement of annual or semi-

14  annual payments by airline employers to employees to defray the cost of FAA-mandated pilot

15  exams constituted an ERISA plan.  In *Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir.

16  1992), the Ninth Circuit found that even just a one-time payment of money in the event of

17  employment termination constituted an ERISA plan.  These decisions had three key ingredients.

18  First, in order to pay the benefits, the employers needed "to establish an administrative

19  scheme," and the "establishment of such a scheme clearly implicates an ERISA plan."  *Aloha*

20  *Airlines*, 12 F.3d at 1505.  The employers needed to create an administrative scheme because

21  "'the circumstances of each employee's'" situation had "'[to be] analyzed in light of [certain]

22  criteria.'"  *Bogue*, 976 F.2d at 1323 (quoting *Fortenot v. NL Indus., Inc.*, 953 F.2d 960, 962-63

23  (5th Cir. 1992) (brackets in original)).  In *Aloha Airlines*, the direct payment turned on "a pilot's

24  current rank," since only captains and first officers needed the FAA pilot exams for which the

25  state required employer payments.  *Aloha Airlines*, 12 F.3d at 1505.  In *Bogue*, eligibility for the

26  job-termination payment turned on whether, upon termination, the employee was "offer[ed]

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 13
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1   'substantially equivalent' employment." *Bogue*, 976 F.2d at 1321.  In both instances, the need

2   for "ongoing, particularized . . . analysis" by the employer to determine each employee's

3   eligibility meant "there was no way to administer the program without an administrative

4   scheme." *Id.* at 1323.

5        Second, ERISA plans were implicated because the "payments . . . may depend on

6   contingencies outside the . . . employee's control."  *Aloha Airlines*, 12 F.3d at 1503; *see Bogue*,

7   976 F.2d at 1322.  Where the employer – rather than just the employee – has some

8   "discretionary" authority to qualify individuals for the program (*Bogue*, 976 F.2d at 1323), then

9   "ERISA's concerns with the abuse and mismanagement of funds accumulated to finance

10  employee benefits" more readily come into play and necessitate that the program be deemed an

11  ERISA plan.  *Aloha Airlines*, 12 F.3d at 1503.  In *Aloha Airlines*, the "pilot's status" was under

12  the employer's control and could "change . . . depending upon an airline's needs," and, again, it

13  was pilot status as a captain or first officer that triggered the need for an FAA exam and thus the

14  "employer payments required by the statute."  *Id.*  In *Bogue*, the employer not only determined

15  who would receive "substantially equivalent" employment, but also "remained obligated to

16  decide whether a complaining employee's job was 'substantially equivalent' to his pre-

17  acquisition job."  *Bogue*, 976 F.2d at 1323.

18       Third, the programs in *Aloha Airlines* and *Bogue* did not involve merely predictable,

19  rote payments.  In *Aloha Airlines*, in particular, the Ninth Circuit emphasized that "an airline

20  cannot often predict how many pilots of a particular status it will need during a coming year,"

21  and therefore "an airline employer cannot necessarily determine the amount of monies to budget

22  for such payments well in advance of the expected payment date."  *Aloha Airlines*, 12 F.3d at

23  1503.  As a result, the "periodic payments" were less "analogous to salary payments," which are

24  "fixed" and "regular[]," and instead "would require an airline to establish a plan to administer

25  and manage them."  *Id.*

26       The direct employee payments pursuant to the first option of SMC 14.28 have the

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 14
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1   "hallmark[s]" of an ERISA plan, as in *Aloha Airlines* and *Bogue*. *Bogue*, 976 F.2d at 1322.

2   The large-hotel and ancillary-business employers subject to SMC 14.28 would need to establish

3   an administrative scheme even with the first option, because each employee's individual

4   circumstances would need to be analyzed for eligibility.  For one thing, the employer would

5   need to determine, every month, which employees (including part-time employees) averaged 80

6   hours per month and were not exempt (supervisory) personnel, not much differently than the

7   employer in *Aloha Airlines* needed to determine for payment eligibility a pilot's status.  *See*

8   *Aloha Airlines,* 12 F.3d at 1505 ("the statute effects the primary administrative functions of

9   Aloha's plans because it compels Aloha to ascertain whether a pilot is eligible for a particular

10  benefit (by determining that pilot's rank and status periodically) and to assess the amount of the

