1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE ERISA INDUSTRY COMMITTEE,

                                    Plaintiff,

        v.

CITY OF SEATTLE,

                                    Defendant.

Case No. 2:18-cv-01188

**REPLY TO RESPONSE TO
DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED
COMPLAINT**

**REPLY TO MOT. TO DISMISS**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## I.  Introduction

The City of Seattle's Ordinance at SMC 14.28 is simply not the type of law ERISA preempts.  Plaintiff's tortured reading of binding precedent notwithstanding, the Ordinance has its full effect (i.e. improves employee access to health care) whether or not any covered employer has an ERISA plan.  Indeed, the Ordinance provides a wholly ERISA-free method for compliance:  employers may simply make regular, wage-like payments to their employees at a rate specified by the Ordinance.   Plaintiff's attempts to transform payments to or on behalf of employees into independent ERISA plans is absurd.

As established by the City's Motion to Dismiss ("Motion" or "Mot."), Plaintiff's First Amended Complaint ("FAC") fails to state a claim upon which any relief may be granted. *Golden Gate*'s binding precedent, notwithstanding Plaintiff's mischaracterization, clearly compels the conclusion that the Ordinance is not preempted.  Accordingly, this Court should dismiss the FAC and leave the City's sound exercise of its authority to protect the health of its residents and workers undisturbed.

## II. The Ordinance is beyond the scope of ERISA preemption.

Plaintiff's insistence that *Gobeille* marked the end of any presumption against preemption of state law is simply incorrect.  Specifically, in the context of ERISA preemption, the Supreme Court and courts of appeals continue to understand that state laws, in areas of traditional state concern, are presumed not preempted.  *See, e.g., Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 666 (9th Cir. 2019) *cert. denied*, 140 S. Ct. 223 (2019) (acknowledging a "'starting presumption that Congress d[id] not intend to supplant ... state laws regulating a subject of traditional state power' unless that power amounts to 'a direct regulation of a fundamental ERISA function'") (alterations in the original) (quoting *Gobeille v. Liberty Mutual Ins. Co.*, 136

**REPLY TO MOT. TO DISMISS Page 1 of 12**
*ERIC v. City of Seattle* 2:18-cv-01188

1    S.Ct. 936, 946 (2016)).[1]  *Gobeille* itself recognized that the presumption against preemption

2    continues to apply.  *Gobeille*, 136 S.Ct. 946.

3           Further, "the historic police powers of the State include the regulation of matters of

4    health and safety."  *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814

5    (1997).  Contrary to Plaintiff's assertion (Response to Plaintiff's Motion to Dismiss ("Resp.")

6    11:16-12:2), the power to "regulate matters of health and safety" certainly extends beyond the

7    power to provide direct medical services; it includes taxing hospitals (*De Buono*, 520 U.S. at

8    814), limiting the frequency with which a person can donate plasma (*Hillsborough County v.*

9    *Automated Medical Laboratories, Inc.*, 471 U.S. 707, 715 (1985), cited by *De Buono*), taxation

10   of ERISA plans to fund Medicare (*Snyder*, 827 F.3d at 555 & n.1), requiring insurance providers

11   to use "open enrollment" (*NYS Health Maint. Org. Conference v. Curiale*, 64 F.3d 794 (2nd Cir.

12   1995)) and requiring hospitals to treat people who lack the means to pay for their care. *United*

13   *Wire, Metal & Mach. Health & Welfare Fund v. Morristown Mem'l Hosp.*, 995 F.2d 1179, 1196

14   (3rd Cir. 1993) *cert. denied* 510 U.S. 1065 (1994).  Moreover, state and local governmental

15   power to regulate the relationship between employers and employees is at the core of traditional

16   state powers.  *See W. Coast Hotel Co. v. Parrish*, 300 U.S. 379, 393 (1937) ("[i]n dealing with

17   the relation of employer and employed" states have wide discretion to pass laws for the

18   "protection of health and safety, and that peace and good order… through regulations designed

19   to insure wholesome conditions of work and freedom from oppression").  It is entirely within the

---

[1] *See also Laborers' Pension Fund v. Miscevic*, 880 F.3d 927, 933-934 (7th Cir. 2018), *cert. denied* 138 S. Ct. 2633 (2018) ("[s]layer laws are an aspect of family law, a traditional area of state regulation. .... Thus, to demonstrate preemption, [plaintiff] bears a considerable burden and must overcome the starting presumption that Congress did not intend to supplant this traditional area of state regulation") (internal citations, quotations and alterations omitted); *Self-Ins. Inst. of Am., Inc. v. Snyder*, 827 F.3d 549, 555 (6th Cir. 2016) *cert. denied* 137 S.Ct. 660 (2017) (where a state law raising revenue to fund Medicare was challenged under ERISA, "the presumption that Congress does not intend to preempt state laws applies with special force").

