1

2

3

4

5                          UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
6                                    AT SEATTLE

7    THE ERISA INDUSTRY
     COMMITTEE,
8
                              Plaintiff,
9                                                        C18-1188 TSZ
10          v.
                                                         ORDER
11   CITY OF SEATTLE,

12                            Defendant.

13          THIS MATTER comes before the Court on Defendant City of Seattle's (the

14   "City") Motion to Dismiss, docket no. 37.  Having reviewed all papers filed in support of

15   and in opposition to the motion, the Court enters the following order.

16   **<u>Background</u>**

17          The Seattle City Council passed SMC 14.28 ("the Ordinance") on September 12,

18   2019, and the Ordinance became law on September 24, 2019.[1]  Amended Complaint

19   ("AC"), docket no. 36 at ¶ 23.  The Ordinance requires large hotel employers and

20   ancillary hotel businesses to make "healthcare expenditures" on behalf of covered

21

22   _____

     [1] SMC 14.28 is the successor to Initiative Measure No. 124, which voters approved in November 2016.
23   AC ¶ 2.

     ORDER - 1

employees.  SMC 14.28.060.  The Ordinance's stated intent is to "improve low-wage hotel employees' access, through additional compensation, to high-quality, affordable health coverage for the employees and their spouses or domestic partners, children, and other dependents."  SMC 14.28.025.

To achieve this goal, the Ordinance requires that a "Covered Employer"[2] make monthly expenditures[3] of $420 for each employee, $714 for each employee with only dependents, $840 for each employee with only a spouse or domestic partner, and $1,260 for each employee with a spouse or domestic partner and dependents.  SMC 14.28.060.A.

Covered employers may satisfy their payment obligation through any one or more of the following forms:

1. Additional compensation paid directly to the covered employee; and/or

2. Payments to a third party, such as to an insurance carrier or trust, or into tax favored health programs to provide healthcare services, for the purpose of providing healthcare services to the employee or the spouse, domestic partner, or dependents of the covered employee; and/or

3. Average per-capita monthly expenditures for healthcare services made to or on behalf of covered employees or the spouse, domestic partner, or dependents of the employees by the employer's self-insured and/or self-funded insurance program.

SMC 14.28.060.B.

---

[2] Covered employers are those who own, control, or operate a hotel or motel with more than 100 guest rooms in Seattle, or who own, control, or operate an ancillary hotel business in Seattle with 50 or more employees.  SMC 14.28.020; SMC 14.28.040.

[3] SMC 14.28 merely ensures that employees have access to minimum healthcare benefits in the amounts set forth in SMC 14.28.060.A.  Indeed, employers who are already spending the minimum amounts in one of the forms outlined in SMC 14.28.060.B are deemed to have satisfied the requirements of the Ordinance.

ORDER - 2

1    The Ordinance requires the Covered Employer to retain records documenting

2    compliance with SMC 14.28, and it contains enforcement provisions permitting the City

3    to levy civil fines and penalties as well as pay compensation, liquidated damages, and

4    other penalties to aggrieved parties.  SMC 14.28.110; SMC 14.28.170.  An employer is

5    exempt from making monthly expenditures under SMC 14.28 on behalf of employees

6    that (1) explicitly waive benefits or repeatedly decline monthly expenditures; (2) indicate

7    that they already have access to health coverage from another source; or (3) are covered

8    by a collective bargaining agreement that expressly waives SMC 14.28 benefits.  SMC

9    14.28.030; SMC 14.28.060; SMC 14.28.235.  SMC 14.28 is scheduled to go into effect

10    on July 1, 2020 or on the earliest annual open enrollment period for health coverage

11    thereafter.  SMC 14.28.260.B.[4]

12    The ERISA Industry Committee (the "Committee" or "Plaintiff") is a nonprofit

13    trade association that advocates for nationally uniform laws regarding employee benefits

14    through lobbying and litigation.  The Committee seeks to enjoin the enforcement of SMC

15    14.28 on the basis that it is preempted under federal law by the Employee Retirement

16    Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.  The Committee

17    asserts preemption on three grounds: (1) SMC 14.28 requires the creation of ERISA plans

18    because each option for compliance requires the maintenance of "on-going, discretion-

19    laden program[s] and administrative process[es]" for the purpose of employee healthcare,

20    and these programs are effectively ERISA plans; (2) SMC 14.28 makes impermissible

21

22    _____

23    [4] Ancillary hotel businesses with 50 to 250 employees have until 2025 to comply with the Ordinance.
SMC 14.28.260.A.