11  benefit").  Moreover, in the case of SMC 14.28, the waiver process makes further individualized

12  assessment necessary.  No covered employee would be entitled to a direct payment if he or she

13  had access to high quality healthcare elsewhere (through, for instance, coverage offered to a

14  family member or another employer for whom the worker works), and he or she signed a waiver

15  (after proper pre-waiver disclosure from the employer).  Likewise, no one would be entitled to a

16  direct payment if the employer had offered health benefits under the second or third options

17  (with no more than the 20% employee contribution), and the employee declined.  Keeping track

18  of all of these moving parts for each potentially eligible employee "requires [the employer] to

19  establish an administrative scheme" to pay the "recurring" benefits.  *Id.*

20          Next, the receipt of a direct payment is not solely within the "employee's control."  *Id.*

21  at 1503.  The employer controls the number of hours offered to, and thus worked by, each

22  employee and, as a consequence, the employees' eligibility; and the employer is the entity

23  "obligated to decide" who qualifies each month and to make payments to individuals.  *Bogue*,

24  976 F.2d at 1323.  Importantly, the employer also influences whether anyone can even claim a

25  direct payment.  Again, if *the employer* offers an individual health benefits coverage through an

26  insured or self-funded plan, with the obligation that the employee pay 20% of the cost (as is

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 15
CASE NO. - 2:18-CV-01188-TSZ

allowed under SMC 14.28.060), and the employee declines the offer, then the employer need not provide the coverage *or* make a direct payment.  It is conceivable that an unscrupulous employer might strategize to make such offers to those it knows cannot afford the 20% cost, obtain the declinations, and thereby limit the individuals subject to SMC 14.28.

Finally, with direct payments under the first option, an employer cannot readily determine "the amount of monies to budget" for direct payments.  *Aloha Airlines*, 12 F.3d at 1503.  A large hotel employer or ancillary business, in one month, might need innumerable part-time (*i.e.*, 80-hours-per-month) employees; and other months, none.  The current COVID-19 crisis illustrates the point, with large hotel employers regrettably needing to furlough even permanent employees.  The point is that an employer will likely spend "varying amounts for different numbers of [employees]" each month on payments, depending on its workforce needs.

The City relegates *Aloha Airlines* to a footnote and *Bogue* to a parenthetical (*see* Def.'s Mot. at 16 & n.12), instead trying to align SMC 14.28's first option with the employer practices the Supreme Court held not to constitute ERISA plans in *Massachusetts v. Morash*, 490 U.S. 107 (1989), and *Fort Halifax Co. v. Coyne*, 482 U.S. 1 (1987).  However, the Ninth Circuit distinguished those cases in *Aloha Airlines* and *Bogues* on grounds equally applicable here.  *See Aloha Airlines*, 12 F.3d at 1503 (holding that, notwithstanding the state-required payments "can be paid from Aloha's general assets" as in *Morash*, "the *Morash* Court's reasoning supports the conclusion that employer payments for FAA-mandated examinations implicate ERISA's principal concerns," because employers cannot "budget" for the costs like typical payroll matters and need "to establish a plan to administer and manage [the payments]"); *id.* at 1505 ("[u]nlike the state law in *Fort Halifax*, which required an employer to make a one-time, lump-sum severance payment, [the Hawaii law] requires Aloha to establish an administrative scheme to pay recurring medical benefits"); *accord Bogue*, 976 F.2d at 1323.

And of course, the City cites *Golden Gate*, where the Ninth Circuit rejected the argument that employers' contributions to San Francisco to subsidize its provision of healthcare

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 16
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