**REPLY TO MOT. TO DISMISS Page 2 of 12**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1 traditional powers of the state to require employers to pay compensation to employees.  *See, e.g.,*

2 *California Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 330

3 (1997) (acknowledging that states have traditionally regulated apprenticeship programs by

4 requiring payment of a prevailing wage).[2]

5       Cases cited by Plaintiff reinforce the conclusion that express preemption provisions

6 should be presumed not to preempt traditional state power.  For example, in *U.S. v. Arizona*

7 (cited at Resp. 11:22-25), the Ninth Circuit repeated the familiar federal law preemption test,

8 including "that a presumption against preemption applies when 'Congress has legislated ... in a

9 field which the States have traditionally occupied.'" 641 F.3d 339, 348 (9th Cir. 2011), *aff'd in*

10 *part*, 567 U.S. 387 (2012) (quoting *Wyeth v. Levine*, 555 U.S. 555, 565 (2009)).  *Arizona* found

11 no presumption because it analyzed a state law affecting immigration, a field in which the states

12 have no traditional authority.  Other cases cited by Plaintiff are similarly inapposite.  As

13 identified in the City's Motion, *Franklin* stands for the unremarkable proposition that the text of

14 an express preemption provision is the starting point for any analysis of its scope.  *Puerto Rico v.*

15 *Franklin Cal. Tax-Free Tr.,* 136 S.Ct. 1938, 1946 (2016); *see Atay v. Cty. Of Maui*, 842 F.3d

16 688, 699 (9th Cir. 2016) (quoting *Franklin*).

17       Critically, the *Franklin* Court had determined that the provision of the bankruptcy code it

18 was interpreting was plain.  *Franklin*, 136 S.Ct. at 1946-1947.  That is not the case here.  The

19 Supreme Court has spent more than 30 years attempting to interpret the key "relate to" clause in

20 ERISA's preemption provision.  *See New York State Conference of Blue Cross & Blue Shield*

21 *Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-659 (1995) (collecting Supreme Court cases

22 attempting to interpret the preemption provision running dating back to 1981).  The Court

23

24 [2] *See also Int'l Franchise Ass'n, Inc. v. City of Seattle*, 97 F. Supp. 3d 1256, 1283 (W.D. Wash. 2015),

25 *aff'd*, 803 F.3d 389 (9th Cir. 2015) *cert. denied* 136 S.Ct. 1838 (2016) (rejecting ERISA preemption of the City's minimum wage law which allowed for a differential in wages depending on whether an employer paid benefits).

26

**REPLY TO MOT. TO DISMISS Page 3 of 12**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1  instructed federal courts to "go beyond the unhelpful text and the frustrating difficulty of

2  defining [the preemption provision's] key term...."  *Id*. at 656; *see Dillingham*, 519 U.S. at 335–

3  336 (Scalia, J. concurring) ("[t]he statutory text [of the preemption provision] provides an

4  illusory test, unless the Court is willing to decree a degree of pre-emption that no sensible person

5  could have intended—which it is not").  Thus, the analysis of ERISA's ambiguous preemption

6  provision proceeds along traditional lines, including the presumption against preemption.[3]

7        In effect, the well-established presumption against ERISA preemption of traditional state

8  powers is a recognition of core federalist principles protecting state sovereignty.  ERISA does

9  not create a "state-law-free zone" around anything that affects an ERISA plan.  *Snyder*, 827 F.3d

10  at 555.  The Ordinance's command for employers to pay money to or on behalf of their

11  employees so that those employees can access health care is clearly within the traditional powers

12  of the state and should be found beyond the scope of ERISA preemption.