ORDER - 3

1  "references to" ERISA plans because its operation turns on "the value or nature of the

2  benefits available to ERISA plan participants"; and (3) SMC 14.28 has an impermissible

3  "connection with" an ERISA plan because it "force[s] an ERISA plan to adopt a certain

4  scheme of substantive coverage or effectively restrict[s] its choice of insurers."  AC ¶ 5.

5      The City of Seattle moves to dismiss the Plaintiff's complaint on the grounds that

6  federal law does not preempt the Ordinance.

7  **<u>Discussion</u>**

8      A complaint challenged by a Rule 12(b)(6) motion to dismiss must offer "more

9  than labels and conclusions" and contain more than a "formulaic recitation of the

10 elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

11 The complaint must indicate more than mere speculation of a right to relief.  *Id.*  When a

12 complaint fails to adequately state a claim, such deficiency should be "exposed at the

13 point of minimum expenditure of time and money by the parties and the court."  *Id.* at

14 558.  A complaint may be lacking for one of two reasons: (i) absence of a cognizable

15 legal theory, or (ii) insufficient facts under a cognizable legal claim.  *Robertson v. Dean*

16 *Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to

17 dismiss, the Court must assume the truth of the plaintiff's allegations and draw all

18 reasonable inferences in the plaintiff's favor.  *Usher v. City of Los Angeles*, 828 F.2d 556,

19 561 (9th Cir. 1987).  The question for the Court is whether the facts in the Amended

20 Complaint sufficiently state a "plausible" ground for relief.  *Twombly*, 550 U.S. at 570.

21

22

23

## I.   ERISA

ERISA is a comprehensive legislative scheme enacted with two primary purposes: (1) to safeguard against the mismanagement of funds to pay employee benefits, *Massachusetts v. Morash*, 490 U.S. 107, 112 (1989); and (2) to ease the administrative burdens and costs on employers and plan administrators by eliminating the threat of conflicting or inconsistent state and local regulation of employee benefit plans, *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 105 n.25 (1983).  To accomplish these dual purposes, ERISA established reporting, disclosure, and fiduciary duty requirements and set forth a broad preemption clause "establish[ing] as an area of exclusive federal concern the subject of every state law that 'relate[s] to' an employee benefit plan governed by ERISA." *FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990).  Whether a state law or local ordinance is preempted by ERISA is a question of law.  *Farr v. U.S. W. Commc'ns, Inc.*, 151 F.3d 908, 913 (9th Cir. 1998).  This is the question presented by the Defendant's Motion to Dismiss in this case.

## II.   *Golden Gate* Opinion

In 2008, in *Golden Gate Rest. Ass'n v. City & Cty. of San Francisco* ("*Golden Gate*"), the Ninth Circuit held that a San Francisco ordinance requiring businesses to make certain minimum health care expenditures on behalf of covered employees was not preempted by ERISA.  546 F.3d 639 (9th Cir. 2008).  The San Francisco ordinance at issue in *Golden Gate* is similar to the Seattle Ordinance, and both parties address the Ninth Circuit's opinion in *Golden Gate* and its applicability to this case at length in their briefs.  As a result, the Court also starts with an analysis of the *Golden Gate* opinion.