to low-income individuals constituted an ERISA plan.  But the local ordinance there, in its San Francisco "City-payment option," had none of the characteristics of an ERISA plan that make SMC 14.28's first option an ERISA plan.  *Golden Gate*, 546 F.3d at 651.  There was no payment directly to any employee based on eligibility criteria that the employer applied; instead, the employer paid an *aggregate* amount to the City based on a rate set by the City times the overall "number of hours their employees work" (with credits then for benefits expenditures already made).  *Id.*  Whose hours to count each period might change, but no individual went in and out of eligibility for a direct payment and was subject to any possible denial of benefits by their employer.  Furthermore, the San Francisco law had no elaborate waiver system, with specific employer disclosure requirements, like SMC 14.28, which meant only limited "subjective judgments" for employers under San Francisco's process.  *Id.*  In sum, unlike the "'ongoing, particularized, administrative, discretionary analysis'" under SMC 14.28's first option that makes it "'an ongoing administrative scheme,'" an employer's obligations under the local law in *Golden Gate* "involve[d] mechanical record-keeping," "'d[id] not depend on contingencies outside the employee's control,'" and "d[id] not run the risk of mismanagement of funds or other abuse."  *Golden Gate*, 546 F.3d at 651 (quoting *Velarde v. Pace Membership Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997), and *Morash*, 490 U.S. at 115).[4]

## IV.   ERISA PREEMPTS SMC 14.28 BECAUSE EACH OF ITS OPTIONS MAKES AN IMPERMISSIBLE REFERENCE TO ERISA PLANS BY MEASURING COMPLIANCE THROUGH THE VALUE OR LEVEL OF BENEFITS PROVIDED

Another reason ERISA preempts SMC 14.28 is that compliance under any of its options

---

[4] The waiver provisions are a critical aspect of SMC 14.28, for they steer employers to comply through coverage in insured or self-funded ERISA plans, which is almost certainly the City's preference (given the advantages of ERISA coverage over direct payments for securing health insurance, *see infra* p. 22).  Under the waiver process, an employer avoids direct payments to an employee when the employee has ERISA coverage through another source (*i.e.*, another employer) or if the employee declines coverage under the employer's insured or self-funded plan (even if the plan has a 20% employee cost share).  Thus, the employer has an incentive to verify ERISA coverage elsewhere, or to offer its own ERISA coverage in the first instance (because, in the event it is declined, the employer has no obligation at all).  Of note, the Supreme Court has "virtually taken it for granted that state laws which are specifically designed to affect employee benefit plans are pre-empted under § [1144](a)." *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990) (internal quotation marks and citation omitted).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 17
CASE NO. - 2:18-CV-01188-TSZ

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

is measured by the value or level of benefits provided.  In *Golden Gate*, while finding that San Francisco's law avoided preemption because it simply used a mathematical formula of a rate times the employer's total employee hours worked (with credits then applied) to determine an employer's liability for the City's provision of health care services to low-income individuals, the Ninth Circuit said a local law would fare differently if its "obligations were measured by the level of *benefits* provided by the ERISA plan to the employee."  *Golden Gate*, 546 F.3d at 658. In that instance, the law would make an impermissible "reference to" ERISA plans under *District of Columbia v. Greater Washington Board of Trade*, 506 U.S. 125 (1992). Distinguishing *Greater Washington*, the Ninth Circuit said:

> The employer calculates its required payments based on the hours worked by its employees, rather than *on the value or nature of the benefits* available to ERISA plan participants.  Thus, unlike the ordinance in *Greater Washington*, the Ordinance in this case is not determined, in the words of [§ 1144(a)], by 'reference to' an ERISA plan."

546 F.3d at 658 (emphasis added).

Under SMC 14.28's first option, the direct monthly payments to the employee to cover expected medical costs are themselves the ERISA benefits (as were the direct payments in *Aloha Airlines* and *Bogue*), and compliance turns on whether that benefits meet the *value* requirements set out in § 14.28.060.A (for instance, $420 per month for employee self-only benefits).  In fact, because the payment (for future use towards health care) is the benefit, the City overtly sets even the *level of benefits* by establishing the dollar amount to be paid to the employee.  *See Aloha Airlines*, 12 F.3d at 1502 (rejecting argument that "only those 'medical benefits' that provide . . . immediate aid to a participant employee are within ERISA's purview").  Under the second option (*i.e.*, the insured plan option), an employer satisfies its obligations only if it purchases for *each* covered employee an insurance plan with sufficient benefits and value as to be priced (the premium associated with that employee) at a level equal to or above SMC 14.28's specifications.  Under the third option, an employer satisfies its

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT - 18 CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

obligations only if, per capita on average, the value of benefits its pays under its self-funded plan is equal to or above SMC 14.28's specifications.