### III.    Payments, either to or on behalf of employees, do not create ERISA plans.

14        Plaintiff's attempts to convert a simple command to employers to pay money to or on

15  behalf of employees into independent ERISA plans finds no support in the law.  First, regular,

16  wage-like payments to employees are simply not ERISA plans.  The challenged Ordinance

17  permits compliance with its requirements by "[a]dditional compensation paid directly to the

18  covered employee…" alone.  SMC 14.28.060.B.1.  Regular payment of compensation directly to

19  employees, even when it is for an employee benefit, is clearly not an ERISA plan.  More than 30

20  years ago, the Supreme Court found that a Massachusetts law requiring employers to pay

---

[3] *Dialysis Newco* and Plaintiff misconstrue *Gobeille* as foreclosing all presumption against preemption
(see Mot. 9, footnote 7).  Further, *Dialysis Newco*'s speculation about the direction of the Supreme Court
on presumptions of preemption is best understood as *dicta*.  The law at issue in that case directly
regulated ERISA plans, and so fell within *Gobeille*'s prohibition on laws that directly regulate a
fundamental ERISA concern.  *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246,
257 (5th Cir. 2019) (quoting *Gobeille*, 136 S.Ct. at 943).  The Fifth Circuit's speculation about the
presumption was not necessary to the holding.

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1  discharged employees all wages due including payments for unused vacation on the date of

2  discharge did not create an ERISA plan and therefore was not preempted by ERISA.

3  *Massachusetts v. Morash*, 490 U.S. 107 (1989).  Although vacation pay is a type of benefit that

4  may create an ERISA plan under some circumstances, the *Morash* Court reached its conclusion

5  that the law was not preempted "[b]ecause ordinary vacation payments are typically fixed, due at

6  known times, and do not depend on contingencies outside the employee's control" and they

7  therefore "present none of the risks that ERISA is intended to address."  *Id*. at 115.  The Court

8  reasoned that "[i]f there is a danger of defeated expectations [with respect to the vacation pay], it

9  is no different from the danger of defeated expectations of wages for services performed—a

10  danger Congress chose not to regulate in ERISA."  *Id*.  Here, the Ordinance permits payments of

11  fixed amounts to employees on a regular basis.  Employee coverage is set by the Ordinance. The

12  employer has no discretion to determine who is covered apart from the ordinary control it

13  exercises over whether any employee receives "wages for services performed" something that is

14  not within the purview of ERISA.  *Id.*

15     Plaintiff's arguments relying on *Aloha Airlines v. Ahue*, 12 F.3d 1498 (9th Cir. 1993) and

16  *Bogue v. Ampex Corp.*, 976 F.2d 1319 (1992) are misplaced.  First, both cases were decided by

17  the Ninth Circuit before the Supreme Court's decisions in *Travelers*, *De Buono* and *Dillingham*

18  substantively reworked the framework for ERISA preemption.  These cases therefore failed to

19  fully analyze ERISA preemption under the "reference to" or "connection with" framework

20  mandated by the Supreme Court and cannot serve as a guide for this Court.  Second, the facts

21  and reasoning applied by the Ninth Circuit in those two cases is clearly distinguishable from the

22  present matter.

23     In *Aloha Airlines* the State of Hawaii had required employers to pay for specific medical

24  examinations of certain pilots as required by the FAA.  *Aloha Airlines*, 12 F.3d at 1500.  The

25  court, applying a four-factor test predating modern ERISA jurisprudence, determined that the

26

**REPLY TO MOT. TO DISMISS Page 5 of 12**
*ERIC v. City of Seattle* 2:18-cv-01188

statute at issue was preempted because (1) it " regulates a type of benefit of an ERISA plan" by "requir[ing] Aloha to modify the benefits or terms of its… benefit plans in order to provide its pilots with FAA-mandated medical examinations," *id*. at 1504-1505; (2) "requires Aloha to establish an administrative scheme to pay recurring medical benefits for the FAA-required examinations at varying times in varying amounts for different numbers of pilots," *id*. at 1505; (3) "creates potential reporting requirements for Aloha's ERISA plans," *id*.; and (4) "regulates the relationships between Aloha and its pilot employees and the obligations flowing from these relationships." *Id*.