1        The ordinance in *Golden Gate* required covered employers to make contributions

2    on behalf of certain employees at rates of $1.17 to $1.76 per hour worked for the purpose

3    of providing "required health care expenditures to . . . employees." *Id.* at 643-44.  San

4    Francisco employers had the discretion to make the required expenditures either by

5    paying employee costs associated with health care expenses in various ways or by

6    making payments to the city (the "City-payment option").  *Id.* at 644-45.  If the employer

7    chose the City-payment option, its employees would either be eligible for enrollment in a

8    city health access program for uninsured San Francisco residents or enrollment in a

9    reimbursement account.  *Id.*  The ordinance required covered employers to keep records

10    of compliance, and it set out various exemptions and deductions for employers already

11    making health care expenditures.  *Id.* at 645.

12        The *Golden Gate* court held that the ordinance did not establish an ERISA plan or

13    require an employer to make any changes to an existing ERISA plan.  *Id.* at 646.  The

14    *Golden Gate* court noted that the ordinance was "not concerned with the nature of the

15    healthcare benefits an employer provides its employees."  *Id.* at 647.  Rather, the

16    ordinance merely mandated the amounts of dollar payments on a periodic basis, which

17    the court concluded would be similar to wages paid directly to employees.  *Id.* at 649-50.

18        The *Golden Gate* court also found that the employer's administrative

19    responsibilities under the ordinance, which included retaining records showing and

20    determining which employees were eligible for payments, were not enough to convert the

21    City-payment option into an ERISA plan because these responsibilities merely involved

22    "mechanical record-keeping" and did not reserve discretion for the employer to engage in

23

1    mismanagement of funds.  *Id.* at 651.  The court further noted that other federal, state,

2    and local laws, such as income tax withholding, social security, and minimum wage laws,

3    impose similar administrative obligations on employers yet do not constitute ERISA

4    plans.  *Id.* at 650.

5          The *Golden Gate* court also found that the ordinance had no impermissible

6    "reference to" or "connection with" an ERISA plan because it was "functional even in the

7    absence of a single ERISA plan."  *Id.* at 659.  The ordinance's "only influence" was on

8    the employer who, because of the ordinance, could choose to make its required health

9    care expenditures to an ERISA plan rather than to a non-ERISA entity.  *Id.* at 656.

10   ### III.    Presumption Against ERISA Preemption

11         State and local laws enjoy a presumption against ERISA preemption when they

12   "clearly operate[] in a field that has been traditionally occupied by the States."  *De Buono*

13   *v. NYSA–ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997) (internal quotations

14   omitted).  "[N]othing in the language of [ERISA] or the context of its passage indicates

15   that Congress chose to displace general health care regulation, which historically has

16   been a matter of local concern."  *N.Y. State Conference of Blue Cross & Blue Shield*

17   *Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995); *see also Operating Eng'rs Health*

18   *& Welfare Trust Fund v. JWJ Contracting Co.*, 135 F.3d 671, 677 (9th Cir. 1998).  The

19   Seattle Ordinance "clearly operates" to ensure health benefits for covered Seattle

20   employees.  SMC 14.28.025.  Thus, the Ordinance is entitled to a presumption against

21   preemption by federal law.

22

23

ORDER - 7

## IV.   <u>Whether SMC 14.28 Requires the Creation of an ERISA Plan</u>

The Committee contends that SMC 14.28 "impermissibly requires, under any of its options for compliance, the creation of ERISA plans" because it requires that employers establish and maintain "at a minimum, an on-going, discretion-laden program and administrative process for the purpose of defraying, through the purchase o[f] insurance or 'otherwise,' its employees' costs for healthcare, thereby satisfying the definition for the existence of an ERISA plan."  AC ¶ 5(a) (citing 29 U.S.C. § 1002(1)). The Committee contends that the Ordinance is preempted by ERISA because the existence of an ERISA plan is essential to its operation.  Plaintiff's Opposition to Defendant's Motion to Dismiss, docket no. 38 at 17.

The Committee focuses its challenge on the direct payment option set forth in SMC 14.28.  Under this direct payment option, employers pay workers a dollar amount directly.  The Committee contends that, "[b]y its terms, [this direct payment] option for compliance constitutes an employer-based regimen of repeated payments to employees to defray the employees' medical costs which—on its face—satisfies ERISA's welfare plan definition of a program established or maintained by the employer for the purpose of providing benefits in the event of sickness or medical need."  *Id.* at 17-18.