## V.   ERISA PREEMPTS SMC 14.28 BECAUSE IT OTHERWISE REFERENCES ERISA PLANS THROUGHOUT ITS PROVISIONS

Still another reason that ERISA preempts SMC 14.28 is that the ordinance makes "reference to" ERISA plans in other ways, acting immediately and exclusively upon ERISA plans and with the existence of ERISA plans being essential to the law's operation. *See supra* p. 7.  The references are numerous and pervade all three options for compliance:

- On its face, the second option makes compliance turn on the employer paying an "insurance carrier or trust," which is a reference to an ERISA plan.  SMC 14.28.060.B.2.

- On its face, the third option makes compliance turn on whether the employer makes average per capita payments through "the employer's self-insured and/or self-funded insurance program(s)," which is a reference to an ERISA plan.  *Id.* § 14.28.060.B.3.

- On the face of SMC 14.28, when monthly payments must be made to new hires under the second and third options is measured by the waiting period in the "employer-sponsored plan," which is a reference to an ERISA plan.  *Id.* § 14.28.060.C.

- An employer will be deemed to have satisfied SMC 14.28, under any of the three options, if the employee refuses an employer's offer of coverage under an employer-sponsored insured or self-funded plan where the employee's cost sharing is no greater than "20 percent of the monthly required healthcare amount," which is a reference to an ERISA plan and its specific terms.  *Id.* § 14.28.060.D.1.

- SMC 14.28's scope excludes individuals who have "health coverage" from "employer-sponsored coverage through an employer other than the covered employer," which is a reference to an ERISA plan.  *Id.* § 14.28.030.B.2.

- SMC 14.28's "Effective date" provision fixes the ordinance's start date, in part,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 19
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1   based on "the earliest annual open enrollment period for health coverage, if offered,

2   after July 1, 2020," which is a reference to an ERISA plan and its enrollment terms.

3   *Id.* § 14.28.260.

4        Though, in these references, SMC 14.28 does not in every instance use the exact term

5   "ERISA plan," the Supreme Court has recognized that references to employer-based coverage,

6   employer-sponsored insurance, or an employer's program is the equivalent of an actual, exact

7   reference to an ERISA plan. *See Greater Wash.*, 506 U.S. at 130 (holding that a state law's

8   mention of "'health insurance coverage'" and the "'benefit level'" in that coverage were each

9   references to ERISA plans) (quoting state law); *FMC Corp. v. Holliday*, 498 U.S. 52, 59 (1990)

10  (holding that a state law's mention of "'any program, group contract or other arrangement for

11  payment of benefits'" constituted a reference to ERISA plans) (quoting state law); *Ingersoll-*

12  *Rand*, 498 U.S. at 140 (mention of "employee's pension fund" in state cause of action is a

13  reference to ERISA plans).  And these various references in SMC 14.28 are not mere allusions

14  to ERISA plans, but describe the actual modes of compliance, the contours of those compliance

15  modes, and exceptions to compliance.

16       The City minimizes these references by contending that SMC 14.28 could operate in

17  some form (albeit a shell form, other than actually enacted) even if no employer ever adopted an

18  ERISA plan, supposedly proving that ERISA plans are not integral and essential to the

19  ordinance's operation.  *See* Def.'s Mot. at 22-24.  That is simply untrue, given that, as shown,

20  *each* option involves the creation of an ERISA plan.  Even assuming that the first option were

21  not itself an ERISA plan, ERISA plans nonetheless are key to SMC 14.28's full operation.

22  Under the terms of the first option (as with the other options), no employer need make a

23  payment if the covered employee has *ERISA coverage* elsewhere; nor must the employer

24  comply with the first option if it offers *ERISA coverage* under the second or third options and

25  the employee declines.  Accordingly, ERISA plans are integral to determine even threshold

26  application of the first option.  *See Greater Wash.*, 506 U.S. at 130 (holding that state law

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 20
CASE NO. - 2:18-CV-01188-TSZ

governing non-ERISA plans referenced ERISA plans when it made the non-ERISA plans' terms

hinge on the terms of analogous ERISA coverage).