Here, the Ordinance does not require employers to provide any specific medical benefit or to modify any ERISA plan.  Payments to or on behalf of employees are not medical benefits, they are payments of money.[4]  And the Ordinance does not establish a "scheme" to pay recurring medical benefits; rather it requires regular, wage like payments to or on behalf of employees. The activities that Plaintiff identifies as creating an administrative scheme (e.g. determining which employees met hours-worked requirements, which employees were supervisory and whether the employee had waived payment (Resp. 15:4-19)) are identical to the activities employers engage in when paying wages.  Hours worked, employee status, and applicable waivers (e.g. deductions) are all relevant to determining pay owed under the FLSA and Washington state law.[5]

Plaintiff's allegation that employees are not solely in control of whether they receive these payments (Resp. 15:20-16:4) is similarly misplaced.  Wages owed hourly workers are subject to the same uncertainty identified by Plaintiff with respect to direct payments to

---

[4] As Plaintiff itself recognized, there is no obligation that additional payments to employees be spent on medical care.  *See, e.g.*, FAC, ¶ 36.  Plaintiff's spurious argument that payments of money are benefits is addressed *infra*.

[5] *See, e.g.*, 29 U.S.C. §§ 206-207, 213 (setting wage rates and eligibility for those wages); *see also* WAC 296-126-025 (Washington administrative code requiring written agreements between employers and employees for certain deductions to pay).

**REPLY TO MOT. TO DISMISS Page 6 of 12**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1   employees under the Ordinance.  The risk of not receiving direct payments "is no different from"

2   the risk of not receiving "wages for services performed" something not addressed by ERISA.

3   *Morash,* 490 U.S. at 115.  The availability of the payments is no more dependent on

4   "contingencies beyond the employee's control" than the employee's receipt of wages.

5          Finally, unlike *Aloha Airlines*, the Ordinance does not place *any obligations* on ERISA

6   plans.  *See* Mot. 20:5-16.  There can be no serious contention that requirements on employers to

7   take actions with respect to paying their employees, making payments to plans or keeping

8   records relating to those payments constitute requirements that an ERISA plan do anything.[6]

9          In *Bogue*, the challenge was to a state court's right to hear a contract action arising from a

10  severance agreement conditioned on a plan administrator's determination as to whether

11  replacement employment was "substantially similar" to the employee's prior employment.

12  *Bogue*, 976 F.2d at 1323.  According to the court, this created an administrative scheme

13  requiring a plan administrator to analyze each employee's case in light of certain criteria, and so

14  subjected the state law cause of action to ERISA preemption.  *Bogue* is distinguishable as the

15  contract provision at issue required employers, *de facto* plan administrators, to make certain

16  discretionary determinations.  Here, the equivalent determinations (which employees are

17  covered) have been made by the City; no plan administrator or even employer need make the

18  determination.  Employers need only undertake the standard tasks of an employer in tracking

19  hours worked, employee information and waivers.  *See Velarde v. PACE Membership*

20  *Warehouse, Inc.*, 105 F.3d 1313, 1317 (9th Cir. 1997) (distinguishing *Bogue* and holding that

21  severance payment, conditioned on (1) satisfactory job performance and (2) no "for cause"

22  termination prior to given date, was *not* a sufficient "ongoing administrative scheme" to create

23  an ERISA plan) (quoting *Delaye v. Agripac, Inc.*, 39 F.3d 235, 237 (9th Cir. 1994) *cert. denied*

24

25  [6] Plaintiff provides no argument that the fourth *Aloha Airlines* factor (regulating the relationship between plan beneficiaries and employers) applies here.

26

**REPLY TO MOT. TO DISMISS Page 7 of 12**
*ERIC v. City of Seattle* 2:18-cv-01188

514 U.S. 1037 (1995)).

Second, payments made to ERISA plans as an alternative means to comply with the Ordinance, are not themselves ERISA plans.  Contrary to Plaintiff's assertion (Resp. 12:9-10), the Motion clearly identified dispositive statements in *Golden Gate* that an ordinance permitting compliance by payments to an ERISA plan did not create a separate ERISA plan.  Mot. 15:5-16:12.  The rationale for this conclusion is the same as the rationale for the conclusion that regular, wage-like payments to individuals do not constitute an ERISA plan:  "employers make the payments on a regular periodic basis and calculate those payments based on" factors related to the employment of employees.  *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco*, 546 F.3d 639, 650 (9th Cir. 2008).  It is clear that Congress did not intend ERISA to regulate whatever "dangers" were involved in the employer's administration of routine employment.  *Morash,* 490 U.S. at 115.