An ERISA plan is "[a]ny plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants . . . through the purchase of insurance or otherwise . . . medical, surgical, or

1  hospital care or benefits, or benefits in the event of sickness, accident, disability, death or

2  unemployment."  29 U.S.C. § 1002(1).

3        Here, SMC 14.28 does not require the creation of an ERISA plan because the

4  direct to employee payment option is not an ERISA plan.  There is little to differentiate

5  the payments under this option from regular wages, and they can be coordinated with

6  employees' regular pay periods.[5]  Moreover, the Ninth Circuit explicitly rejected this

7  exact challenge in *Golden Gate*.  *See Golden Gate*, 546 F.3d at 650 ("[I]f employers

8  made the payments directly to the employees . . . those payments would not be enough to

9  create an ERISA plan.").  *See also Morash*, 490 U.S. at 115; *California Div. of Labor*

10 *Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 326 (1997) (employee

11 benefits paid through the regular assets of an employer did not constitute an ERISA

12 plan).

13       In enacting ERISA, Congress did not intend to regulate payments made directly to

14 employees.  *Morash*, 490 U.S. at 115.  ERISA was enacted primarily over concerns of

15 employers' mismanagement of employee benefit programs.  *Id.*  ERISA regulates benefit

16 *plans* because *plans*—not dollar payments to employees—implicate ERISA's concern

17 regarding an employer's potential mismanagement and abuse of funds.  *Fort Halifax*

18 *Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987).

19

20

21 _____

22 [5] Notably, while the admirable goal of SMC 14.28 is to improve employee access to medical care, the
   direct payments need not be used for medical care at all.  Though this policy might seem questionable, the
23 Court's only role is to ensure that it is not preempted by ERISA.

1    Despite the Committee's attempt to portray SMC 14.28's direct payment option as

2  a "discretion-laden program" involving complicated webs of administrative processes,[6]

3  the employer actually has no responsibility other than to retain records that it would

4  maintain in its normal course of business.  Those minimal record keeping and

5  administrative requirements do not give employers discretion to deny or limit benefits

6  under the Ordinance.  Therefore, the direct payment option does not "run the risk of

7  mismanagement of funds or other abuse."  *Golden Gate*, 546 F.3d at 651.  As the *Golden*

8  *Gate* court noted, there are many other laws that impose similar de minimis

9  administrative obligations, but which do not constitute ERISA plans.[7]  *Id.* at 650.

10   **V.    Whether SMC 14.28 is Preempted Because It Has a "Connection with"
         or "Reference to" an ERISA Plan**

11    Section 514(a) provides that ERISA supersedes state and local laws insofar as they

12  relate to any employee benefits plan.  29 U.S.C. § 1144(a).  A state or local law relates to

---

[6] The Committee contends that unlike the San Francisco ordinance, the Seattle Ordinance contains a waiver system which creates additional administrative burdens on employers sufficient to create an ERISA plan.  The Committee is mistaken in this regard.  The San Francisco ordinance at issue did include exemption provisions similar to the waiver system in this case.  *See* S.F. Admin. Code § 14.1 (providing various exclusions to the ordinance including employees who already receive health care services from other sources "provided that the Employer obtains from those persons a voluntary written waiver").

[7] The Committee primarily relies on two Ninth Circuit cases decided prior to *Golden Gate* which held that certain direct-to-employee payments constituted ERISA plans.  In *Aloha Airlines, Inc. v. Ahue*, the court held that a Hawaiian state law requiring employers to pay for pilot medical examinations was preempted by ERISA because it required employers to modify existing ERISA plans to comply with the law.  12 F.3d 1498, 1504-05 (9th Cir. 1993).  Unlike the payment scheme here, however, the payment scheme in *Aloha Airlines* involved discretionary decision-making on behalf of the employer regarding pilot rank and therefore who qualified for the program.  *Id.* at 1503.  The discretionary employer decision-making in *Aloha Airlines* therefore implicated ERISA concerns regarding abuse and mismanagement of funds.  The other case the Committee relies upon—*Bogue v. Ampex Corp.*—involved similar employer discretionary decision making because the law at issue required employers to engage in "particularized" analysis to determine employee eligibility for benefits.  976 F.2d 1319, 1323-24 (9th Cir. 1992).  The direct payment to employee option in SMC 14.28 requires no such particularized analysis or discretionary decision-making.