## VI.     ERISA PREEMPTS SMC 14.28 BECAUSE IT HAS A CONNECTION WITH ERISA PLANS

A final basis for ERISA preempting SMC 14.28 is that it has a "connection with"

ERISA plans.  In a nutshell, SMC 14.28 effectively compels large hotel employers and ancillary

businesses to alter their current or self-funded coverage both to make eligible for coverage those

employees covered by SMC 14.28 and to provide benefits consistent with the value-level

requirements of the second and third options.  As noted earlier, a state law will have an

impermissible "connection with" ERISA plans if "'acute, albeit indirect, economic effects'" of

the state law "'force an ERISA plan to adopt a certain scheme of substantive coverage or

effectively restrict its choice of insurers.'"  *Gobeille*, 136 S. Ct. at 943 (quoting *Travelers*, 514

U.S. at 668).  *Golden Gate* added that this standard is satisfied where, if a state law purports to

offer various routes for compliance, the law does not offer "employers a realistic alternative to

creating or altering ERISA plans." *Golden Gate*, 546 F.3d at 660; *e.g.*, *Retail Indus. Leaders*

*Ass'n v. Fielder*, 475 F.3d 180, 197 (4th Cir. 2007) (holding that Maryland health-plan law that

"leaves employers no reasonable choices except to change how they structure their employee

benefit plans" is preempted because it "directly regulates employers' provision of healthcare

benefits" and has a "'connection with' covered employers' ERISA plans").

SMC 14.28 requires the creation of ERISA plans under any of its options, as already

noted; so, the Court need not proceed to the question of whether it actually pushes employers to

do so, instead of choosing a non-ERISA option (as there is no such non-ERISA option).  Yet, if

the Court determines that the first option does not involve the creation of an ERISA plan, then

SMC 14.28 still has an impermissible connection with ERISA plans because the law does not

meaningfully allow employers to choose the first option over the second and third options.

The first option is financially more onerous and otherwise problematic, so as not to

make it a reasonable choice over the other options, because (as alleged in the FAC ¶ 55):

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 21
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

- If they are required to spend additional corporate funds, rational employers will do so in a manner whereby they can ensure that the money will be used for health benefits for their workers (as is the case under the second and third options).

- Direct payments are costlier to employers because – in order to provide the same benefits as if they choose the second or third options – they may have to pay the employer share of federal employment taxes on the direct payments, whereas expenditures on health coverage under the second and third options are not subject to federal employment taxes.

- Offering health coverage to the employee is more financially advantageous to the employee, and thus more appealing to the employer, because the employee too may have to pay his or her share of federal employment taxes, as well as income taxes, on the direct payments but not the health coverage.

- Offering health coverage to the employee through insured or self-funded employer-sponsored plans is more advantageous to the employee who actually wants health coverage, and thus more appealing and administratively feasible to the employer, because greater coverage for the same amount typically can be obtained through a program covering a large group than individually.

- The City's earlier passage of Part 3 resulted in employers covered by that law altering their ERISA plans to bring them into compliance with Part 3, and it is unrealistic to expect employers who have already done the difficult work of adjusting their employee-benefit arrangements to cover the additional individuals to undo the new administrative regime in favor of direct payments.  Instead, the City's legislative maneuvering has created "sunk costs" for covered employers, resulting in the only reasonable option being for them now to further adjust the employer-sponsored coverage.  And if employers nevertheless did undo their prior work to

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 22
CASE NO. - 2:18-CV-01188-TSZ

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

1 enhance their ERISA plan benefits and eligibility, this change itself would be an

2 amendment to ERISA plans resulting from SMC 14.28.

3 The City addresses none of these points, except in a footnote where it contends that there

4 are insufficient facts alleged in the FAC to support the allegations.  Def.'s Mot. at 19 n.14.  The

5 footnote is disingenuous, and it belies the detail in the FAC.  The City never offers any

6 alternative set of facts or views regarding rational corporate behavior that would differ from the

7 FAC's allegations.  Indeed, the City never even disputes (because it cannot) that employers

8 responded to Part 3 by altering their ERISA plans, which is proof in itself that reasonable

9 corporate actors would not choose a direct-payment option, for they have not in the past, as all

10 appear to agree.

11 Last, SMC 14.28 has a separate "connection with" ERISA plans triggering preemption,

12 because of its disclosure and record-keeping requirements (applicable to any of its options).

13 "[R]eporting, disclosure, and recordkeeping are central to, and an essential part of, the uniform

14 system of plan administration contemplated by ERISA."  *Gobeille*, 136 S. Ct. at 945.