## IV.     *Golden Gate* controls this case.

The central conclusion of *Golden Gate* is that "[w]here a law is fully functional even in the absence of a single ERISA plan" and "[i]ts only influence is on the employer who, because of the Ordinance, may choose to make its required health care expenditures to an ERISA plan rather than" a non-ERISA method, it is not preempted by ERISA.  *Golden Gate*, 546 F.3d at 656, 657, 659 (citing *Travelers*, 514 U.S. at 656 and *Dillingham*, 519 U.S. at 325).  Clearly, the Ordinance challenged here is just such a law.

Plaintiff attempts to distinguish *Golden Gate* on multiple grounds, none of which are persuasive.  First, Plaintiff contends that *Golden Gate* does not support the City's Motion because the San Francisco ordinance permitted payments to a city-run health care plan rather than directly to employees.  *See, e.g.,* Resp. 11:4-12:2.  The decision in *Golden Gate* itself contradicts this reading.  The court analogized payments to the city health care plan to payments made directly to employees as support for its holding that the ordinance was not preempted.

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1   *Golden Gate*, 546 F.3d at 650.  Second, Plaintiff attempts to distinguish the administrative

2   burdens in *Golden Gate* from the alleged burdens here.  Resp. 17:1-7.  There is no basis to make

3   this distinction; in both the San Francisco ordinance and the Ordinance at issue here, the amounts

4   owed to or on behalf of employees are calculated by reference to their employment, just as any

5   other regular, wage-like payment would be calculated.  Whatever "discretion" employers have

6   over employee eligibility is the same between the two ordinances.  Third, Plaintiff makes the

7   spurious argument that the Ordinance sets obligations by reference to a specific level of benefits

8   as distinguished from the circumstances in *Golden Gate*.  Opp. p. 17:18-19:2. This is simply

9   false on its face.  The Ordinance, like the one at issue in *Golden Gate*, sets a specific amount

10  employers must pay to or on behalf of their employees.  SMC 14.28.060.A.  Plaintiff's attempt to

11  convert an order to pay sums certain to employees or insurance plans into an order to provide a

12  specific level of benefits is frankly baffling. [7]

13          There is no question that the central conclusions of *Golden Gate* – based on U.S.

14  Supreme Court cases – remain in force in this circuit and apply to this case.  Both the San

15  Francisco and City ordinances require employers to make set payments for employee health care

16  where those payments are determined on a per-employee basis, proportional to their

17  employment.  Both ordinances permit, but do not require, payments on behalf of employees to

18  ERISA plans.  And both ordinances permit, but do not require, compliance by payments to non-

19  ERISA covered entities.  As discussed above, because of these non-ERISA plan payment

20  options, the Ordinance can have its full effect in the absence of any ERISA plan and therefore is

21  not preempted.

22  _____

23  [7] Plaintiff's citation to *DB Healthcare* is equally perplexing.  There, the Ninth Circuit held that medical
    providers who received cash payments from ERISA plans were not plan beneficiaries.  *DB Healthcare,*

24  *LLC v. Blue Cross Blue Shield of Arizona, Inc.*, 852 F.3d 868, 875 (9th Cir. 2017).  The court did not
    conclude that payment of money was a "benefit."  *Cf. Morash*, 490 U.S. at 119 ("[t]he States have

25  traditionally regulated the payment of wages, including vacation pay" and there is no indication that, in
    enacting ERISA, Congress intended to preempt state laws regulating wage payments).