1  an ERISA employee benefit plan "if it has a connection with or reference to such a plan."

2  *Shaw*, 463 U.S. at 96-97.  "A state law that 'relates to' an ERISA plan is preempted by

3  ERISA 'even if the law is not specifically designed to affect such [a] plan . . . or the

4  effect is only indirect.'" *Aloha Airlines v. Ahue*, 12 F.3d 1498, 1504 (9th Cir.1993) (citing

5  *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)).

6       a.  **SMC 14.28 Lacks a "Connection with" an ERISA Plan**

7       The Committee contends that SMC 14.28 has an impermissible "connection with"

8  an ERISA plan because it "force[s] an ERISA plan to adopt a certain scheme of

9  substantive coverage or effectively restrict[s] its choice of insurers."  AC ¶ 5(c) (internal

10  quotations omitted).  The Committee further contends that SMC 14.28 effectively

11  compels employers to alter their current insured or self-funded coverage to include

12  employees covered by the Ordinance for consistency and because direct payments are

13  "financially more onerous and therefore not a realistic and legitimate alternative" to the

14  other options.  *Id.*

15       A state or local law has a "connection with" an ERISA plan if it binds, regulates,

16  or dictates the administration of the plan.  *Golden Gate*, 546 F.3d at 655-56.  SMC 14.28

17  lacks a "connection with" an ERISA plan.  Where an ordinance's "only influence is on

18  the employer who, because of the [o]rdinance, may choose to make its required health

19  care expenditures to an ERISA plan rather than" directly to the employee, there is no

20  impermissible "connection with" an ERISA plan.  *Id.* at 656.  Here, employers subject to

21  SMC 14.28 have multiple options to comply with the Ordinance.  They may choose to

22  make those expenditures in "connection with" an existing ERISA plan, establish a new

23

1   ERISA plan, or make those expenditures directly to the employee.  The direct to

2   employee payments are not, in themselves, ERISA plans.  Therefore, SMC 14.28 does

3   not contain an impermissible "connection with" an ERISA plan.[8]

4       **b.  SMC 14.28 Lacks a "Reference to" an ERISA Plan**

5       The Committee also contends that SMC 14.28 is preempted by ERISA because it

6   makes a "reference to" an ERISA plan by (1) mentioning ERISA plans and (2) turning on

7   the value or nature of the benefits available to ERISA plan participants.  AC ¶ 5(b).

8       To determine whether a law has a forbidden "reference to" an ERISA plan, the

9   Court asks whether (1) the law "acts immediately and exclusively upon ERISA plans," or

10  (2) "the existence of ERISA plans is essential to the law's operation."  *Dillingham*, 519

11  U.S. at 325.  SMC 14.28 does not require the existence of an ERISA plan.  As in *Golden*

12  *Gate*, the Seattle Ordinance is therefore "fully functional" in the absence of a single

13  ERISA plan.  *Golden Gate*, 546 F.3d at 659.

14      The Committee contends, however, that SMC 14.28 has an impermissible

15  reference to an ERISA plan because its obligations are measured by the level of benefits

16  provided by the ERISA plan to the employee.  Citing the Ninth Circuit's analysis in

17  _____

18  [8] The Court also rejects the Committee's argument that the direct to employee option is not a realistic
    choice for covered employers because it is "financially more onerous and otherwise problematic, so as not

19  to make it a reasonable choice over the other options."  Plaintiff's Opposition to Defendant's Motion to
    Dismiss, docket no. 38 at 26-27.  The Committee contends that some employers have already altered their