15 "Differing, or even parallel, regulations from multiple jurisdictions could create wasteful

16 administrative costs and threaten to subject plans to wide-ranging liability" through state

17 enforcement provisions, making "[p]re-emption . . . necessary."  *Id.*

18 Here, SMC 14.28 has unique disclosure and record-keeping requirements associated

19 with the waivers.  Particularly, an employer who offers coverage under its insured or self-

20 funded ERISA plan (at a 20% or less cost-share for the employee) has no obligation to comply

21 with SMC 14.28 – including the direct-payment requirement – if the employee declines the

22 coverage.  However, SMC 14.28 has strict disclosure requirements about the ERISA plan

23 coverage that the employer must meet (including in various languages and using City-generated

24 forms), and also requires records be kept regarding the offer and the circumstances of the

25 declination.  These records are well beyond the typical tax and wage data that employers must

26 keep for general legal compliance and concern nothing other than the terms and availability of

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 23
CASE NO. - 2:18-CV-01188-TSZ

KILPATRICK TOWNSEND & STOCKTON LLP
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

the employer's insured and self-funded ERISA plans.  Unlike in *Golden Gate* – which had no waiver framework at all – these burdens exists only *if* "a covered employer has an ERISA plan." *Golden Gate*, 546 F.3d at 657.  "Pre-emption [of SMC 14.28] is necessary to prevent the States from imposing novel, inconsistent, and burdensome [disclosure and] reporting requirements on plans." *Gobeille*, 136 S. Ct. at 945.[5]

## **CONCLUSION**

The Court should deny in its entirety the City's motion to dismiss the FAC.

DATED this 23rd day of March 2020.

KILPATRICK TOWNSEND & STOCKTON LLP

By */s/ Gwendolyn C. Payton*
    Gwendolyn C. Payton, WSBA No. 26752
    gpayton@kilpatricktownsend.com
    1420 Fifth Avenue, Suite 3700
    Seattle, WA 98101
    Telephone: (206) 626-7714
    Facsimile: (206) 260-8946

MILLER & CHEVALIER CHARTERED

    Anthony F. Shelley, *pro hac vice*
    Theresa S. Gee, *pro hac vice*
    ashelley@milchev.com
    tgee@milchev.com
    900 Sixteenth St. NW
    Washington, DC 20006
    Telephone:  (202) 626-5800
    Facsimile:  (202) 626-5801

    *Counsel for Plaintiff*
    *The ERISA Industry Committee*

---

[5] ERIC plans to move for summary judgment in due course.  Given that the Supreme Court currently has before it an important ERISA preemption case, and SMC 14.28's effective date might not necessitate resolution of ERIC's FAC before the Supreme Court decides its preemption case, ERIC might reasonably await the Supreme Court's decision before filing its own affirmative motion.  *See Rutledge v. Pharm Care Mgmt. Ass'n*, No. 18-540 (U.S.) (oral argument scheduled for Apr. 27, 2020).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT - 24
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946

## CERTIFICATE OF SERVICE

I certify that on March 23, 2020, I caused a copy of the foregoing document,

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE FIRST

AMENDED COMPLAINT, to be filed with the Clerk of the Court via the CM/ECF system.  In

accordance with their ECF registration agreement and the Court's rules, the Clerk of the Court

will send e-mail notification of such filing to the following attorneys of record:

Jeffrey Lewis
KELLER ROHRBACK LLP
300 LAKESIDE DRIVE, STE 1000
OAKLAND, CA 94612
Email: jlewis@kellerrohrback.com

Erin Maura Riley
Rachel E. Morowitz
KELLER ROHRBACK
1201 3RD AVE, STE 3200
SEATTLE, WA 98101-3052
Email: eriley@kellerrohrback.com
Email: rmorowitz@kellerrohrback.com

Jeremiah Miller
SEATTLE CITY ATTORNEY
700 FIFTH AVENUE #2050
SEATTLE, WA 98104-7097
Email: jeremiah.miller@seattle.gov

/s/ *Gwendolyn C. Payton*
Gwendolyn C. Payton

CERTIFICATE OF SERVICE
CASE NO. - 2:18-CV-01188-TSZ

**KILPATRICK TOWNSEND & STOCKTON LLP**
1420 FIFTH AVENUE, SUITE 3700
SEATTLE, WA  98101
(206) 626-7713  FAX: (206) 260-8946