26

**REPLY TO MOT. TO DISMISS Page 9 of 12**
*ERIC v. City of Seattle* 2:18-cv-01188

1

**V. The Ordinance does not "refer to" or have a "connection with" ERISA plans**

2

Even if the presumption against preemption did not apply, the Ordinance does not "relate

3

to" any ERISA plan and is therefore not preempted.  With respect to the "reference to" prong of

4

the analysis, Plaintiff is incorrect that a challenged law need only "mention or allude[]" to

5

covered ERISA plans and have "some effect" on those plans.  Resp. 7:24-26 (quoting the

6

outdated standard in *WSB Elec., Inc. v. Curry*, 88 F.3d 788, 793 (9th Cir. 1996)).  Rather, under

7

the current standard, (1) the challenged law must act "immediately and exclusively upon ERISA

8

plans" or (2) "the existence of ERISA plans [must be] essential" to the operation of the

9

challenged law.  *Edwards v. Lockheed Martin Corp.*, 617 F. App'x 648, 650 (9th Cir. 2015)

10

(unpublished) *cert. denied* 136 S.Ct. 409 (2015) (quotation marks omitted) (quoting *Golden*

11

*Gate*, 546 F.3d at 655-657).  Clearly, Plaintiff avoids this more precise interpretation, derived

12

from *Dillingham* and reaffirmed in *Gobeille*, because it has no argument that the Ordinance acts

13

immediately and exclusively upon ERISA plans, or that ERISA plans are essential to the

14

operation of the Ordinance.  *See* Mot. 21:24-24:10.  Plaintiff instead resorts to a recitation of

15

every time the Ordinance mentions an ERISA plan.  Such mentions, no matter their number, do

16

not make ERISA plans the immediate and exclusive target of the Ordinance, nor do they render

17

the Ordinance dependent on the existence of an ERISA plan.  The Ordinance would operate in

18

the absence of any ERISA plan; this is true of all essential elements of the Ordinance, including

19

the availability of waivers.  *See Dillingham*, 519 U.S. at 328 (finding no "reference to" an

20

ERISA plan where "[a]n apprenticeship program… can be approved [by the challenged law]

21

whether or not its funding apparatus is of a kind as to bring it under ERISA").  The Ordinance

22

therefore provides no impermissible reference to ERISA plans.

23

In arguing that the Ordinance creates an impermissible "connection with" ERISA plans,

24

Plaintiff eschews the core considerations set forth by the Supreme Court in favor of pursuing an

25

argument based on *dicta*.  State law has an impermissible "connection with" ERISA plans where

26

it binds plan administrators to particular rules for determining eligibility or where it prohibits or requires a specific plan structure. *Golden Gate*, 546 F.3d at 655. Plaintiff tacitly concedes that it cannot meet this test, apart from a spurious argument that reporting requirements for employers are somehow transfigured into reporting requirements for plan administrators. Resp. 23:11-24:5. To the contrary, obligations on employers to keep standard employment records are not obligations on ERISA plans. Mot. 15:11-16:24, 20:5-16.[8]

Instead, Plaintiff contends that *dicta* in *Gobeille* should control the analysis. Resp. 21:9-22:10. First, however, neither the Court in *Gobeille* nor any other court has found a statute preempted on the ground that the "acute, albeit indirect" economic effect of a law would require a certain plan structure. *Gobeille*, 136 S.Ct. at 945.

Second, if this aside states a basis to find preemption, Plaintiff has simply not plead facts sufficient to survive the City's Motion. To overcome the Motion, Plaintiff needs to allege enough facts to show its claim is "facially plausible" (*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), which occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is indisputable that having *any* economic effect on ERISA plans does not support preemption (Mot. 18:4-19:4); even when those effects "provide some measure of economic incentive" for selecting an ERISA plan over a non-ERISA plan. *Dillingham*, 519 U.S. at 332-333. *Travelers* is particularly instructive in this regard. There, the Supreme Court approved a state law that added surcharges of between *9% and 24%* to bills charged to non-Blue Cross/Blue Shield insurers for hospital stays. *Id.* at 328-329 (discussing

---

[8] *See Golden Gate*, 546 F.3d at 650 (rejecting the contention that "the burden entailed in keeping track of which workers perform qualifying work in San Francisco, keeping track of the hours those employees work, and keeping track of the credit (if any) an employer should get for health care payments made to non-City entities" turns the obligation to pay into an ERISA plan, noting that "[m]any federal, state and local laws, such as income tax withholding, social security, and minimum wage laws, impose similar administrative obligations on employers; yet none of these obligations constitutes an ERISA plan").