20  ERISA plans to bring them into compliance with the Ordinance's predecessor.  *Id.* at 27.  The Committee
    accuses the City of "legislative maneuvering" to prevent employers from choosing the direct payment

21  option.  *Id.*  An employer's decision to prematurely comply with the ordinance before it goes into effect
    does not change the Court's analysis.  Moreover, the Committee has not shown that the Ordinance
    effectively binds employers to any particular choice.  *See N.Y. State Conference of Blue Cross & Blue*

22  *Shield Plans*, 514 U.S. at 650, 659 (surcharge of 9-24% on non-ERISA plans was an "indirect economic
    influence" that did not "bind plan administrators to any particular choice and thus function as a regulation

23  of an ERISA plan itself").

1    *Golden Gate* regarding *District of Columbia v. Greater Washington Board of Trade*, 506

2    U.S. 125 (1992) ("*Greater Washington*"), the Committee further contends that SMC

3    14.28 requires employers to calculate payments based on the value or nature of benefits

4    rather than hours worked by employees and therefore the Ordinance has an impermissible

5    "reference to" an ERISA plan.  Plaintiff's Opposition to Defendant's Motion to Dismiss,

6    docket no. 38 at 22-24.  The Committee misconstrues the *Golden Gate* court's analysis.

7    In *Golden Gate*, the court noted that the ordinance in *Greater Washington* impermissibly

8    premised required payments on "existing health insurance coverage."  *Golden Gate*, 546

9    F.3d at 658.  The coverage required under the *Greater Washington* ordinance was the

10   same benefit "level" as the existing ERISA coverage.  *Id.*  However, the *Greater*

11   *Washington* plan incorporated a reference to an ERISA plan in determining the amount of

12   coverage under that ordinance.  *Id.*  In contrast, neither the *Golden Gate* ordinance nor

13   SMC 14.28 measure the required level of payments based on an ERISA plan.  In

14   particular, SMC 14.28 sets payments on dollar amounts determined by the employee's

15   status.  SMC 14.28.060.A.

16        Finally, the Court notes that the task before it is exceedingly narrow.  The

17   Committee does not ask the Court to opine on the wisdom of the Ordinance but rather

18   whether ERISA preempts SMC 14.28.  The Court finds that it does not.  The dollar

19   amount spending requirements in SMC 14.28 do not establish an ERISA plan and do not

20   create impermissible connections with or reference to ERISA plans.  Moreover, this

21   Court is bound by the Ninth Circuit precedent set more than a decade ago in *Golden Gate*

22   determining that a nearly identical local ordinance was not preempted by ERISA.

23

1         **c.  Denial of Leave to Amend**

2         If the Court dismisses the complaint or portions thereof, it must consider whether

3 to grant leave to amend.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).  Federal

4 Rule of Civil Procedure 15(a) provides that the trial court shall grant leave to amend

5 freely "when justice so requires."  "[A] district court should grant leave to amend . . .

6 unless it determines that the pleading could not possibly be cured by the allegation of

7 other facts."  *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d

8 242, 247 (9th Cir. 1990).  Here, the Court is bound by the Ninth Circuit's precedent in

9 *Golden Gate* and its application to the Ordinance.  Any amendment to Plaintiff's

10 complaint would not change the legal conclusion that the Ordinance is not preempted by

11 ERISA.

12 **Conclusion**

13         For the foregoing reasons, the Court ORDERS:

14         (1)     Defendant City of Seattle's Motion to Dismiss, docket no. 37, is

15 GRANTED.  Plaintiff's Amended Complaint, docket no. 36, is DISMISSED with

16 prejudice.

17         (2)     The Clerk is directed to enter judgment consistent with this Order, send a

18 copy of the Judgment and this Order to all counsel of record, and CLOSE the case.

19         IT IS SO ORDERED.

20         Dated this 8th day of May, 2020.

21

22                              Thomas S. Zilly

23                              United States District Judge