**REPLY TO MOT. TO DISMISS Page 11 of 12**
*ERIC v. City of Seattle* 2:18-cv-01188

1  *Travelers* briefing).  If a one-quarter increase in cost was an insufficient economic incentive to

2  trigger ERISA preemption, Plaintiff must allege something beyond "[d]irect payments are

3  costlier to employers" or that altruistic employers would prefer to buy insurance for employees

4  instead of paying them directly.  FAC at ¶ 55.  Plaintiff's allegations in the FAC simply do not

5  create a "facially plausible" allegation that Plaintiff's members suffer such acute economic

6  effects from the Ordinance that they are deprived of any meaningful alternative.  Mot. 19 & n.4.[9]

7  ## VI.    Conclusion

8  Plaintiff's FAC must be dismissed.  The Ordinance challenged by Plaintiff represents the

9  exercise of the state's traditional power to protect the health of its residents and workers through

10  regulation of the employment relationship.   And it "is fully functional even in the absence of a

11  single ERISA plan" with, at most, incidental economic effects on employer's choices around

12  health coverage.  *Golden Gate*, 546 F.3d at 656, 659.  Under these circumstances, Plaintiff's

13  claim that the Ordinance is preempted by ERISA is insufficient to survive the City's Motion to

14  Dismiss.

15

16

17

18

19

20

21

22 _____

23  [9] Plaintiff's complaint about the Ordinance's economic effect on its members notwithstanding, the Ordinance represents even less economic impact on hotel employers than the previous initiative.  Though the City believes that the initiative was not preempted by ERISA, the initiative did not give employers credits for amounts they already spend on employee healthcare.  As re-codified here, the Ordinance effectively gives employers an offset for their health care expenditures, lessening the already minimal economic impacts.

24

25

26

**REPLY TO MOT. TO DISMISS Page 12 of 12**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200

1

2      Respectfully submitted this 10th day of April, 2020.

3                                    CITY OF SEATTLE

4                                    PETER S. HOLMES
5                                    Seattle City Attorney

6                                    By    *s/ Jeremiah Miller*

7                                        Jeremiah Miller, WSBA # 40949
8                                        Assistant City Attorney
                                         Phone: 206-256-5495
9                                        Fax:  206-684-8284
                                         jeremiah.miller@seattle.gov
10
                                         Seattle City Attorney's Office
11                                       701 Fifth Avenue, Suite 2050
12                                       Seattle, WA 98104

13                                       Jeffrey Lewis, *admitted pro hac vice*
                                         Erin M. Riley, WSBA #30401
14                                       Rachel E. Morowitz, WSBA #53771
15                                       KELLER ROHRBACK L.L.P.
                                         300 Lakeside Drive, Suite 1000
16                                       Oakland, CA 94612
                                         1201 Third Avenue, Suite 3200
17                                       Seattle, WA 98101

18                                       *Attorneys for Defendant City of Seattle*

19

20

21

22

23

24

25

26

**REPLY TO MOT. TO DISMISS**                          **Peter S. Holmes**
*ERIC v. City of Seattle* 2:18-cv-01188                Seattle City Attorney
                                                     701 Fifth Avenue, Suite 2050
                                                     Seattle, WA  98104-7095
                                                          (206) 684-8200

1

2

<u>**CERTIFICATE OF SERVICE**</u>

3        I hereby certify that on April 10, 2020, I caused the preceding REPLY TO RESPONSE

4    TO DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT to be

5    filed with the Clerk of the Court using the CM/ECF system, which will send notice of such filing

6    to all known counsel of record.

7

8        DATED this 10th day of April, 2020.

9

10                                    By   *s/ Jeremiah Miller*

11                                        Jeremiah Miller, WSBA # 40949
                                         Assistant City Attorney
12                                        Phone: 206-256-5495
                                         Fax:  206-684-8284
13                                        jeremiah.miller@seattle.gov

14
                                         Seattle City Attorney's Office
15                                        701 Fifth Avenue, Suite 2050
                                         Seattle, WA 98104
16

17

18

19

20

21

22

23

24

25

26

**REPLY TO MOT. TO DISMISS—Cert. of Service**
*ERIC v. City of Seattle* 2:18-cv-01188

**Peter S. Holmes**
Seattle City Attorney
701 Fifth Avenue, Suite 2050
Seattle, WA  98104-7095
(206) 684-8200